JUDGE GARDEPHE

09 CV 4755

JACK KAUFMAN
Senior Trial Counsel
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center – RM 400
New York, NY 10281
(212) 336-0106

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,　　:

　　　　　　　　　　　　Plaintiff,　　　　　　　:

　　　　　　- against -　　　　　　　　　　　　:　　09 Civ. _____ ( )

　　　　　　　　　　　　　　　　　　　　　　　:　　COMPLAINT

FTC Capital Markets, Inc.,　　　　　　　　　　:
FTC Emerging Markets, Inc., also d/b/a FTC Group,　:
Guillermo David Clamens,　　　　　　　　　　:
Lina Lopez a/k/a Nazly Cucunuba Lopez,　　　　:

　　　　　　　　　　　　Defendants.　　　　　:
------------------------------------------------------------x

　　　　　Plaintiff Securities and Exchange Commission for its complaint against defendants FTC Capital Markets, Inc. ("FTC"), FTC Emerging Markets, Inc., also d/b/a FTC Group (collectively, "Emerging Markets"), Guillermo David Clamens and Lina Lopez a/k/a Nazly Cucunuba Lopez, alleges as follows:

## SUMMARY

　　　　　1.　　This action concerns a fraudulent scheme by defendants Clamens and Lopez, through defendant FTC – a registered broker-dealer controlled by Clamens – to engage in tens of millions of dollars of unauthorized securities trading through the accounts of two FTC customers, Citgo Petroleum Corporation and its parent company, PDV Holding, and to conceal

those transactions from the customers. Defendants Clamens and Lopez defrauded Citgo and PDV in part to conceal their prior fraudulent sale of $50 million in non-existent notes to a Venezuelan bank, through another Clamens-controlled entity, defendant Emerging Markets. When the fictitious notes held by the Venezuelan bank purportedly came due in August 2008, Clamens misappropriated $50 million from Citgo's and PDV's FTC accounts to fund the redemption.

2. In furtherance of their Ponzi-like fraudulent scheme, defendant Clamens, assisted by defendant Lopez, knowingly caused FTC to make the unauthorized purchases of securities for Citgo's and PDV's FTC accounts, knowingly prepared and sent Citgo and PDV false account statements that omitted the unauthorized securities trades and falsely listed holdings exclusively in short-term, low-risk, liquid investments of the type that Citgo and PDV had authorized FTC to make on its behalf. In addition, Clamens and Lopez caused the Venezuelan bank to receive statements for its account falsely stating that it held the $50 million in (fictitious) notes.

3. In addition, through brokerage and bank accounts in the United States, defendant Emerging Markets effected, or purported to effect, securities transactions for its own account and on behalf of numerous foreign investors, without having properly registered as a broker-dealer with the Commission or other appropriate authority. Emerging Markets thus has illegally acted as an unregistered broker-dealer.

5. Through their conduct alleged herein:

    a. defendants FTC, Emerging Markets, Clamens and Lopez violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5;

and

b. defendant FTC violated Section 15(c) of the Exchange Act, 15 U.S.C. § 78o(c);

c. defendant Emerging Markets violated Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a); and

d. defendants Clamens and Lopez aided and abetted FTC's violations of Exchange Act Section 15(c) and Emerging Markets' violations of Exchange Act Section 15(a).

6. Unless restrained and enjoined by the Court, the defendants will continue to engage in the transactions, acts, practices and courses of business alleged herein, and in transactions, acts, practices, and courses of business of a similar type and object.

7. By this action, the Commission seeks against all defendants: (a) permanent injunctive relief; (b) disgorgement and prejudgment interest; (c) civil penalties; and (d) such further relief as the Court may deem appropriate.

## JURISDICTION AND VENUE

8. The Commission brings this action pursuant to authority conferred by Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d). This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 21(d) of the Exchange Act, 15 U.S.C. §§ 78u(d).

9. Venue lies in this District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. Certain of the transactions, acts, practices and courses of business constituting the violations alleged herein occurred within the Southern District of New York. For example, defendant FTC is

headquartered in Manhattan and defendant Clamens, its chairman, resides and works in Manhattan. Defendant Emerging Markets maintains offices in several locations, including New York City.

