UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

                        Plaintiff,

           -against-

FTC CAPITAL MARKETS, INC.,
FTC EMERGING MARKETS, INC., also d/b/a FTC
GROUP, GUILLERMO DAVID CLAMENS, and
LINA LOPEZ a/k/a NAZLY CUCUNUBA LOPEZ,

                        Defendants.

**ECF CASE**

09 Civ. 4755 (PGG)

**MEMORANDUM OPINION & ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

        The Securities and Exchange Commission brings this action against Defendants FTC Capital Markets, Inc. ("FTC"), FTC Emerging Markets, Inc., Guillermo David Clamens and Lina Lopez for violations of the anti-fraud provisions of the federal securities laws. Lopez moves to modify the June 29, 2009 preliminary injunction to permit FTC to advance her legal fees in the parallel criminal action brought against her. For the reasons stated below, Lopez's motion is GRANTED.

## BACKGROUND

        FTC Capital Markets is a broker-dealer "transacting in debt and equity securities on behalf of mostly South American institutional customers…" (Cmplt. ¶ 11) FTC Emerging Markets is a Panamanian affiliate of FTC Capital Markets. (Cmplt. ¶ 12) Clamens is the chairman and former chief executive officer of FTC Capital Markets and the president of FTC Emerging Markets. (Cmplt. ¶¶ 11-12) Lopez is an employee of FTC. (Cmplt. ¶ 14) Citgo Petroleum Corporation and PDV Holding held brokerage accounts with FTC Capital Markets. (Cmplt. ¶ 19)

The Complaint alleges that "from April through November 2008, defendants Clamens and Lopez caused FTC to make numerous unauthorized transactions in Citgo's and PDV's FTC Accounts." (Cmplt. ¶ 23) Lopez is also alleged to have sent false account statements to Citgo and PDV. (Cmplt. ¶ 25) Beginning in August 2008, Clamens and Lopez "attempted to hide their fraudulent conduct by engaging in additional unauthorized transactions." (Cmplt. ¶¶ 27-33)

The Complaint also charges that FTC Emerging Markets sent false account statements to a Venezuelan bank indicating that it held credit linked notes that had, in reality, already been retired. (Cmplt. ¶¶ 34-36) Clamens and Lopez allegedly perpetrated a sort of Ponzi scheme, engaging in unauthorized trading in the accounts belonging to Citgo and PDV in order to "conceal their fraud upon the Venezuelan bank concerning the bank's purported purchase of the credit linked notes." (Cmplt. ¶¶ 38-39)

As a result of the alleged fraud, approximately $22 million belonging to Citgo and PDV was not returned to their accounts. (Cmplt. ¶ 32)

The Complaint further alleges that FTC Emerging Markets acted as a broker-dealer from at least January 2008 until the initiation of this action, despite not being registered as a broker-dealer with the Commission. (Cmplt. ¶¶ 40-43)

This action was filed on May 20, 2009. The Commission claims that (1) Defendants violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 (Cmplt. ¶¶ 44-47); (2) FTC Capital Markets, Inc. violated Section 15(c) of the Exchange Act (Cmplt. ¶¶ 48-51); (3) FTC Emerging Markets violated Section 15(a) of the Exchange Act (Cmplt. ¶¶ 52-54); (4) Clamens and Lopez aided and abetted FTC Capital Markets' violations of Section 15(c) of the Exchange Act (Cmplt. ¶¶ 55-57); and (5) Clamens

and Lopez aided and abetted FTC Emerging Markets' violations of Section 15(a) of the Exchange Act (Cmplt. ¶¶ 58-60).

On June 17, 2009, Judge Colleen McMahon, sitting in Part I, entered a temporary restraining order freezing the assets of Defendants Clamens, FTC Capital Markets, and FTC Emerging Markets. (Dkt. No. 4) The TRO froze sixty-five accounts, including accounts held by Clamens, FTC Capital Markets, FTC Emerging Markets, FTC Holdings, FTC Group Caracas, FTC Group Sociedad de Corretaje de Titutlos Valores, FTC London UK, and FTC International. (Id., Ex. A) The TRO also froze accounts in the name of Forum Trading Corporation and Prime and Global Securities and restrained Clamens' interest in a New York City apartment. (Id.)