10. Defendants, directly or indirectly, singly or in concert with others, have made use of the means or instrumentalities of transportation or communication in, or the instrumentalities of, interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

## THE DEFENDANTS

11. **FTC Capital Markets, Inc. ("FTC")** has been registered as a broker-dealer with the Commission since August 7, 2003. Defendant Clamens is FTC's chairman and, until recently, chief executive officer, and controls the management and policies of FTC. The firm is headquartered in midtown Manhattan and has an office in Miami, Florida. Throughout the relevant period, the firm engaged in a general securities business, transacting in debt and equity securities on behalf of mostly South American institutional customers, through BNP Paribas Securities Corp. and Penson Financial Services, Inc. which acted as FTC's clearing brokers.

12. **FTC Emerging Markets, also d/b/a FTC Group (collectively "Emerging Markets")** is a Panamanian-based affiliate of FTC. Defendant Clamens is Emerging Markets' president and controls the management and policies of Emerging Markets. Emerging Markets purports to advise non-U.S. entities and individuals and has maintained brokerage accounts at, among other firms, BNP Paribas, Penson, Wachovia Securities Inc. and Newedge USA LLC. Emerging Markets also appears to do business under the name "FTC Group," which, according to FTC Group's website, is a conglomerate of financial services companies including Emerging Markets and FTC, among others, that provides investment banking services to foreign banks,

4

pension funds, insurance companies, asset managers and financial advisers and maintains offices in New York, Miami, London, Caracas, Lima and Mexico.

13. **Guillermo Clamens**, age 45, is a registered representative and the chairman of FTC and as well as a principal of all the entities in the FTC Group. Defendant Clamens is a citizen of Venezuela and a permanent resident of the United States who maintains a residence in New York, New York.

14. **Lina Lopez (a/k/a Nazly Cucunuba Lopez)**, age 34, is an employee of FTC and/or various FTC affiliates and works in FTC's Miami office. Defendant Lopez is a citizen of Venezuela and a permanent resident of the United States who maintains a residence in Miami, Florida.

## OTHER RELEVANT ENTITIES

15. **FTC Holdings, LLC** is a Delaware limited liability company that wholly owns FTC and also acts as guarantor of certain credit default swaps in connection with certain notes issued by an FTC affiliate, FTC International SPC. Defendant Clamens is the president, CEO, and sole owner of FTC Holdings.

16. **FTC International SPC** purports to be "an exempted segregated portfolio company with limited liability incorporated under the laws of the Cayman Islands." FTC International was the issuer of certain notes sold to Citgo and PDV Holding, for which FTC was the "Arranger and Dealer," Emerging Markets was the "Default Swap Counterparty," and Holdings was the "Default Swap Guarantor."

17. **Citgo Petroleum Corporation** is a Delaware corporation, headquartered in Houston, Texas that is wholly owned by PDV Holding. Citgo is a refiner and marketer of gasoline and petroleum products.

18. **PDV Holding** is a Delaware corporation owned by the Bolivarian Republic of Venezuela. PDV is Citgo's parent company.

## FACTS

### The Unauthorized Trading Fraud on Citgo and PDV

19. In April 2008, Citgo and PDV each opened brokerage accounts with defendant FTC, which were carried by FTC's clearing broker, BNP Paribas (the "FTC Accounts").

20. At the time they opened the FTC Accounts, representatives of Citgo and PDV informed defendants Clamens and Lopez that Citgo's and PDV's sole purpose for opening and maintaining the FTC Accounts was to invest Citgo's and PDV's excess cash from operations in short-term, low-risk, liquid investments.

21. Once the FTC Accounts were opened, defendant Lopez acted as Citgo's and PDV's primary FTC contact concerning the FTC Accounts. In that capacity, Lopez communicated regularly by email with representatives of Citgo and PDV. For example, Lopez e-mailed monthly account statements and daily positions summaries to Citgo and PDV listing the purported holdings and transactions in their FTC Accounts (collectively, the "Account Statements"). At least at certain times, Lopez asked Clamens by e-mail to review the monthly account statements before sending them to Citgo and PDV, and Lopez always copied Clamens on her e-mails transmitting the FTC Account Statements to Citgo and PDV.