On June 29, 2009, this Court entered a stipulation and order converting the TRO to a preliminary injunction and directing that,

> pending final disposition of this action, Defendants, and their agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of such Order by personal service or otherwise, and each of them, hold and retain within their control, and otherwise prevent, any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal of any assets, funds, or other property (including money, real or personal property, securities, commodities, choses in action, business interests or other property of any kind whatsoever) of, held by, or under the control of Defendants. . . .

(Dkt. No. 12)

## I.    THE CRIMINAL CASE AGAINST LOPEZ

On May 18, 2009, the Government unsealed a criminal complaint against Lopez and Clamens and arrested Lopez in Miami, where she resides. (Chaudhry Decl. ¶ 3, Ex. 1) Clamens was not apprehended and has not appeared to answer the charges against him.

3

Two days after Lopez's arrest, her attorney, Priya Chaudhry, spoke to William Brodsky, an attorney representing FTC Capital Markets. (Chaudhry Decl. ¶ 5) Brodsky "stated that the company will pay and advance Ms. Lopez'[s] legal fees." (Id.) That same day, Chaudhry sent a letter to Jorge Piedrahita, the CEO of FTC Capital Markets, to memorialize their agreement that FTC Capital Markets would indeed pay Lopez's legal fees in the criminal action. (Chaudhry Decl. ¶ 5, Ex. 3) This letter – signed by Piedrahita – "set forth the understanding between [Chaudhry and Piedrahita] of the legal services to be performed, the basis on which [Chaudhry] will be paid for those services, and the terms and conditions of [Chaudhry's] representation." (Id. at 1) The letter further provided that FTC Capital Markets would pay Lopez a retainer of $25,000 and would continue to pay ongoing legal fees in Lopez's case. (Id. at 2) FTC Capital Markets paid Chaudhry $25,000 on May 21, 2009. (Chaudhry Decl. ¶ 6)

On May 27, 2009, Chaudhry met with Brodsky and Piedrahita, among others, to discuss her ongoing representation of Lopez in the criminal action. (Chaudhry Decl. ¶ 7) At that time, FTC Capital Markets agreed to advance further legal fees to Chaudhry. (Id.) Following that meeting, Brodsky informed Chaudhry that FTC Capital Markets would advance her an additional $100,000 to pay Lopez's legal fees. (Id.) However, on June 17, 2009 – before FTC Capital Markets made this payment – its assets were frozen by Judge McMahon's TRO. (Chaudhry Decl. ¶¶ 7-8)

On October 16, 2009, the Government filed an Information in United States v. Lopez (09 Cr. 985) (RPP) charging Lopez with one count of conspiracy to commit securities fraud and wire fraud and one count of securities fraud. Lopez pled guilty to both counts pursuant to a cooperation agreement with the Government. (Chaudhry Decl. ¶ 18, Ex. 10) A control date

4

for Lopez's sentencing has been set for November 16, 2010. United States v. Lopez (09 Cr. 985), Oct. 16, 2009 Minute Entry for proceedings before Judge Robert P. Patterson.

Chaudhry represents that as of November 12, 2009, she has incurred $101,745 in fees in connection with her representation of Lopez in the criminal action. (Chaudhry Decl. ¶ 19)

## DISCUSSION

"It is well settled that a district court has authority in a securities fraud case to grant ancillary relief in the form of orders appointing a receiver or temporarily freezing assets." SEC v. Coates, No. 94 Civ. 5361, 1994 WL 455558, at *1 (S.D.N.Y. Aug. 23, 1994) (citing SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1103, 1105 (2d Cir. 1972); SEC v. Unifund SAL, 910 F.2d 1028, 1041 (2d Cir. 1990)). "The purpose of such relief is to facilitate enforcement of any disgorgement remedy that might be ordered in the event a violation is established at trial." Coates, No. 94 Civ. 5361, 1994 WL 455558, at *1. When a court weighs the imposition or terms of an asset freeze, "the disadvantages and possible deleterious effect of a freeze must be weighed against the considerations indicating the need for such relief." Manor Nursing Centers, 458 F.2d at 1106.