22. From April through November 2008, Citgo and PDV periodically deposited tens of millions of dollars into their FTC Accounts, at least partly as a result of Lopez's representations, at Clamens' direction, that FTC offered rates of return on short-term, low-risk, liquid investments that were higher than such rates available elsewhere. From April through November 2008, Citgo deposited over $500 million into its FTC account, and PDV deposited approximately

$60 million into its FTC Account.

23. From April through November 2008, defendants Clamens and Lopez caused FTC to make numerous unauthorized transactions in Citgo's and PDV's FTC Accounts, totaling tens of millions of dollars. For example, in April 2008, Clamens and Lopez caused the following transactions to occur: (a) the purchase of a purported $10 million "FTC International" 6% bond due March 3, 2010 for the account of Citgo; and (b) the purchase of an approximately $9.2 million of a Republic of Venezuela 9.25% bond due September 15, 2027 for the account of Citgo. The chart attached to this Complaint as Exhibit A details the unauthorized bond transactions that Clamens and Lopez caused to be made in the Citgo and PDV FTC Accounts from April through November 2008 (collectively, the "Unauthorized Bond Transactions").

24. As both Clamens and Lopez knew or recklessly disregarded at the time, the Unauthorized Bond Transactions were unauthorized in that they were (a) long-term, relatively risky and illiquid investments; (b) contrary to the general purpose of the FTC Accounts, as previously communicated by Citgo and PDV to Clamens and Lopez; and (c) directly contrary to written instructions that Citgo and PDV periodically sent to defendant Lopez expressly requesting that FTC invest all of the funds in the FTC Accounts in certain specific short-term, low-risk, liquid investments.

25. The Account Statements that Lopez sent to PDV and Citgo failed to disclose the Unauthorized Bond Transactions. Instead, the Account Statements falsely stated that the FTC Accounts held solely the short-term, low-risk, liquid investments that PDV and Citgo had authorized.

26. When Lopez sent PDV and Citgo the false Account Statements, Clamens and Lopez either knew or recklessly disregarded that the Account Statements falsely omitted the

Unauthorized Bond Transactions and falsely represented that all funds in the FTC Accounts were invested in the types of short-term, low-risk, liquid investments that PDV and Citgo had authorized.

**Clamens' and Lopez's Further Efforts to Conceal the Unauthorized Trading**

27. On August 25, 2008, Citgo requested withdrawal of $100 million from its FTC account. This redemption request, when coupled with a previous $151.3 million Citgo withdrawal, threatened to reveal defendants' unauthorized and fraudulent trading in the FTC Accounts because it exceeded the amount of cash available in the account, the balance of which was invested in illiquid FTC International bonds.

28. Clamens and Lopez attempted to hide their fraudulent conduct by engaging in additional unauthorized transactions; i.e., by "selling" $35 million of the FTC International bonds in Citgo's FTC account to PDV's FTC account and remitting the proceeds to Citgo. Clamens and Lopez thus essentially used PDV's cash to partially satisfy Citgo's withdrawal request, leaving the PDV account at the end of August 2008 with only a $60 million position in illiquid FTC International bonds.

29. On October 30, PDV requested return of $41.5 million from its FTC Account, which at the time was entirely invested in the illiquid FTC International bonds. To satisfy this request, Clamens and Lopez engaged in similar fraudulent conduct, this time causing Citgo to purchase $42 million worth of FTC International bonds from PDV's FTC account and remitting the proceeds to PDV. Clamens and Lopez thus essentially used Citgo's cash to satisfy PDV's withdrawal request.

30. The next day, however, Citgo requested withdrawal of $21.6 million from its FTC account. But that account was now invested in illiquid FTC International bonds as a result of

defendants' unauthorized trading in that account the day before. FTC failed to remit the funds as requested, and over the next few days Clamens made several false excuses for the failure to remit, ultimately directing Lopez to provide Citgo with a false FED wire transfer reference number, which she did.