Here, Lopez seeks to modify the June 29, 2009 asset freeze to release $100,000 in order to allow FTC to advance her defense costs in the criminal action. Lopez contends that she has a Sixth Amendment right to advancement of fees in connection with the criminal action.[1]

---

[1] Lopez's application for advancement of legal fees and expenses is limited to those fees and expenses incurred in connection with the criminal action against her. (Jan. 11, 2010 Tr. 12:9 – 12:22) ("I'm asking for criminal legal fees here, not fees to defend in the civil action."). Many of the cases relied upon by the Commission – and discussed by this Court at oral argument – address motions to unfreeze assets to pay legal fees incurred in defending against SEC civil enforcement actions. These cases employ different standards in weighing claims to frozen assets than those that adjudicate defendants' rights to advancement of legal fees and expenses in criminal cases. Compare SEC v. Stein, No. 07 Civ. 3125 (GEL), 2009 WL 1181061 (S.D.N.Y.

The Sixth Amendment right to counsel "guarantees more than the mere presence of a lawyer at a criminal trial. It protects, among other things, an individual's right to choose the lawyer or lawyers he or she desires. . . ." United States v. Stein, 435 F. Supp. 2d 330, 366 (S.D.N.Y. 2006) (citing Wheat v. United States, 486 U.S. 153, 164 (1988)), aff'd, 541 F.3d 130, 151 (2d Cir. 2008). However, "[a] defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice." Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624-26 (1989); see also SEC v. Coates, No. 94 Civ. 5361 (KWM), 1994 WL 455558, at *3 (S.D.N.Y. Aug. 23, 1994) ("A defendant is not entitled to foot his legal bill with funds that are tainted by his fraud. In a criminal case, such restrictions on a defendant's ability to obtain legal counsel do not violate his Sixth Amendment rights.") (citing United States v. Monsanto, 491 U.S. 600 (1989); Caplin & Drysdale, Chartered, 491 U.S. 617 (1989)).

"Although a court may impose an asset freeze in a civil case, notwithstanding a companion criminal case, these circumstances dictate that the court pay particular attention to the defendant's Fifth and Sixth Amendment rights." Coates, 1994 WL 455558, at *3.

Here, in order to justify the release of frozen funds, Lopez must demonstrate that she has a Sixth Amendment right to these frozen funds.

## I.   LOPEZ HAS A PROPERTY INTEREST IN THE FROZEN FUNDS

### A.   The Frozen Funds Are Not "Another Person's Money"

The Commission contends that Lopez has no property interest in the frozen funds because the funds are "another person's money" and "are not even held in her name." (Pltf. Br. 13-14)

---

April 30, 2009); SEC v. Coates, No. 94 Civ. 5361 (KMW), 1994 WL 455558 (S.D.N.Y. Aug. 23, 1994).

In United States v. Stein, 435 F. Supp. 2d 330 (S.D.N.Y. 2006), the court addressed the criminal defendants' claim that the Government had violated their Sixth Amendment rights by pressuring their employer, the accounting firm KPMG, to stop advancing their defense costs. The court found that the defendants had a reasonable expectation that KPMG would advance fees, giving them a property interest with which the Government could not interfere:

> Caplin & Drysdale recognized that the Sixth Amendment does protect a defendant's right to spend his own money on a defense. Here, the KPMG Defendants had at least an expectation that their expenses in defending any claims or charges brought against them by reason of their employment by KPMG would be paid by the firm. The law protects such interests against unjustified and improper interference. Thus, both the expectation and any benefits that would have flowed from that expectation – the legal fees at issue now – were, in every material sense, their property, not that of a third party. The government's contention that the defendants seek to spend "other people's money" is thus incorrect.