31. In early November 2008, Citgo and PDV requested immediate return of all the funds they believed to be remaining in their FTC Accounts and to be invested in short-term, low-risk, liquid investments and revoked FTC's authority over the accounts.

32. Clamens and Lopez then attempted to return the funds still reportedly on deposit in the Citgo and PDV FTC Accounts and engaged in a number of additional transactions not authorized by PDV and Citgo. Because Citgo's and PDV's funds were invested in illiquid, unmarketable FTC International bonds, however, the defendants were unable to return to Citgo and PDV at least approximately $22 million.

33. Of the funds returned to Citgo and PDV, at least approximately $36.5 million came either directly or indirectly from accounts in the name of Emerging Markets and approximately $1 million from another customer of FTC.

**The $50 Million Bond Fraud on a Venezuelan Bank**

34. In February 2006, a major investment bank issued two bonds, each in the amount of $25 million, to FTC's predecessor, Prime Global Securities Inc. (a) a credit linked note with a 6.15% interest rate, due August 20, 2008, with ISIN number "XXXXXXXXYX14; and (b) a credit linked note with a 6.00% interest rate, due August 20, 2008, with ISIN number XXXXXXXXYZ61, (collectively, the "credit linked notes"). In March 2006, the investment bank repurchased the credit linked notes from Prime Global and retired their ISIN numbers.

35. During at least 2008, a bank headquartered in Caracas, Venezuela maintained an

account with Emerging Markets. At all relevant times, Lopez acted as the Venezuelan bank's primary contact concerning the account. In that capacity, Lopez communicated with representatives of the Venezuelan bank.

36. From at least January through August 2008, Emerging Markets sent the Venezuelan bank monthly account statements stating that the Venezuelan bank's account held the credit linked notes. Those account statements were false because, as stated above, the investment bank previously had repurchased and retired the credit linked notes.

37. Clamens and Lopez knew or recklessly disregarded that the Venezuelan bank's account statements falsely represented that that account held the credit linked notes.

38. In August 2008, Clamens and Lopez engaged in certain unauthorized trading in the Citgo and PDV FTC Accounts, apparently to conceal their fraud upon the Venezuelan bank concerning the bank's purported purchase of the credit linked notes.

39. The purported redemption date for the fictitious credit linked notes was August 20, 2008. To fund those redemptions, Clamens and Lopez engaged in certain of the Unauthorized Bond Transactions in the Citgo and PDV FTC Accounts. Specifically, on August 21, 2008, Clamens and Lopez caused Citgo's FTC account to purchase $25 million of FTC International 6.25% bonds (due on February 21, 2011) and PDV's FTC account to purchase $25 million of FTC International 6% bonds (due on March 3, 2010). Later that day, on Clamens' instructions, Lopez arranged for FTC to wire approximately $50 million to defendant Emerging Markets' account at Wachovia Bank N.A. Defendant Emerging Markets then arranged to have $50 million wired to a bank account in the name of the Venezuelan bank. Thus, Clamens and Lopez effectively and fraudulently, as in a Ponzi scheme, used $50 million of Citgo's and PDV's funds to pay the Venezuelan bank the amount it was expecting from the "redemptions" of the

10

credit linked notes.

### Defendant Emerging Markets Acts as an Unregistered Broker-Dealer

40. Defendant Emerging Markets is not registered with the Commission as a broker or dealer. From at least January 2008 until the present, however, Emerging Markets has engaged in the business of effecting transactions in securities for its own account and for the account of others.

41. Defendant Emerging Markets issues periodic statements that purport to be monthly account statements for accounts in the names of various foreign entities. These statements are prepared and e-mailed to customers by Lopez. Clamens is copied on many of the e-mails and is sometimes identified on the statements themselves as the "account representative."

42. Certain of the statements contain Emerging Markets' logo, others contain FTC Group's logo. The statements reflect, among other things, positions in and purchases and sales of various securities.