Stein, 435 F. Supp. 2d at 367, aff'd, 541 F.3d at 155-56.

The Commission contends that despite Stein's holding, Lopez cannot claim that FTC's frozen funds belong to her. The Commission argues that Stein's focus is on the Government's "unjustified and improper interference" with KPMG's practice of advancing defense costs, and that it was this interference that violated the defendants' Sixth Amendment rights.[2]  435 F. Supp. 2d at 353, 365-73. Lopez has conceded that no such interference occurred here.[3]

---

[2] The Commission further notes that "no issue existed in Stein regarding the ability of KPMG to pay back fraud victims. Here, by contrast, the Commission sought to freeze the FTC Defendants' assets precisely because they lacked sufficient assets to repay their (and Lopez'[s]) fraud victims." (Pltf. Br. 17) Citing case law providing that defendants cannot use their own frozen funds to defend civil enforcement actions unless, inter alia, the frozen funds are more than sufficient to pay potential disgorgement, the Commission argues that Lopez's application must be denied. (Pltf. Br. 14) The cases cited by the Commission, however, address the use of frozen

7

The reasoning of Stein is nonetheless directly applicable here. The Stein court engaged in a two-step analysis. First, the court found that the defendants had a property interest in the advancement of fees and did not, in fact, "seek to spend 'other people's money.'" Stein, 435 F. Supp. 2d at 367. Next, the court concluded that the Government had interfered with the defendants' property interest and thereby impinged on their Sixth Amendment rights. Id. at 367-73. The Commission is incorrect in suggesting that the Stein court did not hold that the defendants had a property interest in the advancement of fees. The Stein court's conclusion that the Government had interfered with the defendants' Sixth Amendment rights was premised on its finding that the defendants had a property interest in the advancement of fees. Here, Lopez, like the Stein defendants, has a Sixth Amendment claim to the frozen funds to the extent that she had a valid expectation that her defense costs in the criminal action would be advanced. See Stein, 435 F. Supp. 2d at 367.

### B. Lopez Had A Valid Expectation That Her Costs Would Be Advanced

"Although the right to indemnification and advancement are correlative, they are separate and distinct legal actions. The right to advancement is not dependent on the right to indemnification."[4] Homestore, Inc. v. Tafeen, 888 A.2d 204, 212 (Del. 2005) Advancement is "essentially simply a decision to advance credit," Advanced Mining Sys., Inc. v. Fricke, 623

---

funds to pay legal fees in civil cases. See Stein, 2009 WL 1181061, at *1; SEC v. Lauer, 445 F. Supp. 2d 1362, 1363, 1369-70 (S.D. Fla. 2006); SEC v. Current Fin. Servs., 62 F. Supp. 2d 66, 67-68 (D.D.C. 1999). Different considerations arise where a defendant's Sixth Amendment right to counsel in a criminal action is at stake. See, e.g., Current Fin. Servs., 62 F. Supp. 2d at 67 (noting that the defendant could not claim that asset freeze imposed in SEC action violated his constitutional right to counsel in the SEC action because "the Sixth Amendment provides defendants the right to counsel only in criminal, not civil, proceedings").

[3] At oral argument, in response to a question from this Court as to whether there is "any evidence here" of government interference, Lopez's counsel responded, "I think that to answer that question, that, no, the government is not interfering." (Jan. 11, 2010 Tr. 6:16 – 6:23)

[4] FTC is a Delaware corporation. (Chaudhry Decl. ¶ 21, Ex. 12) Accordingly, Delaware law governs Lopez's entitlement to advancement of fees and expenses.

8

A.2d 82, 84 (Del. Ch. 1992), and "provides corporate officials with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings." Homestore, 888 A.2d at 211.

Under Delaware law, advancement is permissive, and "expenses (including attorneys' fees) incurred by former directors and officers or other employees and agents may be so paid upon such terms and conditions, if any, as the corporation deems appropriate." 8 Del. C. § 145(e) (emphasis added).