43. Emerging Markets maintains brokerage accounts in which it maintains certain of the positions that are reflected on the statements that Emerging Markets creates and provides to its customers. Certain statements issued by Emerging Markets show transactions in securities effected by Emerging Markets and a transaction based-fee charged by Emerging Markets for its service in connection with the transaction.

### FIRST CLAIM FOR RELIEF
(Against defendants FTC, Emerging Markets, Clamens and Lopez, for violations of Securities Act Section 17(a), Exchange Act Section 10(b), and Rule 10b-5)

44. The Commission repeats and realleges the allegations contained in paragraphs 1 through 43 by reference as if fully set forth herein.

45. Defendants' misrepresentations and omissions described above were material and made either knowingly or recklessly.

46. Defendants FTC, Emerging Markets, Clamens and Lopez, directly and indirectly, singly and in concert by the use of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or by the use of the mails, in the offer or sale, and in connection with the purchase or sale, of securities, have: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of, or otherwise made untrue statements of material fact, or omitted to state material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, acts, practices and courses of business which operated or would operate as a fraud or deceit upon purchasers of securities or other persons.

47. By reason of the acts, omissions, practices, and courses of business set forth in this complaint, defendants FTC, Clamens and Lopez have violated, are violating, and unless restrained and enjoined, will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

### SECOND CLAIM FOR RELIEF
(Against defendant FTC for violations of Exchange Act Section 15(c))

48. The Commission repeats and realleges the allegations contained in paragraphs 1 through 43 by reference as if fully set forth herein.

49. Defendants FTC's misrepresentations and omissions described above were material and made either knowingly or recklessly.

50. Defendant FTC, directly and indirectly, singly and in concert, by the use of the

means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or by the use of the mails, has effected transactions in, or induced or attempted to induce the purchase or sale of, securities by means of manipulative, deceptive, or other fraudulent device or contrivance.

51. By reasons of the foregoing, defendant FTC violated, and unless enjoined will continue to violate, Section 15(c) of the Exchange Act, 15 U.S.C. § 78o(c).

### THIRD CLAIM FOR RELIEF
**(Against defendant Emerging Markets for violations of Exchange Act Section 15(a))**

52. The Commission repeats and realleges the allegations contained in paragraphs 1 through 43 by reference as if fully set forth herein.

53. Defendant Emerging Markets acted as a broker or dealer within the meaning of Sections 3(a)(4) and 3(a)(5) of the Exchange Act, 15 U.S.C. §78c(4) and (5), and made use of the mails or the means or instrumentality of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than exempted security or commercial paper, bankers' acceptances, or commercial bills) without being registered with the Commission in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. §78o(b), or without being associated with a broker-dealer as required by Section 15(a) of the Exchange Act.

54. By reasons of the foregoing, defendant Emerging Markets violated, and unless enjoined will continue to violate, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

### FOURTH CLAIM FOR RELIEF
**(Against defendants Clamens and Lopez for aiding and abetting defendant FTC's violations of Exchange Act Section 15(c))**

55. The Commission repeats and realleges the allegations contained in paragraphs 1 through 43 by reference as if fully set forth herein.

56. Defendants Clamens and Lopez knowingly provided substantial assistance to defendant FTC's violations of Exchange Act Section 15(c), 15 U.S.C. § 78o(c).

57. By reason of the foregoing, defendants Clamens and Lopez aided and abetted FTC's violations of, and unless enjoined, will continue to aid and abet the violations of, Exchange Act Section 15(c), 15 U.S.C. § 78o(c).

### FIFTH CLAIM FOR RELIEF
**(Against defendants Clamens and Lopez for aiding and abetting defendant Emerging Markets' violations of Exchange Act Section 15(a))**

58. The Commission repeats and realleges the allegations contained in paragraphs 1 through 43 by reference as if fully set forth herein.

59. Defendants Clamens and Lopez knowingly provided substantial assistance to defendant Emerging Markets' violations of Exchange Act Section 15(a), 15 U.S.C. § 78o(a).