FTC's by-laws are silent on the issue of advancement of legal fees. (Chaudhry Decl., Ex. 12) Lopez, however, claims a right to permissive advancement based on FTC's repeated representations that it intended to advance her legal fees, as well as FTC's initial $25,000 payment to her lawyer. See Chaudhry Decl. ¶¶ 5-8, Ex. 3.

The Commission argues that "FTC does not have unbridled discretion to authorize or make such advance payments. To the contrary, Lopez is not entitled to advancement because such payment by FTC does not, and cannot, constitute 'appropriate corporate action' under Delaware law." (Pltf. Br. 21) (citing In re Adelphia Communs. Corp., 323 B.R. at 354). In seeking to have this Court substitute its judgment for that of FTC's management, the Commission contends that "Clamens owns and controls the FTC Defendant entities. . . . Thus, any FTC decision to advance Lopez legal fees was Clamens' decision." (Pltf. Br. 22) The Commission argues that because Clamens conspired with Lopez to commit the fraud at issue in this action and the related criminal action, his alleged decision to advance Lopez legal fees should be rejected.[5] (Id.)

---

[5] The Commission has, however, asked this Court to approve proposed consent judgments that would release $187,500 in frozen funds to pay the fees of the law firm representing Clamens,

The Commission's argument, however, ignores the fact that FTC has a chief executive officer, Jorge Piedrahita, who has continued to conduct FTC's business and to make decisions on behalf of the company. Indeed, it was Piedrahita who signed the agreement promising Lopez that her legal fees would be advanced. The Commission has acknowledged Piedrahita's operational role at the company; it stipulated that he should receive a $15,000 payment from frozen funds in connection with his work winding down the affairs of the company. See Aug. 7, 2009 Order (Dkt. No. 19); Jan. 19, 2010 Pltf. Ltr. 2-3.

Throughout this litigation, the Commission has honored the FTC corporate form, entering into ten separate stipulations with FTC to modify the asset freeze. See Dkt. Nos. 13, 18, 19, 21, 23, 26, 27, 37, 42, 43. The Commission has likewise negotiated proposed consent judgments with FTC Capital Markets and FTC Emerging Markets; these agreements were executed by Clamens on behalf of those entities.

Although the Commission could have sought the appointment of a receiver or a trustee "to prevent the dissipation of [FTC's] assets pending further action by the court," see SEC v. American Bd. of Trade, Inc., 830 F.2d 431, 436 (2d Cir. 1987), and to "help preserve the status quo," Manor Nursing Centers, Inc., 458 F.2d at 1105, the Commission has not sought to displace Piedrahita and Clamens or to prevent FTC from making business decisions. Indeed, the Commission has acknowledged that it "typically requests the appointment of an independent receiver . . . [but] has refrained from doing so here." (Chaudhry Decl., Ex. 7 at 4)

The Commission nonetheless asks this Court to act as though a receiver has been appointed in weighing Lopez's right to the permissive advancement of fees and expenses FTC

---

FTC, and FTC Emerging Markets – the architect of and the vehicles for the alleged fraud. See infra pp. 14-15.

has promised. See id. ("[A]ny such receiver presumably would not (and could not) agree to advance Lopez's fees, and the Court should not permit an essentially defunct FTC to do so merely because the scope of this case did not warrant the appointment of a receiver.") The appointment of a receiver is not automatic upon the Commission's request, however, and, in any event, there was no such request here. See Manor Nursing Centers, Inc., 458 F.2d at 1105 ("the appointment of trustees should not follow requests by the SEC as a matter of course").

Given that the Commission has permitted FTC's management to retain control over FTC's affairs, this Court will not substitute its judgment concerning the advancement issue for that of FTC's management. The Commission has cited no legal authority demonstrating that this Court may overrule FTC's decision to advance Lopez her defense costs in the criminal action. Accordingly, FTC's promise to Lopez is sufficient to create a valid expectation on her part that her fees and expenses incurred in the criminal action would be advanced.