60. By reason of the foregoing, defendants Clamens and Lopez aided and abetted Emerging Markets' violations of, and unless enjoined, will continue to aid and abet the violations of, Exchange Act Section 15(a), 15 U.S.C. § 78o(a).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Commission respectfully requests that the Court:

1. Enter a final judgment:

   (A) Permanently restraining and enjoining defendants FTC, Emerging Markets, Clamens, and Lopez, their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5;

(B) Permanently restraining and enjoining defendant FTC, its agents, servants, employees, attorneys, and all persons in active concert or participation with it who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 15(c) of the Exchange Act, 15 U.S.C. § 78o(c);

(C) Permanently restraining and enjoining defendant Emerging Markets, its agents, servants, employees, attorneys, and all persons in active concert or participation with it who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a);

(D) Permanently restraining and enjoining defendants Clamens and Lopez, their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from aiding and abetting violations of Sections 15(a) and 15(c) of the Exchange Act, 15 U.S.C. §§ 78o(a) and 78o(c);

(E) Directing all defendants to disgorge ill-gotten gains obtained through the violative conduct alleged in this complaint and directing all defendants to pay prejudgment interest thereon;

(F) Directing all defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d) and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d); and

2. Grant such other and further relief as the Court deems appropriate.

Dated: May 20, 2009
      New York, New York

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

By: _____
     Jack Kaufman
     Senior Trial Counsel

New York Regional Office
3 World Financial Center
Room 400
New York, New York 10281
(212) 336-0106

Of Counsel:

Andrew M. Calamari
Leslie Kazon
Steven G. Rawlings
Rhonda L. Jung

# EXHIBIT A

## UNAUTHORIZED BOND TRANSACTIONS IN CITGO PETROLEUM CORP FTC ACCOUNT AT BNP PARIBAS

| Security | PURCHASES | | | | SALES | | | |
|---|---|---|---|---|---|---|---|---|
| | Trade Date | Quantity | Price | $ Amount | Trade Date | Quantity | Price | $ Amount |
| FTC International SPC 6% 3/3/10 | 4/28/2008 | 10,000,000 | 100 | ($10,000,000.00) | 8/26/2008 | -10,000,000 | 99.99 | $10,292,333.33 |
| Republic of Venezuela 9.25% 9/15/27 | 4/29/2008 | 5,000,000 | 92.8 | ($4,696,527.78) | | | | |
| | 4/29/2008 | 3,000,000 | 92.55 | ($2,810,416.67) | | | | |
| | 4/29/2008 | 2,000,000 | 92.55 | ($1,873,611.11) | 5/30/2008 | -10,000,000 | 93.5 | $9,542,708.33 |
| Republic of Venezuela 9.25% 9/15/27 | 5/1/2008 | 10,000,000 | 90.05 | ($9,123,194.44) | 6/3/2008 | -5,000,000 | 91.4 | $4,670,208.33 |
| | 5/13/2008 | 5,000,000 | 90.3 | ($4,589,513.89) | 6/5/2008 | -4,000,000 | 94 | $3,842,222.22 |
| | | | | | 6/11/2008 | -5,000,000 | 92.1 | $4,715,486.11 |
| | | | | | 6/17/2008 | -1,000,000 | 96 | $983,638.89 |
| Bolivarian Rep of Venezuela 9% 5/7/23 | 5/12/2008 | 10,000,000 | 86.05 | ($8,617,500.00) | 6/2/2008 | -5,000,000 | 86.75 | $4,368,750.00 |
| | | | | | 6/18/2008 | -2,000,000 | 88.75 | $1,795,500.00 |
| | | | | | 6/18/2008 | -3,000,000 | 88.75 | $2,693,250.00 |
| Bolivarian Rep of Venezuela 9.25% 5/7/12 | 5/12/2008 | 10,000,000 | 86.05 | ($8,617,847.22) | 6/2/2008 | -5,000,000 | 86.9 | $4,377,118.06 |
| | | | | | 6/11/2008 | -2,000,000 | 89.5 | $1,807,472.22 |
| | | | | | 6/17/2008 | -3,000,000 | 90.5 | $2,745,833.33 |
| Bolivarian Rep of Venezuela 9% 5/7/23 | 5/15/2008 | 5,000,000 | 83.1 | ($4,165,000.00) | 6/19/2008 | -5,000,000 | 88.5 | $4,477,500.00 |
| Republic of Venezuela 9.25% 9/15/27 | 6/26/2008 | 2,000,000 | 94.1 | ($1,933,902.78) | | | | |
| | 7/1/2008 | 3,000,000 | 94 | ($2,901,708.33) | 8/26/2008 | -5,000,000 | 91.98 | $4,805,840.28 |
| Republic of Argentina 7% 10/3/15 | 8/7/2008 | 15,625,000 | 64.05 | ($10,007,812.50) | 8/18/2008 | -15,625,000 | 64 | $10,000,000.00 |
| | 8/11/2008 | 15,000,000 | 64.5 | ($9,675,000.00) | 8/18/2008 | -5,000,000 | 65.25 | $3,262,500.00 |
| | | | | | 8/18/2008 | -5,000,000 | 65.35 | $3,267,500.00 |
| | | | | | 8/18/2008 | -5,000,000 | 65.25 | $3,262,500.00 |
| FTC INTL 6.25% 2/21/11 | 8/21/2008 | 25,000,000 | 100 | ($25,000,000.00) | 8/26/2008 | -25,000,000 | 99.99 | $25,023,541.67 |
| Republic of Venezuela 9.25% 9/15/27 | 9/10/2008 | 5,000,000 | 90.05 | ($4,727,326.39) | 9/24/2008 | -5,000,000 | 80.9 | $4,056,562.50 |
| Republic of Venezuela 9.25% 9/15/27 | 9/10/2008 | 5,000,000 | 90.55 | ($4,752,326.39) | | | | |
| | 9/12/2008 | 3,000,000 | 89.55 | ($2,822,937.50) | 9/24/2008 | -2,000,000 | 83.9 | $1,682,625.00 |
| | 9/16/2008 | 2,000,000 | 88.55 | ($1,771,513.89) | 9/24/2008 | -5,000,000 | 84.4 | $4,231,562.50 |
| | 9/19/2008 | 5,000,000 | 72.7 | ($3,640,138.89) | 9/24/2008 | -5,000,000 | 83.4 | $4,181,562.50 |
| | 9/19/2008 | 2,000,000 | 72.5 | ($1,452,055.56) | 9/24/2008 | -5,000,000 | 83.4 | $4,181,562.50 |
| Republic of Venezuela 9.25% 9/15/27 | 10/3/2008 | 1,250,000 | 72.05 | ($906,406.25) | 10/30/2008 | -1,250,000 | 50.5 | $645,703.13 |
| FTC INTL 6.25% 2/21/11 | 10/30/2008 | 42,000,000 | 100 | ($42,517,708.33) | 10/31/2008 | -20,000,000 | 100 | $20,250,000.00 |
| | 11/5/2008 | 4,600,000 | 100 | ($4,661,493.06) | | | | |

**UNAUTHORIZED BOND TRANSACTIONS IN PDV HOLDING FTC ACCOUNT AT BNP PARIBAS**

| Security | PURCHASES | | | | SALES | | | |
|---|---|---|---|---|---|---|---|---|
| | Trade Date | Quantity | Price | $ Amount | Trade Date | Quantity | Price | $ Amount |
| FTC INTL 6.25% 2/21/11 | 8/21/2008 | 25,000,000 | 100 | ($25,000,000.00) | | | | |
| | 8/26/2008 | 25,000,000 | 100 | ($25,026,041.67) | 10/30/2008 | -42,000,000 | 100 | $42,517,708.33 |
| FTC International SPC 6% 3/3/10 | 8/26/2008 | 10,000,000 | 100 | ($1,469,635.42) | | | | |
| FTC INTL 6.25% 2/21/11 | 11/6/2008 | 1,450,000 | 100 | ($10,293,333.33) | | | | |