### C. The Commission Has Not Demonstrated that All of the Frozen Funds are Traceable to Fraud

A defendant has no Sixth Amendment right to funds that are the proceeds of his or her alleged fraud, even if those funds are necessary in order to retain the counsel of choice. See Caplin & Drysdale, Chartered, 491 U.S. 617; Monsanto, 491 U.S. 600. The standard that should be applied in determining whether funds are the proceeds of fraud, however, is not entirely clear. In United States v. Monsanto, 924 F.2d 1186 (2d Cir. 1991), the Second Circuit held that where assets necessary for a defendant's defense are restrained pursuant to criminal forfeiture laws, courts must find that the funds would be properly forfeitable upon conviction in order to justify restraint. Id. at 1203. In SEC v. Coates, the court, applying Monsanto, concluded that an asset freeze imposed in a securities fraud case could not be continued without,

11

inter alia, "a showing that the frozen assets are traceable to fraud." 1994 WL 455558, at *3 (emphasis added).

The Commission, however, urges this Court to adopt a more restrictive standard for the release of frozen funds to pay attorney's fees in a criminal action: whether or not the funds are tainted by fraud. See Jan. 11 Tr. 19:9 – 19:22; Pltf. Br. 14 (citing Stein, 2009 WL 1181061, at *1; Lauer, 445 F. Supp. 2d at 1369-70; Current Fin. Servs., 62 F. Supp. 2d at 68). This is the applicable standard when a defendant seeks to use his or her own frozen funds to mount a defense in an SEC civil enforcement action. Id. Under this standard, defendants have been barred from utilizing frozen assets to pay legal fees associated with representation in a civil action when it is not clear "whether the frozen assets exceed the SEC's request for damages" or disgorgement. See SEC v. Bremont, 954 F. Supp. 726, 733 (S.D.N.Y. 1997) ("'Just as a bank robber cannot use the loot to wage the best defense money can buy, so a swindler in securities markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime.'") (quoting SEC v. Quinn, 997 F.2d 287, 289 (7th Cir. 1993)).

In SEC v. Sekhri, No. 98 Civ. 2320 (RPP), 2000 WL 1036295 (S.D.N.Y. July 26, 2000), the court adopted a similar standard where a defendant sought the release of frozen funds to pay attorney's fees in a related criminal action. The Court concluded that "a freeze order need not be limited only to funds that can be directly traced to [a] defendant's illegal activity" but may include any funds appropriately subject to disgorgement. Id. at *1. The Sekhri court had also found, however, that a refusal to lift the freeze would not prevent the defendant "from retaining the counsel of his choice" in the criminal action. Id. at *2.

This Court concludes that Lopez's claim to the frozen funds is governed by the standard set forth in Monsanto and Coates. Lopez has demonstrated – and the Commission does

not dispute – that without advancement of the frozen funds, she will be unable to pay defense counsel's fees in the criminal action. See infra p. 15. Under such circumstances, the Commission is required to demonstrate that the frozen funds are traceable to fraud. See Coates, 1994 WL 455558, at *3 (requiring SEC to make "a showing that the frozen assets are traceable to fraud").

Here, there has been no finding that the frozen funds are traceable to fraud. Indeed, the TRO and the subsequent injunction were merely designed to preserve the status quo; the Court made no finding that the frozen funds were the proceeds of fraud. (Chaudhry Decl., Ex. 4, 5) The Commission conceded as much at oral argument and in its briefing. See Chaudhry Decl. ¶ 13; Jan. 11 Tr. 16:12 – 16:20.

The asset freeze affects sixty-five accounts, including fifteen accounts held by seven FTC-related entities that are not alleged to have participated in the fraud.[6] June 17, 2009 Order, Ex. A (Dkt. No. 4). As of June 17, 2009, the frozen accounts contained $5-6 million. (Kaufman Decl. ¶ 3) The frozen funds are not sufficient to satisfy the approximately $22 million FTC owes to Citgo and PDV. (Cmplt. ¶ 32) Were Lopez seeking to use frozen funds to pay her defense costs in a civil action, the fact that potential disgorgement in this case exceeds the amount of money that has been frozen might be sufficient to prevent this Court from releasing the funds. See Bremont, 954 F. Supp. at 733. However, Lopez seeks advancement of fees and expenses only in the criminal action against her. While Lopez may not be advanced frozen funds traceable to the fraud she helped to perpetrate, see Coates, 1994 WL 455558, at *3, there has been no showing that all of the funds currently restrained are traceable to fraud.

---

[6] The FTC-related entities whose accounts have been frozen but who are not named in the Complaint are: FTC Holdings; FTC Group Caracas; FTC Group Sociedad de Corretaje de Titutlos Valores; FTC London UK; FTC International; Forum Trading Corporation; and Prime Global Securities. June 17, 2009 Order, Ex. A (Dkt. No. 4).

The Commission asserts that all of the frozen funds are the proceeds of fraud because (1) money is fungible; and (2) these assets were all controlled by Clamens. At oral argument, however, the Commission did not contend that it could demonstrate that all of the frozen assets were traceable to fraud:

> It is not traceable in the sense of I can show you that this specific dollar in this specific account was part of that 60 million [the total amount at issue in the fraud, of which $22 million was lost] – or if we can do it, it could be very complicated to do it. We may not be able to do that, but we are alleging – we are showing that all of this money is tainted because it is really all controlled by Mr. Clamens. As a matter of fact, it doesn't make sense to treat one pile of money different from another pile. . . .

(Jan. 11 Tr. 16:14-22). In determining whether funds are the proceeds of fraud or are traceable to fraud, however, it may in fact "make sense to treat one pile of money different[ly] from another pile." The suggestion that Clamens exercised control over the funds in all of these accounts or that funds were transferred from one account to another (Jan. 11 Tr. 15:20 – 16:22; Kaufman Decl. ¶ 11) does not establish – as the Commission must – that funds held by entities not alleged to have been involved in any wrongdoing are traceable to fraud.

The Commission has also taken inconsistent positions as to priority between compensating victims and paying legal fees. In opposing Lopez's motion for advancement of fees in connection with her criminal case, the Commission has argued that all of the frozen funds must be used to compensate fraud victims. The Commission has entered into proposed consent judgments with Clamens, FTC, and FTC Emerging Markets, however, that provide for payment of $187,500 to the law firm representing those defendants in the civil SEC action. (Feb. 19, 2010 Pltf. Ltr. 2) In other words, the Commission has approved the release of $187,500 to the law firm representing Clamens, the author and principal of the fraud. While the Commission contends that the legal fees were expended "solely for services that were necessary for the

14

marshaling and preservation of frozen assets for future distribution to victims" (Feb. 24, 2010 Pltf. Ltr. 2), the Commission has not provided any support for this assertion, such as the law firm's billing records. The Commission also fails to explain why counsel for Clamens – the primary wrongdoer in this fraud – should receive payment from the very funds the Commission has fought to keep from Lopez when Lopez – instead of refusing to appear in this action – has pled guilty and entered into a cooperation agreement with the Government. While the Commission argues that the victims' rights should prevail when Lopez seeks advancement of fees, it has taken a contrary position as to payment of fees incurred by counsel for the primary wrongdoer.

The Commission has suggested but not demonstrated that the funds held by entities not named in the Complaint are tied to the fraud at issue. Because the Commission has not shown that the funds Lopez seeks are traceable to fraud, it may not deny her advancement of fees for purposes of her criminal defense.

## II. LOPEZ HAS DEMONSTRATED A NEED FOR THE FROZEN FUNDS BUT HAS NOT JUSTIFIED RELEASE OF $100,000

Although Lopez has demonstrated that she has a Sixth Amendment claim to the frozen funds FTC had promised to advance as payment for her defense costs in the criminal action, courts have also required a showing of need – that is, proof that without the frozen funds, the defendant's Sixth Amendment right to counsel will be infringed upon. See SEC v. Cobalt Multifamily Investors, I LLC, No. 06 Civ. 2360 (KMW) (MHD), 2007 U.S. Dist. LEXIS 25872, at *10-12 (S.D.N.Y. April 2, 2007); Sekhri, 2000 WL 1036295, at *2. Lopez has averred that her current expenses exceed her income and that she and her husband are in the process of declaring bankruptcy. (Chaudhry Decl., Ex. 13 ¶¶ 5-11) Accordingly, Lopez has demonstrated

15

– and the Commission does not dispute – that based on her current income and expenses, she is not capable of paying defense counsel's fees in the criminal action. See Chaudhry Decl., Ex. 13.

Lopez seeks the release of $100,000 in frozen funds. Although she asserts that the amount to be advanced is "properly an issue between FTC and Lopez" (Def. Br. 15-16), courts in this district have refused to release frozen funds where the amounts already paid to defense counsel, or amounts available from other sources, are sufficient to pay reasonable defense costs. See Cobalt Multifamily Investors, 2007 U.S. Dist. LEXIS 25872, at *10-12; Sekhri, 2000 WL 1036295, at *2. In Sekhri, the court rejected the defendant's request to release $50,000 in frozen funds where each of the two law firms the defendant had retained in the parallel criminal action had already been paid $40,000. The court concluded that the earlier payments did "not appear . . . to require augmentation" given that counsel's role involved merely negotiating a plea agreement and [providing] representation through sentence." Sekhri, 2000 WL 1036295, at *2.

The fact that a defendant must demonstrate need before frozen funds will be released, Cobalt Multifamily Investors, I LLC, 2007 U.S. Dist. LEXIS 25872, at *10-12, indicates that courts should consider whether the amount requested is truly necessary. Given that the funds released are, in effect, coming out of the pockets of defrauded investors, it is appropriate for the Court to consider whether the funds are necessary to provide a defendant with the counsel of his or her choice.

Here, in seeking the release of $100,000, defense counsel avers that as of November 12, 2009, she has incurred $101,745 in legal fees in the criminal action at a rate of $450 per hour. (Chaudhry Decl. ¶ 19) Defense counsel has already been paid $25,000 by FTC, however, and may have been paid as much as $35,000 by Lopez. (Chaudhry Decl. ¶ 6; Jan. 11

16

Tr. 31:13 – 31:18, 32:10 – 32:14)  Accordingly, it appears that counsel may be seeking as much as $160,000 for representing Lopez at her guilty plea and at sentencing.

It is not apparent to this Court that release of $100,000 – in addition to the $60,000 that may already have been paid to defense counsel – is necessary to ensure that Lopez will not be deprived of her Sixth Amendment right to counsel.  Defense counsel represented Lopez at her guilty plea – to a criminal information filed on the same day as the plea – and will represent Lopez at sentencing.  Defense counsel also suggests that Lopez's cooperation with the government will involve "countless hours" of her time, but she fails to explain precisely how that time has been or will be spent.  Once a defendant enters into a cooperation agreement with the government, there is often little role for defense counsel prior to sentencing.

A more complete record is necessary before this Court can decide what amount of funds should be released to Lopez for advancement of her legal fees incurred in the criminal action.  Lopez is ordered to submit a letter and supporting documentation to this Court providing justification for defense counsel's hourly rate, billing records for the fees defense counsel has incurred to date in the criminal action, and a projection and explanation of future fees that may be incurred.  Lopez will make her submission by July 6, 2010.  Any response from the Commission is due by July 13, 2010.[7]

---

[7]  Once the amount to be released is determined, the Court will consider the question of what account(s) should be tapped to make the payment.

## CONCLUSION

For the reasons stated above, Lopez's motion to modify the June 29, 2009 preliminary injunction to permit FTC to advance her legal fees in connection with <u>United States v. Lopez</u> (09 Cr. 985)(RPP) is GRANTED. This Court reserves decision as to the amount to be released.

The Clerk of the Court is directed to terminate the following motion: Docket No. 31.

Dated: New York, New York
      June 29, 2010

                                                SO ORDERED.

                                                _____
                                                Paul G. Gardephe
                                                United States District Judge