# EXHIBIT A- PART 2

interest on, or any other amounts owing in respect of, such Notes. Upon any such waiver, the default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured for every purpose of this Indenture and the relevant Supplemental Indenture; but no such waiver shall extend to any subsequent or other default or impair any right relating thereto.

Section 5.13.   Waiver of Stay or Execution Laws

(a)      The Issuer covenants (to the extent that it may lawfully do so) that it shall not at any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, that may affect the covenants or the performance of this Indenture or any Supplemental Indenture; and the Issuer hereby expressly waives all benefit or advantage of any such law and covenants that it shall not hinder, delay or impede the execution of any power herein granted to the Trustee but shall suffer and permit the execution of every such power as though no such law had been enacted.

(b)      Upon the occurrence of an Event of Default and the subsequent declaration by the Trustee that the principal amount of all the Notes of the relevant Series is due and payable immediately, the Trustee may by notice in writing to the Issuer and any Paying Agent and, if requested to do so by an Act of the Noteholders of such Series, the Trustee shall: (i) require each Paying Agent to deliver all Notes of the relevant Series and all monies, documents and records held by them in respect of the Notes of the relevant Series to the Trustee or as the Trustee otherwise directs in the notice; and (ii) require any Paying Agent to act as agent of the Trustee under this Indenture, the relevant Supplemental Indenture and the Notes of the relevant Series, and thereafter to hold all Notes of the relevant Series and all monies, documents and records held by it in respect of Notes of the relevant Series to the order of the Trustee.

Article VI

THE TRUSTEE AND OTHER AGENTS

Section 6.1.   Certain Duties and Responsibilities

(a)      Except during the continuance of an Event of Default:

(i)      the Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture and the relevant Supplemental Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee; and

(ii)      in the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture and the relevant Supplemental Indenture; *provided, however*, that in the case of any such certificates or opinions which by any provision hereof are specifically required to be furnished to the Trustee, the Trustee shall be under a duty to examine the same to determine whether or not they substantially conform to the requirements of this Indenture and shall promptly notify the party delivering the same if such certificate or

opinion does not conform. If a corrected form shall not have been delivered to the Trustee within fifteen (15) days after such notice from the Trustee, the Trustee shall so notify the Noteholders.

(b)     In case an Event of Default in respect of a Series of Notes has occurred, is continuing and is known to the Trustee, the Trustee shall, prior to the receipt of directions, if any, from the Holders of at least a simple majority in aggregate principal amount of the Notes of such Series then outstanding or resulting from an Extraordinary Resolution of the Holders of the Notes of such Series, exercise such of the rights and powers vested in it by this Indenture and the relevant Supplemental Indenture, and use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

(c)     No provision of this Indenture or any Supplemental Indenture shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that:

(i)     this subsection shall not be construed to limit the effect of subsection (a) of this Section 6.1;

(ii)     the Trustee shall not be liable for any error of judgment made in good faith by a Trust Officer, unless it shall be proven that the Trustee was negligent in ascertaining the pertinent facts (provided, that the foregoing shall not be construed to contravene any express provision hereof permitting the Trustee to rely on information provided by other Persons);

(iii)     the Trustee shall not be liable in respect of any action taken or omitted to be taken by it in good faith in accordance with the direction of the Issuer in accordance with this Indenture or the Noteholders of the relevant Series of Notes then outstanding representing at least a simple majority of such Series of Notes relating to the time, method and place of conducting any Proceeding for any remedy available to the Trustee in respect of such Series, or exercising any trust or power conferred upon the Trustee in respect of such Series, under this Indenture and the relevant Supplemental Indenture;

(iv)     whenever in the administration of this Indenture the Trustee shall be required to determine the value of any Collateral or funds hereunder or the cash flows projected to be received therefrom, and the Trustee may, in the absence of bad faith on its part, rely on reports of nationally recognized accountants, investment bankers or other Persons qualified to provide the information required to make such determination, including nationally recognized dealers in securities of the type being valued and securities quotation services;

(v)     the permissive right of the Trustee to take or refrain from taking any actions enumerated in this Indenture shall not be construed as a duty;

(vi)     the Trustee shall not be liable for any action it takes, or omits to take, in good faith that it reasonably believes to be authorized or within its rights or powers hereunder;

(vii)    the rights, privileges, protections, immunities and benefits given to the Trustee, including, without limitation its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder, and to each Paying Agent, Authenticating Agent and Note Registrar;

(viii)    the Trustee shall not be responsible for the accuracy of the books or records of, or acts or omissions of, the Clearing Systems, the Disposal Agent, any Calculation Agent (other than the Trustee itself acting in that capacity) or any Paying Agent (other than the Trustee itself acting in that capacity); provided, the Trustee will make reasonable efforts to correct any errors they become aware of or to notify the appropriate parties of any errors they become aware of;

(ix)    to the extent permitted by applicable law, the Trustee shall not be required to give any bond or surety in respect of the execution of this Indenture or otherwise;

(x)    the Trustee shall not be deemed to have notice or knowledge of any matter unless a Responsible Officer of the Trustee has actual knowledge thereof or unless written notice thereof is received by the Trustee at the Corporate Trust Office and such notice references the Notes generally, the Issuer or this Indenture.  Whenever reference is made in this Indenture to a Default or an Event of Default such reference shall, insofar as determining any liability on the part of the Trustee is concerned, be construed to refer only to a Default or an Event of Default of which the Trustee is deemed to have knowledge in accordance with this paragraph;

(xi)    no provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder or any Supplemental Indenture, or in the exercise of any of its rights or powers contemplated hereunder, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it (if the amount of such funds or risk or liability does not exceed the amount payable to the Trustee pursuant to Section 6.7 hereof, the Trustee shall be deemed to be reasonably assured of such repayment) unless such risk or liability relates to its ordinary services, including under Article V, under this Indenture; and

(xii)    the Trustee shall not be liable to the Noteholders of any Series for any action taken or omitted by it at the direction of the Issuer and/or the Noteholders representing at least a simple majority of such Series of Notes then outstanding under circumstances in which such direction is required or permitted by the terms of this Indenture or the relevant Supplemental Indenture unless the Trustee was grossly negligent or committed willful misconduct in ascertaining the pertinent facts or was grossly negligent or committed willful misconduct in determining the requirements imposed by this Indenture, the relevant Supplemental Indenture or such written direction or request.

(d)    Whether or not therein expressly so provided, every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this Section 6.1.

(e)     Unless otherwise stated herein, whenever reference is made in this Indenture to any action by, consent, designation, specification, requirement or approval of, notice, request or other communication from, or other direction given or action to be undertaken or to be (or not to be) suffered or omitted by the Trustee to any amendment, waiver or other modification of this Indenture to be executed (or not to be executed) by the Trustee or to any election, decision, opinion, acceptance, use of judgment, expression of satisfaction or other exercise of discretion, rights or remedies to be made (or not to be made) by the Trustee, it is understood that in all cases the Trustee shall be acting, giving, withholding, suffering, omitting, making or otherwise undertaking and exercising the same (or shall not be undertaking and exercising the same) as directed by a majority of the Noteholders.  This provision is intended solely for the benefit of the Trustee and its successors and permitted assigns and is not intended to and will not entitle the other parties hereto to any defense, claim or counterclaim under or in relation to the Indenture, or confer any rights or benefits on any party hereto.

Section 6.2.     Notice of Default

Promptly (and in no event later than five (5) Business Days) after the occurrence of any Event of Default (or an event that with the giving of notice or the passage of time or both will amount to an Event of Default) known to the Trustee or after any declaration of acceleration has been made or delivered to the Trustee pursuant to Section 5.2 in respect of any Series of Notes, the Trustee shall provide to the Issuer, the relevant Default Swap Counterparty and to all Holders of Notes of such Series, notice of all Events of Default (or events that with the giving of notice or the passage of time or both will amount to Events of Default) hereunder known to the Trustee, unless such Events of Default (or an events that with the giving of notice or the passage of time or both will amount to Events of Default) shall have been cured or waived.

Section 6.3.     Certain Rights of Trustee

Except as otherwise provided in Section 6.1:

(a)     the Trustee may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, note or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties;

(b)     any request or direction of the Issuer mentioned herein shall be sufficiently evidenced by an Issuer Request or Issuer Order, as the case may be;

(c)     whenever in the administration of this Indenture or any Supplemental Indenture the Trustee shall deem it desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, the Trustee (unless other evidence be herein specifically prescribed) shall be entitled, in the absence of bad faith on its part, to rely upon an Officer's certificate;

(d)     as a condition to the taking or omitting of any action by it hereunder, the Trustee may consult with counsel; *provided*, that such counsel is selected with due care, the advice of such counsel or any opinion of counsel shall be full and complete

authorization and protection in respect of any action taken or omitted by it hereunder in good faith and in reliance thereon;

(e)   the Trustee shall be under no obligation to exercise or to honor any of the rights or powers vested in it by this Indenture or any Supplemental Indenture at the request or direction of any of the Noteholders pursuant to this Indenture or such Supplemental Indenture, unless such Noteholders shall have offered to the Trustee reasonable security or indemnity against the costs, expenses and liabilities which might reasonably be incurred by it in compliance with such request or direction;

(f)   the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, note or other paper documents, but the Trustee may and, upon the written direction of the Noteholders of at least a simple majority of the Notes of any Series, shall, make such further inquiry or investigation into such facts or matters as it may see fit or as it shall be directed, which shall be an expense of the Trustee reimbursable in accordance with Section 6.7, and the Trustee shall be entitled, on reasonable prior notice to the Issuer, to examine the books and records relating to the Notes and the Collateral for any Series and the premises of the Issuer, personally or by agent or attorney during the Issuer's business hours; *provided*, that the Trustee shall, and shall cause its agents, to hold in confidence all such information, except (i) to the extent disclosure may be required by law by any regulatory authority and (ii) to the extent that the Trustee, in its sole judgment, may determine that such disclosure is consistent with its obligations hereunder or any Supplemental Indenture;

(g)   the Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys; *provided*, that this clause (g) shall not be deemed to relieve the Trustee of any liability imposed on the Trustee under this Indenture, and any actions or omissions of such agents or attorneys pursuant to this clause (g) shall be deemed for all purposes hereof to be the actions and omissions, respectively, of the Trustee; and

(h)   the Trustee shall not be liable for any action it takes or omits to take in good faith that it reasonably and, after the occurrence and during the continuance of an Event of Default, subject to Section 6.1(b), prudently believes to be authorized or within its rights or powers hereunder.

Section 6.4.   <u>Not Responsible for Recitals or Issuance of Notes</u>

The recitals contained herein and in the Notes, other than the Certificate of Authentication thereon, shall be taken as the statements of the Issuer, and the Trustee assumes no responsibility for their correctness. The Trustee makes no representation as to the validity or sufficiency of this Indenture or any Supplemental Indenture (except as may be made in respect of the validity of the Trustee's obligations hereunder and thereunder), of the Collateral for any Series of Notes. The Trustee shall not be accountable for the use or application by the Issuer of the Notes or the proceeds thereof or any money paid to the Issuer pursuant to the provisions hereof.

NY-523056 v9

Section 6.5.    May Hold Notes

The Trustee, any Paying Agent, the Note Registrars or any other Agent, in its individual or any other capacity, may become the owner or pledgee of Notes of any Series and, may otherwise deal with the Issuer or any of its Affiliates, with the same rights it would have if it were not Trustee, Paying Agent, Note Registrars or such other Agent.

Section 6.6.    Money Held in Trust

Money held by the Trustee hereunder shall be held in trust to the extent required herein and need not be segregated from other funds held by the Trustee hereunder except to the extent required by law. The Trustee shall be under no liability for interest on any money received by it hereunder, and under no circumstances shall the Trustee be responsible for any losses on investments made in accordance with an Issuer Order.

Section 6.7.    Compensation and Reimbursement

(a)    The Issuer agrees:

(i)    to pay (or cause to be paid as provided in the next paragraph) to the Trustee, the Paying Agents, the Note Registrars and the Authenticating Agent compensation for all services rendered by it hereunder in accordance with the Trustee Fee Letter (which compensation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust), as set forth in clause (d) below;

(ii)    to reimburse (or cause to be reimbursed as provided in the next paragraph) the Trustee, the Paying Agents, the Note Registrars and the Authenticating Agent in a timely manner upon its request for all reasonable expenses, disbursements and advances incurred or made by the Trustee as to which this Indenture expressly provides for the reimbursement of the Trustee therefor, (except any such expense, disbursement or advance as may be attributable to the Trustee's gross negligence, willful misconduct or bad faith) consistent with the Trustee Fee Letter;

(iii)    to indemnify (or cause to be indemnified as provided in the next paragraph) the Trustee, the Paying Agents, the Note Registrars, the Authenticating Agent, the Note Calculation Agent and their respective Officers, directors, employees and agents for, and to hold each of them harmless against, any loss, liability or expense incurred without gross negligence, willful misconduct or bad faith on their part, arising out of or in connection with the acceptance or administration of this trust, including the costs and expenses of defending themselves against any claim or liability in connection with the exercise or performance of any of their powers or duties hereunder; and

(iv)    to pay (or cause to be paid as provided in the next paragraph) to the Trustee reasonable additional compensation together with its expenses (including reasonable counsel fees) for any collection action taken pursuant to Section 6.13 hereof.

The parties hereto acknowledge that pursuant to the Expenses Agreement, FTC Holdings shall indemnify the Company (in all of its capacities) against, among others, any and all costs,

fees, expenses and indemnities payable by the Company and each Issuer as set forth in this Section 6.7.

(b)     Each of the parties hereto (other than the Issuer) hereby agrees not to cause the filing of a petition in bankruptcy or application for receivership against the Issuer or the Company for the non-payment to such Person of any amounts provided by this Section 6.7 and under any Transaction Document until at least one years and one day (or, if longer, the applicable preference period then in effect) after the payment in full of all Notes issued under this Indenture and by the Company acting on its own account or for the account of any other Segregated Portfolio.

(c)     The Trustee shall have a lien ranking senior to that of the Secured Parties upon all property and funds held or collected as part of the Collateral for such Series to secure payment of amounts payable to the Trustee in respect of such Series under this Section 6.7. The Trustee shall not institute any proceeding for enforcement of such lien except in connection with an action pursuant to Section 5.3 hereof for the enforcement of the lien of the Indenture and the relevant Supplemental Indenture for the benefit of the Noteholders of such Series; *provided, further,* that the Trustee may only enforce such a lien in conjunction with the enforcement of the rights of Noteholders of such Series in the manner set forth in Section 5.4 hereof.

Fees applicable to periods shorter than a calendar month shall be prorated based on the number of days within such period and all fees shall be calculated on the basis of a 360-day year consisting of twelve 30-day months. The Trustee shall receive amounts pursuant to this Section 6.7 only to the extent that the payment thereof will not result in an Event of Default and the failure to pay such amounts to the Trustee will not, by itself, constitute an Event of Default. Subject to Section 6.9, the Trustee shall continue to serve as Trustee under this Indenture and each Supplemental Indenture notwithstanding the fact that the Trustee shall not have received amounts due it hereunder. If on any date when a fee shall be payable to the Trustee pursuant to this Indenture and any Supplemental Indenture insufficient funds are available for the payment thereof, any portion of a fee not so paid shall be deferred and payable on such later date on which funds shall be available thereof with interest thereon at the "Prime Rate" from time to time as listed in *The Wall Street Journal.*

Section 6.8.    Corporate Trustee Required; Eligibility

There shall at all times be a Trustee hereunder which shall be a corporation or a national banking association organized and doing business under the laws of the United States or of any state thereof, authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least $200,000,000, subject to supervision or examination by federal or state authority. If such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purposes of this Section 6.8, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. If at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section 6.8, it shall resign immediately in the manner and with the effect hereinafter specified in this Article VI.

NY-523056 v9

Section 6.9.   <u>Resignation and Removal; Appointment of Successor</u>

(a)   No resignation or removal of the Trustee and no appointment of a successor Trustee pursuant to this Article shall become effective until the acceptance of appointment by the successor Trustee under Section 6.10.

(b)   The Trustee may resign at any time by giving sixty (60) days' written notice thereof to the Issuer.  Upon receiving such notice of resignation, the Issuer shall promptly appoint a successor Trustee or Trustees by written instrument, in duplicate, executed by an Authorized Officer of the Issuer, one copy of which shall be delivered to the Trustee so resigning and one copy to the successor Trustee or Trustees, together with a copy to each Noteholder and each Default Swap Counterparty; *provided*, that if an Event of Default shall have occurred and be continuing in respect of any Series of Notes, such successor Trustee shall be appointed only upon the written consent of at least a simple majority in principal amount of the outstanding Notes of such Series.  If no successor Trustee shall have been appointed and an instrument of acceptance by a successor Trustee shall not have been delivered to the Trustee within sixty (60) days after the giving of such notice of resignation, the resigning Trustee, or the Holder of any Note, on behalf of itself and all others similarly situated, may petition any court of competent jurisdiction for the appointment of a successor Trustee.

(c)   The Trustee may be removed at any time by Extraordinary Resolution of all Series of Notes, delivered to the Trustee, the Issuer and each Default Swap Counterparty.

(d)   Subject to Section 6.9(a), (A) the Issuer, by Issuer Order, may remove the Trustee, or (B) subject to Section 5.6, any Holder may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor Trustee, if at any time:

(i)   the Trustee shall cease to be eligible under Section 6.8 and shall fail to resign after written request therefor by the Issuer or by any Holder; or

(ii)   the Trustee shall become incapable of acting or shall be adjudged as bankrupt or insolvent or a receiver or liquidator of the Trustee or of its property shall be appointed or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation.

(e)   If the Trustee shall resign, be removed or become incapable of acting, or if a vacancy shall occur in the office of the Trustee for any reason, the Issuer, by Issuer Order, shall promptly appoint a successor Trustee.  If the Issuer shall fail to appoint a successor Trustee within sixty (60) days after such resignation, removal or the occurrence of such vacancy, a successor Trustee may be appointed by Extraordinary Resolution of all Series of Notes, acting together, delivered to the Issuer and the retiring Trustee.  The successor Trustee so appointed shall, forthwith upon its acceptance of such appointment, become the successor Trustee and supersede any successor Trustee proposed by the Issuer.  If no successor Trustee shall have been so appointed by the Issuer or such Holders and shall have accepted appointment in the manner hereinafter provided, subject to Section 5.6, the Trustee or any Holder may, on

60

behalf of itself and all others similarly situated, petition any court of competent jurisdiction for the appointment of a successor Trustee.

(f)   The Issuer shall give prompt notice of each resignation and each removal of the Trustee and each appointment of a successor Trustee to each Default Swap Counterparty and the Holders of the Notes of each Series. Each notice shall include the name of the successor Trustee and the address of its Corporate Trust Office. If the Issuer fail to give such notice within ten (10) days after acceptance of appointment by the successor Trustee, the successor Trustee shall cause such notice to be given at the expense of the Issuer.

Section 6.10.   Acceptance of Appointment by Successor

Every successor Trustee appointed hereunder shall execute, acknowledge and deliver to the Issuer and the retiring Trustee an instrument accepting such appointment. Upon delivery of the required instruments, the resignation or removal of the retiring Trustee shall become effective and such successor Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts, duties and obligations of the retiring Trustee; but, on request of the Issuer or at least a simple majority in principal amount of the outstanding Notes of all Series or the successor Trustee, such retiring Trustee shall, upon payment of its charges then unpaid, execute and deliver an instrument transferring to such successor Trustee all the rights, powers and trusts of the retiring Trustee, and shall duly assign, transfer and deliver to such successor Trustee all property and money held by such retiring Trustee hereunder, subject nevertheless to its lien, if any, provided for in Section 6.7(c). Upon request of any such successor Trustee, the Issuer shall execute any and all instruments for more fully and certainly vesting in and confirming to such successor Trustee all such rights, powers and trusts.

Section 6.11.   Merger, Conversion, Consolidation or Succession to Business of Trustee

Any Person into which the Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation or banking association succeeding to all or substantially all of the corporate trust business of the Trustee, shall be the successor of the Trustee hereunder and each Supplemental Indenture, *provided* that such Person shall be otherwise qualified and eligible under this Article VI, without the execution or filing of any instrument or any further act on the part of any of the parties hereto. In case any of the Notes have been authenticated, but not delivered, by the Trustee then in office, any successor by merger, conversion or consolidation to such authenticating Trustee may adopt such authentication and deliver the Notes so authenticated with the same effect as if such successor Trustee had itself authenticated such Notes.

Section 6.12.   Co-Trustees

At any time or times, for the purpose of meeting the legal requirements of any jurisdiction in which any part of the Collateral may at the time be located, the Issuer and the Trustee shall have power to appoint one or more Persons to act as co-trustee, jointly with the Trustee, of all or any part of the Collateral, with the power to file such proofs of claim and take such other actions pursuant to Article 5 herein and to make such claims and enforce such rights

of action on behalf of the Holders of the Notes, as such Holders themselves may have the right to do, subject to the other provisions of this Section 6.12.

The Issuer shall join with the Trustee in the execution, delivery and performance of all instruments and agreements necessary or proper to appoint a co-trustee. If the Issuer does not join in such appointment within fifteen (15) days after the receipt by it of a request to do so, the Trustee shall have power to make such appointment. Should any written instrument from the Issuer be required by any co-trustee, more fully confirming to such co-trustee such property, title, right or power, any and all such instruments shall, on request, be executed, acknowledged and delivered by the Issuer.

Every co-trustee shall, to the extent permitted by law, but to such extent only, be appointed subject to the following terms:

(a)    the Notes shall be authenticated solely by the Authenticating Agent;

(b)    all rights, powers, duties and obligations hereunder in respect of the custody of securities, cash and other personal property held by, or required to be deposited or pledged with, the Trustee hereunder shall be exercised solely by the Trustee;

(c)    the rights, powers, duties and obligations hereby conferred or imposed upon the Trustee in respect of any property covered by the appointment of a co-trustee shall be conferred or imposed upon and exercised or performed by the Trustee or by the Trustee and such co-trustee jointly, as shall be provided in the instrument appointing such co-trustee;

(d)    the Trustee at any time, by an instrument in writing executed by it, with the concurrence of the Issuer evidenced by an Issuer Order, may accept the resignation of or remove any co-trustee appointed under this Section 6.12, and in case an Event of Default has occurred and is continuing, the Trustee shall have the power to accept the resignation of, or remove, any such co-trustee without the concurrence of the Issuer. A successor to any co-trustee so removed or which has so resigned may be appointed in the manner provided in this Section 6.12;

(e)    no co-trustee hereunder shall be personally liable by reason of any act or omission of the Trustee hereunder;

(f)    the Trustee shall not be liable by reason of any act or omission of a co-trustee; and

(g)    any Extraordinary Resolution delivered to the Trustee shall be deemed to have been delivered to each co-trustee.

Section 6.13.   Certain Duties of the Trustee Related to Delayed Payment of Proceeds; Investment Agreement Insurance Policies

(a)    In the event that in any month the Trustee shall not have received a payment in respect of any Collateral Security on its Due Date or any Default Swap on the applicable date

such payment is due under such Default Swap based on reports received from the issuers of the underlying collateral or the terms of such Default Swap, as applicable, (a) the Trustee shall promptly notify the Issuer and the Default Swap Counterparty in writing and (b) unless within three (3) Business Days (or the end of the applicable grace period for such payment, if longer) after such notice, such payment shall have been received by the Trustee, or the Issuer in its absolute discretion, shall have made provision for such payment satisfactory to the Trustee, the Trustee shall request the issuer of such Collateral Security, the trustee under the related underlying instrument or paying agent designated by either of them, or the Default Swap Counterparty, as the case may be, to make such payment as soon as practicable after such request but in no event later than three (3) Business Days after the date of such request. In the event that such payment is not made within such time period, the Trustee, subject to the provisions of Section 6.1(c), shall take such action as the Issuer shall direct in writing. Any such action shall be without prejudice to any right to claim a Default or Event of Default under this Indenture. In the event that the Issuer requests a release of a Collateral Security in connection with any such action, such release shall be subject to Section 10.5 and Article XII of this Indenture, as the case may be. Notwithstanding any other provision hereof, the Trustee shall deliver to the Issuer or its designee any payment in respect of any Collateral Security received after the Due Date thereof to the extent the Issuer previously made provisions for such payment satisfactory to the Trustee in accordance with this Section 6.13 and such payment shall not be deemed part of the Collateral for any Series.

(b)     Notwithstanding the provisions of paragraph (a) above, if the Principal Investments in respect of a Series of Notes are comprised of one or more Investment Agreements, in the event that the Trustee shall not have received a payment from the relevant Collateral Issuer on the date such payment is due under the terms of an Investment Agreement, the Trustee shall make a claim under the related Investment Agreement Insurance Policy, if any, in the amount of such payment no later than the Business Day next following the original due date of such payment under such Investment Agreement and shall deposit the proceeds of such claim in the relevant Collateral Account upon receipt thereof. Notwithstanding the foregoing, this Section 6.13(b) will be subject to any contrary provision relating to Investment Agreements contained in the relevant Supplemental Indenture.

Section 6.14.   The Securities Intermediary

(a)     There shall at all times be one or more securities intermediaries for purposes of this Indenture and each Supplemental Indenture (the "Securities Intermediary"). The Trustee hereby appoints DBTC Americas as the initial Securities Intermediary, and DBTC Americas accepts such appointment.

(b)     The Securities Intermediary shall be, and DBTC Americas as initial Securities Intermediary hereby represents and warrants that it is as of the date hereof and shall be, for so long as it is the Securities Intermediary, a corporation or national banking association that in the ordinary course of its business maintains securities accounts for others and, as Securities Intermediary, is acting in that capacity under this Indenture and each Supplemental Indenture. The Securities Intermediary shall, and DBTC Americas as initial Securities Intermediary does, agree with the parties hereto that each Collateral Account shall be a trust account to which financial assets may be credited and undertake to treat the Trustee as entitled to exercise the

63

rights that comprise such financial assets. The Securities Intermediary shall, and DBTC Americas as initial Securities Intermediary does, agree with the parties hereto that each item of property credited to each Collateral Account shall be treated as a financial asset. The Securities Intermediary shall, and DBTC Americas as initial Securities Intermediary does, agree with the parties hereto that, for purposes of the UCC and the United States Regulations, the securities intermediary's jurisdiction of the Securities Intermediary in respect of all Collateral shall be the State of New York. The Securities Intermediary shall, and DBTC Americas as initial Securities Intermediary does, represent and covenant that it is not and will not be (as long as it is the Securities Intermediary hereunder) a party to any agreement that is inconsistent with the provisions of this Indenture or any Supplemental Indenture. The Securities Intermediary shall, and DBTC Americas as initial Securities Intermediary does, covenant that it will not take any action inconsistent with the provisions of this Indenture or any Supplemental Indenture applicable to it. The Securities Intermediary shall, and DBTC Americas as initial Securities Intermediary does, agree that any item of property credited to any Collateral Account shall not be subject to any security interest, lien, encumbrance or right of setoff in favor of the Securities Intermediary or anyone claiming through the Securities Intermediary (other than the Trustee).

(c)     It is the intent of the Trustee and the Issuer that each Collateral Account shall be a securities account of the Trustee and not an account of the Issuer. Nonetheless, the Securities Intermediary shall agree to comply with entitlement orders originated by the Trustee, without further consent by the Issuer or any other person or entity, and DBTC Americas as initial Securities Intermediary agrees that, for so long as it is the Securities Intermediary hereunder, it will comply with entitlement orders originated by the Trustee, without further consent by the Issuer or any other person or entity. The Securities Intermediary shall covenant that it will not agree with any person or entity other than the Trustee that it will comply with entitlement orders originated by any person or entity other than the Trustee, and DBTC Americas as initial Securities Intermediary hereby covenants that, for so long as it is the Securities Intermediary hereunder, it will not agree with any person or entity other than the Trustee that it will comply with entitlement orders originated by any person or entity other than the Trustee.

(d)     Nothing in this Indenture or the relevant Supplemental Indenture shall imply or impose upon the Securities Intermediary any duties or obligations other than those expressly set forth in this Indenture or the relevant Supplemental Indenture and those applicable to a securities intermediary under the UCC or the United States Regulations (and the Securities Intermediary shall be entitled to all of the protections available to a securities intermediary under the UCC or the United States Regulations). Without limiting the foregoing, nothing in this Indenture or the relevant Supplemental Indenture shall imply or impose upon the Securities Intermediary any duties of a fiduciary nature.

(e)     The Securities Intermediary may at any time resign by notice to the Trustee; *provided, however,* that it shall be the responsibility of the Trustee to appoint a successor Securities Intermediary and to cause each Collateral Account to be established and maintained with such successor Securities Intermediary in accordance with the terms hereof; and the responsibilities and duties of the retiring Securities Intermediary hereunder shall remain in effect until all of the Collateral credited to each Collateral Account held by such retiring Securities Intermediary have been transferred to such successor. Any corporation or banking institution into which the Securities Intermediary may be merged or converted or with which it may be

consolidated, or any corporation or banking institution resulting from any merger, consolidation or conversion to which the Securities Intermediary shall be a party, shall be the successor of the Securities Intermediary, without the execution or filing of any further act on the part of the parties hereto or such Securities Intermediary or such successor corporation or banking institution.

Section 6.15.   <u>Fiduciary For Noteholders; Agent for the Securities Intermediary and the Default Swap Counterparty</u>

The Delivery of any item of Collateral to the Trustee is to the Trustee as representative of the Noteholders and as agent of the other Secured Parties.  In furtherance of the foregoing, the possession by the Trustee of any item of Collateral, the endorsement to or registration in the name of the Trustee of any item of Collateral and the status of the Trustee as entitlement holder in respect of any item of Collateral are all undertaken by the Trustee in its capacity as representative of the relevant Noteholders and as agent of the other Secured Parties.  The Trustee shall not by reason of this Indenture or any Supplemental Indenture be deemed to be acting as a fiduciary for the Secured Parties other than the Noteholders; *provided*, that the foregoing shall not limit any of the express obligations of the Trustee under this Indenture or any Supplemental Indenture.

Section 6.16.   <u>Appointment of Disposal Agent</u>

The Issuer hereby appoints FTCEM, at its specified office in New York City as Disposal Agent in respect of each Series of Notes.  The Issuer reserves the right at any time to vary or terminate the appointment of the Disposal Agent and to appoint additional or other Disposal Agents.

Section 6.17.   <u>Duties of Agents Generally</u>

The obligations of the Agents are several and not joint.  Each Agent shall be obliged to perform only such duties as are specifically set out in this Indenture and any relevant Supplemental Indenture and any duties necessarily incidental to them.  No implied duties or obligations shall be read into any such documents.  No Agent shall be obliged to perform additional duties set out in any Supplemental Indenture unless it shall have previously agreed to perform such duties.  If this Indenture or any relevant Supplemental Indenture is amended on or after a date on which any Agent accepts any appointment in a way that affects the duties expressed to be performed by such Agent, it shall not be obliged to perform such duties as so amended unless it has first approved the relevant amendment.  No Agent shall be under any obligation to take any action under this Indenture or any Supplemental Indenture that it expects, and has so notified the Issuer in writing, will result in any expense to or liability of such Agent, the payment of which is not, in its opinion, assured to it within a reasonable time.

Section 6.18.   <u>Duties of the Note Calculation Agent</u>

(a)      <u>General; Calculations</u>.  The Issuer hereby appoints FTCEM at its specified office in London, England, as Note Calculation Agent in respect of each Series of Notes.  The Note Calculation Agent shall perform the duties expressed to be performed by it in this Indenture, any Supplemental Indenture and the Transaction Documents in respect of each Series of Notes.  As

NY-523056 v9

soon as practicable after the relevant time on each Interest Determination Date for a Series or such time on such date as this Indenture, the relevant Supplemental Indenture or any Transaction Documents may in respect of any Series require to be determined any Spot Rate, Interest Amounts, Redemption Amount, Collateral Principal Amount, any reductions in the Outstanding Principal Amount, the Early Redemption Amount, the Daily Average of the Aggregate Outstanding Principal Amount and any quote to be obtained or any determination or calculation to be made by the Note Calculation Agent, the Note Calculation Agent shall make such determinations and calculations or obtain such quotes, as the case may be.

(b)     Notifications.  In respect of any Series of Notes, the Calculation Agent shall take the following actions:

(i)     The Note Calculation Agent shall cause the Spot Rate and the Interest Amounts for each Interest Accrual Period, Interest Period or Interest Payment Date and, if required to be calculated, any Redemption Amount to be notified to the Trustee, the Issuer, each of the Paying Agents, the relevant Noteholders and, if the Notes of the relevant Series are to be listed on a stock exchange and the rules of such exchange so require, such exchange as soon as possible after their determination but in no event later than: (i) the commencement of the relevant Interest Period, if determined prior to such time; or (ii) in all other cases (except as provided in paragraphs (b) and (c) below), the fourth Business Day after such determination.  If the Note Calculation Agent at any material time does not make any determination or calculation or take any action that it is required to do pursuant to this Indenture, it shall forthwith notify the Issuer, the Trustee and the Paying Agents.

(ii)     The Note Calculation Agent shall, no later than 10:00 a.m. (New York City time) on the third Business Day immediately preceding each Interest Payment Date, give notice to the Trustee and the Paying Agents of the amount of interest payable in respect of the Notes on such following Interest Payment Date. If the Trustee and the Paying Agents have not received such written notice from the Note Calculation Agent by such time in respect of an Interest Payment Date, they shall, by no later than 9:00 a.m. (New York City time) on the first Business Day immediately preceding such Interest Payment Date, advise the Note Calculation Agent that they have not received such notification.   Notwithstanding the terms of this Indenture and any Supplemental Indenture, the parties hereto agree that, in respect of an Interest Payment Date, unless the Trustee and the Paying Agents receive such written notification from the Note Calculation Agent described in this paragraph by no later than 10:00 a.m. (New York City time) on such Interest Payment Date (provided that the Trustee and the Paying Agents have, in accordance with the terms of this paragraph, advised the Note Calculation Agent that they have not received such notification), the Trustee and the Paying Agents shall not be obliged to make any payment in respect of the Notes of the relevant Series on any such Interest Payment Date.

(iii)     The Note Calculation Agent shall, within one Business Day of making or, as the case may be, being notified of, the relevant calculations and determinations, notify the Issuer, the Trustee and the Paying Agents of:  (i) any Collateral Principal Amount determined under a Default Swap; (ii) any reduction in the Outstanding Principal Amount

of the Notes of the relevant Series; and (iii) (insofar as is practicable) the Early Redemption Amount in respect of the Notes of the relevant Series.

(c)  <u>Performance of Duties; Replacement of Note Calculation Agent</u>.  Where more than one Note Calculation Agent is appointed in respect of the Notes, references in this Indenture to the Note Calculation Agent shall be construed as each Note Calculation Agent performing its respective duties under this Indenture and the relevant Supplemental Indenture.  If the Note Calculation Agent is unable or unwilling to act as such or if the Note Calculation Agent fails duly to calculate any Interest Amounts or the Redemption Amount or to comply with any other requirement, the Issuer shall (with prior written notice to the Trustee) appoint a leading bank or investment banking firm engaged in the inter bank market (or, if appropriate, money, swap or over-the-counter index options market) that is most closely connected with the calculation or determination to be made by the Note Calculation Agent (acting through its principal New York City office or any other office actively involved in such market) to act as such in its place.  The Note Calculation Agent may not resign its duties without a successor having been appointed as aforesaid.

(d)  <u>Information Requested by Agents</u>.  Each Noteholder and the Trustee may request of the Note Calculation Agent and the Note Calculation Agent shall as soon as practicable thereafter deliver to or to the order of such person, reasonable information as to the manner of, and the bases and assumptions upon which, amounts have been calculated pursuant to this Indenture, any Supplemental Indenture and the other Transaction Documents.

(e)  <u>Binding Agreements</u>.  With respect to any act, matter, deed, agreement, contract, instrument or arrangement which is to be binding on the Issuer and which is executed by the Settlement Marketing Agent on behalf of the Issuer, the Note Calculation Agent will identify or specify, and where in writing indicate that such execution is in the name of, or by, or for the account of the relevant Segregated Portfolio, which shall be identified by name.  The Note Calculation Agent agrees to indemnify the directors of the Company in respect of any liability arising under Section 238(2) of the Companies Law (2004 Revision) of the Cayman Islands as a result of the Note Calculation Agent's breach of this undertaking.  The directors of the Company are third party beneficiaries in respect of this indemnity.

Article VII

COVENANTS

Section 7.1.  <u>Payment of Principal and Interest</u>

The Issuer will duly and punctually pay or cause to be paid the principal of and interest on the Notes of each Series, and make all other payments required by this Indenture and the relevant Supplemental Indenture, in accordance with the terms of such Notes and this Indenture and such Supplemental Indenture.  Amounts properly withheld under the Code or other applicable law by any Person from a payment to any Noteholder of interest and/or principal shall be considered as having been paid by the Issuer to such Noteholder for all purposes of this Indenture and the relevant Supplemental Indenture.

Each Paying Agent shall, unless prevented from doing so for reasons beyond its reasonable control, give notice to each Noteholder of any such withholding requirement no later than ten days prior to the date of the payment from which amounts are being withheld; *provided*, that despite the failure of the Trustee to give such notice, amounts withheld pursuant to applicable tax laws shall be considered as having been paid by the Issuer as provided above.

Section 7.2.    Maintenance of Process Agent

The Issuer irrevocably designates and appoints CT Corporation, 111 Eighth Avenue, New York, New York 10011, as its agent (the "Process Agent") for service of all process, such service being hereby acknowledged to be effective and binding service in every respect. The Issuer will at all times maintain a Process Agent in New York, New York.

Section 7.3.    Money for Note Payments to be Held in Trust

All payments of amounts due and payable in respect of any Notes of any Series that are to be made from amounts withdrawn from the Collateral Account for such Series shall be made on behalf of the Issuer by the Trustee or a Paying Agent.

Whenever the Issuer shall have a Paying Agent other than the Trustee, it shall, on or before the Business Day next preceding each Interest Payment Date or other date on which payments on the Notes of any Series are due, as the case may be, direct the Trustee to deposit on or before such Interest Payment Date or other date with such Paying Agent, if necessary, an aggregate sum sufficient to pay the amounts then becoming due (to the extent funds are then available for such purpose in the relevant Collateral Account), such sum to be held in trust for the benefit of the Persons entitled thereto and (unless such Paying Agent is the Trustee) the Issuer shall promptly notify the Trustee of its action or failure so to act. Any monies deposited with a Paying Agent (other than the Trustee) in excess of an amount sufficient to pay the amounts then becoming due on the Notes in respect of which such deposit was made shall be paid over by such Paying Agent to the Trustee for application in accordance with Article IV.

The initial Paying Agents for the Notes shall be as set forth in Section 2.2. Any additional or successor Paying Agents shall be appointed by Issuer Order with written notice thereof to the Trustee. The Issuer shall not appoint any Paying Agent that is not, at the time of such appointment, a depository institution or trust company subject to supervision and examination by applicable governmental banking authorities. The Issuer shall cause each Paying Agent other than the Trustee to execute and deliver to the Trustee an instrument in which such Paying Agent shall agree with the Trustee (and if the Trustee acts as Paying Agent, it hereby so agrees), subject to the provisions of this Section 7.3, that such Paying Agent will:

(a)    allocate all sums received for payment to the Holders of Notes for which it acts as Paying Agent on each Interest Payment Date or other date payments on the Notes are due among such Holders in the proportion specified in the applicable report, in each case to the extent permitted by applicable law, it being understood that the applicable Clearing Agency as Holder of a Global Note shall be responsible in accordance with the arrangements between it and the Issuer for the allocation of sums received by it to its Clearing Agency Participants;

(b)      hold all sums held by it for the payment of amounts due in respect of the Notes in trust for the benefit of the Persons entitled thereto until such sums shall be paid to such Persons or otherwise disposed of as herein provided and pay such sums to such Persons as herein provided;

(c)      if such Paying Agent is not the Trustee, immediately resign as a Paying Agent and forthwith pay to the Trustee all sums held by it in trust for the payment of Notes if at any time it ceases to meet the standards set forth above required to be met by a Paying Agent at the time of its appointment;

(d)      if such Paying Agent is not the Trustee, immediately give the Trustee notice of any Default by the Issuer in the making of any payment required to be made; and

(e)      if such Paying Agent is not the Trustee at any time during the continuance of any such Default, upon the written request of the Trustee, forthwith pay to the Trustee all sums so held in trust by such Paying Agent.

The Issuer may at any time, for the purpose of obtaining the satisfaction and discharge of this Indenture and each Supplemental Indenture or for any other purpose, pay, or by Issuer Order direct any Paying Agent to pay, to the Trustee all sums held in trust by the Issuer or such Paying Agent, such sums to be held by the Trustee upon the same trusts as those upon which such sums were held by the Issuer or such Paying Agent; and, upon such payment by any Paying Agent to the Trustee, such Paying Agent shall be released from all further liability in respect of such money.

Except as otherwise required by applicable law, any money deposited with the Trustee or any Paying Agent in trust for the payment of the principal of or interest on any Note and remaining unclaimed for two (2) years after such principal or interest has become due and payable shall be paid upon Issuer Request to the Issuer and the Holder of such Note shall thereafter, only have a claim, as an unsecured general creditor, against the Issuer for payment of such amounts and all liability of the Trustee or such Paying Agent in respect of such trust money (but only to the extent of the amounts so paid to the Issuer) shall thereupon cease. The Trustee or such Paying Agent, before being required to make any such release of payment, may, but shall not be required to, adopt and employ, at the expense of the Issuer, any reasonable means of notification of such release of payment, including, but not limited to, mailing notice of such release to Holders whose Notes have been called but have not been surrendered for Redemption or whose right to or interest in monies due and payable but not claimed is determinable from the records of any Paying Agent, at the last address of record of each such Holder.

Section 7.4.    Existence of the Issuer; Tax Residence; Separate Existence

(a)      The Company shall, to the maximum extent permitted by applicable law, preserve its existence, rights, and franchises as an exempted segregated company with limited liability incorporated and registered under the laws of the Cayman Islands (unless the Company or any successor becomes incorporated and/or organized under the laws of any other jurisdiction other than the United States, in which case the Company shall preserve its existence, rights, and

NY-523056 v9

franchises under the laws of that other jurisdiction).  The Company shall cause each Issuer to obtain and preserve its qualification to do business as a foreign corporation in each jurisdiction (other than the United States) in which such qualification is or shall be necessary to protect the validity and enforceability of this Indenture, any Supplemental Indenture, the Notes or any of the Collateral; *provided, however*, that the Trustee may agree to or require, without the consent of any Noteholders, the change in the place of residence of the Issuer for taxation purposes (other than a change to the United States), provided that:

(i)       the Trustee is satisfied that (A) all governmental and regulatory approvals and consents necessary for or in connection with the change by the Issuer of its place of tax residence have been obtained and (B) such approvals and consents are at the time of change in full force and effect;

(ii)      the Company and the relevant Issuer execute such other documents and instruments (if any) as the Trustee may require in order that such change in place of tax residence is fully effective and complies with such other requirements in the interest of the Noteholders as the Trustee may direct;

(iii)     in connection with any proposed change in the place of tax residence of the Issuer, the Trustee may, without the consent of any Noteholders agree to a change of the law from time to time governing such Notes and/or this Indenture and/or any relevant Supplemental Indenture, provided that such change of governing law is not, in the opinion of the Trustee, materially prejudicial to the interests of such Noteholders in respect of the Collateral; and

(iv)     an Opinion of Counsel satisfactory to the Trustee is provided concerning any change in the place of tax residence of the Issuer.

(b)      The Company shall, and shall procure that each Issuer does not not take any action, or conduct its affairs in a manner, that is likely to result in its separate existence being ignored or its assets and liabilities or the assets and liabilities of any Segregated Portfolio being substantively consolidated with any other Person in a bankruptcy, reorganization or other insolvency proceeding.  Without limiting the foregoing, (i) the Company shall not (i) have any subsidiaries, (ii) have any employees (other than its directors), (iii) engage in any transaction with any shareholder that would constitute a conflict of interest (other than the entry into the Administration Agreement with the Administrator) or (iv) pay dividends other than in accordance with the terms of its organizational documents.

Section 7.5.   <u>Protection of Collateral</u>

(a)      The Issuer shall, to the maximum extent permitted by applicable laws, from time to time execute, deliver and file, as necessary, all such supplements and amendments to this Indenture and any Supplemental Indenture and all such financing statements, amendments of financing statements, continuation statements, instruments of further assurance and other instruments, and shall take such other action as may be necessary or advisable or desirable to secure the rights and remedies of the Trustee and the relevant Secured Parties or to:

(i)       Grant more effectively all or any portion of the relevant Collateral;

(ii)     maintain or preserve the lien (and the priority thereof) of this Indenture and the relevant Supplemental Indenture or to carry out more effectively the purposes hereof or thereof;

(iii)    perfect, publish notice of or protect the validity of any Grant made or to be made by this Indenture or the relevant Supplemental Indenture (including, without limitation, any and all actions necessary or desirable as a result of changes in law or regulations);

(iv)    enforce any of the Collateral Securities or other instruments or property included in the relevant Collateral;

(v)     preserve and defend title to the relevant Collateral and the rights therein of the Trustee, the relevant Noteholders and the relevant Secured Parties against the claims of all Persons; or

(vi)    pay or cause to be paid any and all taxes levied or assessed upon all or any part of the relevant Collateral.

(b)     The Issuer shall pay or cause to be paid taxes, if any, levied on account of the beneficial ownership by the Issuer of any Collateral Securities that secure the Notes.

(c)     The Issuer shall enforce all of its material rights and remedies under each Default Swap. If the relevant Default Swap Counterparty fails to make any payment due under a Default Swap, the Issuer shall promptly notify the Default Swap Guarantor of the failure of the Default Swap Counterparty to make such payment.

Section 7.6.     <u>Intentionally Omitted</u>

Section 7.7.     <u>Performance of Obligations</u>

(a)     The Issuer shall not take any action, and will use its commercially reasonable efforts not to permit any action to be taken by others, that would release any Person from any of such Person's covenants or obligations under any instrument included in the Collateral.

(b)     The Issuer may, with the prior written consent of at least a simple majority in principal amount of the outstanding Notes of each Series, contract with other Persons for the performance of actions and obligations to be performed by the Issuer hereunder by such Persons. Notwithstanding any such arrangement, the Issuer shall remain primarily liable with respect thereto. In the event of such contract, the performance of such actions and obligations by such Persons shall be deemed to be performance of such actions and obligations by the Issuer; and the Issuer will punctually perform, and use their best efforts to cause such Person to perform, all of its obligations and agreements contained in such contract.

(c)     The Issuer may without the consent of any Noteholders retain accountants and attorneys to perform the tasks required to be performed by accountants and attorneys hereunder, or such other tasks as are routinely performed by accountants and attorneys for entities such as the Issuer.

Section 7.8.    <u>Issuer's Covenants</u>

So long as any Note is outstanding, the Company or the relevant Issuer, as applicable shall:

(a)    <u>Independent Director</u>: at all times have at least one independent director who has not, within the last five years, (i) been a direct or indirect legal or beneficial owner of any shares of FTCEM (or any of its affiliates), (ii) been a creditor, supplier, employee, manager or contractor (or a direct family member of any such person) of FTCEM (or any of its affiliates) and (iii) has not controlled (directly, indirectly or otherwise) FTCEM or any creditor, supplier, employee or contractor of FTCEM.

(b)    <u>Books of Account</u>: keep proper books of account and, at any time after an Event of Default or Default has occurred or if the Trustee believes that such an event has occurred, so far as permitted by applicable law, allow the Trustee and anyone appointed by it to whom the Issuer has no reasonable objection, access to its books of account at all reasonable times during normal business hours;

(c)    <u>Notice of Events of Default</u>: notify the Trustee in writing immediately on becoming aware of the occurrence of any Event of Default or Default;

(d)    <u>Information</u>: so far as permitted by applicable law, give the Trustee such information as it reasonably requires to perform its functions;

(e)    <u>Financial Statements, etc.</u>: send to the Trustee at the time of their issue and in the case of annual financial statements in any event within 210 days of the end of each financial year two copies in English of every balance sheet, profit and loss account, report or other notice, statement or circular issued (if any), or that legally or contractually should be issued, to the members or creditors (or any class of them) of the Issuer generally in their capacity as such;

(f)    <u>Notices to Noteholders</u>: for each Series send to the relevant Trustee the form of each notice to be given to Noteholders and, once given, two copies of each such notice;

(g)    <u>Further Acts</u>: so far as permitted by applicable law, do such further things as may be necessary to give effect to this Indenture and each Supplemental Indenture;

(h)    <u>Change in Agents</u>: give at least 14 days' prior notice to the relevant Noteholders of any future appointment, resignation or removal of an Agent or of any change by an Agent of its specified office and not make any such appointment or removal without the Trustee's prior written approval;

(i)    <u>Indenture</u>: comply with its obligations under the this Indenture and each Supplemental Indenture and, without prejudice to the generality of the foregoing, at all times maintain a Calculation Agent and a Disposal Agent in respect of each Series in each case as specified in the relevant Supplemental Indenture;

(j)    Compliance: in respect of each Series comply with its obligations under the relevant Default Swap and use its reasonable efforts to make such amendments to the Default Swap as may be required by the Trustee;

(k)    Restrictions:

(i)    not engage in any business whatsoever, other than (i) offering, issuing and selling multiple Series of Notes, (ii) offering, issuing and selling Other Secured Obligations, (iii) acquiring the Collateral and/or Other Collateral and entering into Hedging Transactions relating to each relevant Series of Notes, (iv) acquiring collateral relating to Other Secured Obligations, (v) entering into and performing its obligations under the Transaction Documents, (vi) entering into and performing its obligations under credit default swaps, equity default swaps and other transactions with respect to Other Secured Obligations, (vii) pledging the Principal Investments and/or Other Collateral and its rights under the relevant Default Swaps and Hedging Transactions to the Trustee (for the benefit of the Secured Parties of the related Series of Notes) pursuant to this Indenture and the Supplemental Indenture for each relevant Series, (viii) pledging collateral and its rights under relevant transaction documents to trustees for Other Secured Obligations pursuant to the security documents related thereto and (ix) engaging in other activities incidental to the foregoing as permitted by the Transaction Documents;

(ii)    not dispose of the Collateral or any interest therein, or create any mortgage, charge or other security interest or right of recourse in respect thereof in favor of any person (except as expressly permitted by the Indenture);

(iii)    (to the extent that it is within the control of the Company) cause or permit any Default Swap, any Default Swap Guarantee or any Hedging Transaction to be amended, terminated or discharged or permit the security interest created pursuant to this Indenture to be modified, released or subordinated (other than in connection with a transfer under the Default Swap or Hedging Transaction as otherwise permitted by this Indenture);

(iv)    not release any party to any Default Swap or Hedging Transaction (other than in connection with a transfer under the Default Swap or Hedging Transaction), any Default Swap Guarantee, this Indenture or any Supplemental Indenture or any other Transaction Document from any existing obligations thereunder;

(v)    not have any subsidiaries (other than in connection with any substitution of the obligor under the Notes and this Indenture);

(vi)    not consent to any variation of, or exercise any powers or consent or waiver pursuant to, the terms of the Transaction Documents or other agreement relating to the issuance of the Notes or any related transactions (except as expressly permitted by this Indenture);

(vii)   (to the extent the same is within the control of the Issuer) consolidate or merge with any other person or convey or transfer its properties or assets substantially as an entirety to any person (except as expressly permitted by the Indenture);

(viii)   not have any employees;

(ix)   (except as envisaged by the Articles of Association or other similar organizational document and to the extent the same is within the control of the Issuer) not pay any dividends or make any distribution to its shareholders;

(x)   not open or have any interest in any account whatsoever with any bank or financial institution unless such account relates to any Notes or any Collateral, except where such account or the Issuer's interest therein is simultaneously subject to security interest in favor of the Trustee so as to form part of such Collateral or except where such account is opened in connection with the administration and management of the Issuer and only monies necessary to the administration and management of the Issuer (including, *inter alia*, share capital and corporate benefit payments) are credited to such account;

(xi)   (to the extent the same is within the control of the Issuer) not issue or allot shares to persons other than such shares as were in issue on May 30, 2007;

(l)   <u>Taxes</u>:  at all times use its commercially reasonable efforts to minimize taxes and any other costs arising in connection with its activities;

(m)   <u>Collateral</u>: except as provided in the relevant Supplemental Indenture, use all reasonable efforts to procure that the Collateral for each Series (and its proceeds, if any) is at all times distinguishable from the Collateral for each other Series (and its proceeds, if any) and from its other assets and ensure the Collateral is held in safe custody in New York City by the Trustee or other reputable custodian or bank approved by the Trustee;

(n)   <u>Conditions binding</u>:   comply with, perform and observe all of the provisions of this Indenture and any Supplemental Indenture expressed to be binding on it; and

(o)   <u>Registration of mortgages and charges</u>:  comply with any registration requirements in the Cayman Islands (and any other jurisdiction where such registration requirements may apply) in respect of any and all security interests created by this Indenture and any Supplemental Indentures securing the Notes of and, forthwith upon execution of any further instruments or documents pursuant thereto creating or purporting to create or to perfect or to protect any security interest by the Issuer, enter in such register, and register in any other jurisdiction where such registration may be required, details of such instrument or document.

(p)   <u>Affiliates</u>:  maintain an arm's-length relationship with its Affiliates (if any).

(q)  Adequate Capital:  maintain adequate capital in light of its operations.

(r)  Preserve Identity:  (i) the Company shall conduct business in its own name as set forth in its organizational documents; pay its own liabilities out of the general asserts of the Company; observe corporate formalities; use separate stationary, invoices and checks; and correct any know misunderstanding regarding its separate identity and (ii) the Company shall procure that each Issuer shall conduct business in its own name as set forth in its organizational documents and for the account of the relevant Segregated Portfolio; pay its liabilities out of the assets of such Segregated Portfolio; and correct any know misunderstanding regarding the segregation of its assets and liabilities from all other Segregated Portfolios and the Company.

Section 7.9.  Negative Covenants

(a)  So long as any Note is outstanding, the Company or the relevant Issuer, as applicable shall not:

(i)  claim any credit on, or make any deduction from, the principal or interest payable in respect to the Notes (other than amounts withheld in accordance with the Code or any applicable laws of the Cayman Islands or any other applicable jurisdiction);

(ii)  (A) incur or assume or guarantee any indebtedness, other than the Notes and this Indenture, the Supplemental Indentures and the transactions contemplated hereby and thereby, or (B) (1) issue any additional class of securities, except as otherwise permitted by this Indenture, or (2) issue any shares; or

(iii)  (A) permit the validity or effectiveness of this Indenture or any Supplemental Indenture or any Grant hereunder or thereunder to be impaired, or permit the lien of this Indenture or any Supplemental Indenture to be amended, hypothecated, subordinated, terminated or discharged, or permit any Person to be released from any covenants or obligations in respect of this Indenture, any Supplemental Indenture or the Notes, except as may be expressly permitted hereby, (B) permit any lien, charge, adverse claim, security interest, mortgage or other encumbrance (other than the lien of this Indenture and any Supplemental Indenture) to be created on or extend to or otherwise arise upon or burden the Collateral or any part thereof, any interest therein or the proceeds thereof, or (C) take any action that would permit the lien of this Indenture and the relevant Supplemental Indenture not to constitute a valid first priority security interest in any Collateral, except as may be permitted hereby or thereby.

(b)  None of the Company, Issuer or the Trustee shall sell, transfer, exchange or otherwise dispose of Collateral, or enter into or engage in any business in respect of any part of the Collateral except as expressly permitted by this Indenture and any Supplemental Indenture.

Section 7.10.  Statement as to Compliance

On or before June 30 in each calendar year, commencing in 2008, or immediately if there has been a default in the fulfillment of an obligation under this Indenture or any Supplemental

Indenture, the Issuer shall deliver to the Trustee and the Default Swap Counterparty, an Officer's certificate stating, as to each signer thereof, that:

(a)   a review of the activities of the Company and the Issuer and of the Company's and Issuer's performance under this Indenture during the prior calendar year (or from the date of this Indenture until December 31, 2007, in the case of the first such Officer's certificate) has been made under his supervision; and

(b)   to the best of his knowledge, based on such review, the Company and the Issuer have fulfilled all of their obligations under this Indenture and any Supplemental Indenture throughout such year, or, if there has been a default in the fulfillment of any such obligation, specifying each such default known to him and the nature and status thereof.

Section 7.11.   <u>Company and Issuer May Consolidate, etc., Only on Certain Terms</u>

Neither the Company nor the Issuer shall consolidate or merge with or into any other Person or transfer or convey all or substantially all of its assets to any Person, unless permitted by laws of the Cayman Islands and unless:

(a)   the Company or the Issuer, as the case may be,  shall be the surviving corporation, or the Person (if other than the Company) formed by such consolidation or into which the Company or the Issuer is merged or to which all or substantially all of the assets of the Company or the Issuer are transferred shall be a company incorporated and existing under the laws of the Cayman Islands or such other jurisdiction as to which the requirements for a change in jurisdiction set forth in Section 7.4 have been met, and shall expressly assume, by a Supplemental Indenture executed and delivered to the Trustee, the Default Swap Counterparty and each Noteholder, the due and punctual payment of the principal of and interest on all Notes and the obligations of the Company or the Issuer under each Default Swap and the performance of every covenant of this Indenture and any Supplemental Indenture on the part of the Company or the Issuer to be performed or observed, all as provided herein;

(b)   intentionally omitted;

(c)   if the Company or the Issuer, as the case may be, is not the surviving corporation, the Person formed by such consolidation or into which the Company or the Issuer is merged or to which all or substantially all of the assets of the Company or the Issuer are transferred shall have agreed with the Trustee (i) to observe the same legal requirements for the recognition of such formed or surviving corporation as a legal entity separate and apart from any of its Affiliates as are applicable to the Company or the Issuer in respect of its Affiliates and (ii) not to consolidate or merge with or into any other Person or transfer or convey all or substantially all of its assets to any other Person except in accordance with the provisions of this Section 7.11;

(d)   if the Company or the Issuer, as the case may be, is not the surviving corporation, the Person formed by such consolidation or into which the Company or the Issuer is merged or to which all or substantially all of the assets of the Company or the

NY-523056 v9

Issuer are transferred shall have delivered to the Trustee and the Default Swap Counterparty an Officer's certificate and an Opinion of Counsel each stating that such Person shall be duly organized, validly existing and in good standing in the jurisdiction in which such Person is organized; that such Person has sufficient power and authority to assume the obligations set forth in subsection (a) above and to execute and deliver a Supplemental Indenture for the purpose of assuming such obligations; that such Person has duly authorized the execution, delivery and performance of a Supplemental Indenture for the purpose of assuming such obligations and that such Supplemental Indenture is a valid, legal and binding obligation of such Person, enforceable in accordance with its terms, subject only to bankruptcy, reorganization, insolvency, moratorium and other laws affecting the enforcement of creditors' rights generally and to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law); that, immediately following the event which causes such Person to become the successor to the Company or the Issuer (i) such Person has good and marketable title, free and clear of any lien, security interest or charge, other than the lien and security interest of this Indenture and any Supplemental Indenture, to the Collateral securing, in the case of a consolidation or merger of the Company or the Issuer, all of the Notes and the obligations owing to the Secured Parties or, in the case of any transfer or conveyance of the Collateral securing any Series of Notes, such Series of Notes and the obligations owing to the Secured Parties in respect of such Series of Notes and (ii) the Trustee continues to have a valid perfected first priority security interest in the Collateral securing, in the case of a consolidation or merger of the Company or the Issuer, all of the Notes and the obligations owing to the Secured Parties, or, in the case of any transfer or conveyance of the Collateral securing any Series of Notes, such Series of Notes and the obligations owing to the Secured Parties in respect of such Series of Notes;

(e)     immediately after giving effect to such transaction, no Event of Default shall have occurred and be continuing;

(f)     the Company or the Issuer, as the case may be, shall have notified the Default Swap Counterparty of such consolidation, merger, transfer or conveyance and shall have delivered to the Trustee and each Noteholder an Officer's certificate and an Opinion of Counsel each stating that such consolidation, merger, transfer or conveyance and the relevant Supplemental Indenture comply with this Article VII and that all conditions precedent in this Article VII provided for in respect of such transaction have been complied with;

(g)     after giving effect to such transaction, the Company or the Issuer, as the case may be, will not be required to register as an investment company under the Investment Company Act; and

(h)     the Holders of not less than 80% of the principal amount of each Series of Notes and the Default Swap Counterparty do not object to such merger, consolidation or transfer within 10 Business Days after receipt of notice thereof.

Section 7.12.   <u>Successor Substituted</u>

Upon any consolidation or merger, or transfer or conveyance of all or substantially all of the assets of the Company and each Issuer in accordance with Section 7.11 hereof, the Person formed by or surviving such consolidation or merger (if other than the Issuer), or, the Person to which such consolidation, merger, transfer or conveyance is made, shall succeed to, and be substituted for, and may exercise every right and power of, and shall be bound by each obligation and covenant of, the Company and each Issuer under this Indenture and each Supplemental Indenture with the same effect as if such Person had been named as the Issuer herein.  In the event of any such consolidation, merger, transfer or conveyance, the Person named as the "Issuer" in the first paragraph of this Indenture and any Supplemental Indenture or any successor which shall theretofore have become such in the manner prescribed in this Article VII may be dissolved, wound-up and liquidated at any time thereafter, and such Person thereafter shall be released from its liabilities as obligor and maker on all the Notes and from its obligations under this Indenture and each Supplemental Indenture.

Section 7.13.   <u>Certain Tax Matters</u>

The Issuer shall comply with the restrictions set forth in Schedule B attached hereto.

Article VIII

SUPPLEMENTAL INDENTURES

Section 8.1.   <u>Supplemental Indentures Without Consent of Noteholders</u>

Without the consent of the Holders of any Notes, the Issuer when authorized by Board Resolutions, and the Trustee, at any time and from time to time may enter into one or more Supplemental Indentures, in form satisfactory to the Trustee, (i) if such Supplemental Indenture would have no material adverse effect on any of the Noteholders or the Default Swap Counterparty or (ii) for any of the following purposes:

(a)   to cure any ambiguity or manifest or proven error or correct or supplement any provisions contained therein which may be defective or inconsistent with any provision contained therein or make any modification that is of a formal, minor or technical nature or which is made to correct a manifest or proven error;

(b)   to evidence the succession of any person to the Issuer and the assumption by any such successor of the covenants of the Issuer in the Notes, the Indenture and the other Transaction Documents;

(c)   to add to the covenants of the Issuer or the Trustee for the benefit of the Holders of the Notes or to surrender any right or power conferred upon the Issuer;

(d)   to convey, transfer, assign, mortgage or pledge any property to the Trustee, or add to the conditions, limitations or restrictions on the authorized amount, terms and purposes of the issue, authentication and delivery of the Notes;

(e)     to evidence and provide for the acceptance of appointment by a successor trustee and to add to or change any of the provisions of the Indenture or other Transaction Documents as shall be necessary to facilitate the administration of the trusts under the Indenture by more than one Trustee;

(f)     to provide for the issuance of additional Series of Notes or Notes of an existing Series to the extent permitted under this Indenture;

(g)     to correct or amplify the description of any property at any time subject to the security interest created by the Indenture or any Supplemental Indenture, or to better assure, convey, and confirm unto the Trustee any property subject or required to be subject to the security interest created by the Indenture or any Supplemental Indenture (including, without limitation, any and all actions necessary or desirable as a result of changes in law or regulations) or subject to the security interest created by the Indenture or any Supplemental Indenture any additional property;

(h)     to take any action necessary or advisable to prevent any payments owing to the Issuer, the Trustee, any Paying Agents, the Securities Intermediary, the Note Registrars, the Note Calculation Agent or the Default Swap Counterparty under the Transaction Documents from becoming subject to withholding or other taxes, fees or assessments or to prevent the Issuer from being treated as engaged in a United States trade or business or otherwise being subject to United States federal, state or local income tax on a net income basis;

(i)     to conform the Indenture or such Transaction Document to the descriptions contained in the Offering Circular and any Offering Circular Supplement;

(j)     to prevent the Notes from being classified as other than in registered form pursuant to U.S. Treasury Regulation §5f.103-1(c); or

(k)     to modify, eliminate or add any provision to this Indenture to provide for a book-entry registration system for the Notes.

Any such modification, authorization or waiver shall be binding on the Noteholders and, unless the Trustee agrees otherwise, such modification shall be notified to the Noteholders as soon as practicable.

In determining whether or not the Holders of the Notes or the Default Swap Counterparty would be materially adversely affected by any such change, the Trustee may rely upon an Opinion of Counsel (prepared at the expense of the Person seeking the amendment) and such determination shall be binding on all present and future Holders of Notes.

The Trustee is hereby authorized to join in the execution of any such Supplemental Indenture and to make any further appropriate agreements and stipulations which may be therein contained, but the Trustee shall not be obligated to enter into any such Supplemental Indenture which affects the rights, duties, liabilities or immunities of the Trustee under this Indenture or otherwise, except to the extent required by law.

Promptly after the execution by the Issuer and the Trustee of any Supplemental Indenture pursuant to this Section 8.1, the Trustee, at the expense of the Issuer, shall mail a copy thereof to the Holders of the Notes of the relevant Series and the Default Swap Counterparty. Any failure of the Trustee to publish or mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such Supplemental Indenture.

Section 8.2.    <u>Supplemental Indentures with Consent of Noteholders</u>

Except as otherwise set forth in this Section 8.2, with the written consent of the Holders of at least 80% of each Series of Notes that is materially and adversely affected thereby delivered to the Trustee and the Issuer, the Trustee and the Issuer may enter into one or more Supplemental Indentures to add provisions to, or change in any manner or modify any of the provisions of, this Indenture or modify in any manner the rights of the Holders of the Notes of such Series under this Indenture. The Issuer may, consistent with the written advice of legal counsel, determine whether or not the Holders of a Series of Notes would be materially and adversely affected by such Supplemental Indenture (after giving notice of such Supplemental Indenture to the Holders of Notes). The Issuer's determination that a Supplemental Indenture will not adversely affect a Series of Notes shall be conclusive and binding on all present and future Holders of Notes. Any Supplemental Indentured entered into by the Issuer and the Trustee for purposes of issuance of a new Series of Notes shall be deemed not to have a material adverse effect on the Holders of the exiting Notes.

Notwithstanding anything in this Indenture to the contrary without the written consent of 100% of the Holders of each adversely affected Series of Notes, no modification to this Indenture may in respect of such Series:

(a)      change the relevant Scheduled Maturity Date or Final Maturity Date, or the due date of any installment of interest or additional distributions on a Note; reduce the principal amount thereof or the interest thereon, or the applicable Early Redemption Amount with respect thereto; change the earliest date on which a Note may be redeemed; change the provisions hereof relating to the application of proceeds of any Collateral to the payment of principal of or interest on the Notes or change any place where, or the coin or currency in which any amounts due to the Notes are payable; or impair the right to institute suit for the enforcement of any such payment on or after the Scheduled Maturity Date of such Series or other due date thereof (or, in the case of redemption, on or after the applicable Redemption Date);

(b)      reduce the percentage in aggregate principal amount of Holders of each Series whose consent is required for the authorization of any modification to this Indenture or other Transaction Documents or for any waiver of compliance with certain provisions of this Indenture or certain defaults hereunder or their consequences;

(c)      impair or adversely affect the Collateral for such Notes except as otherwise permitted by this Indenture and the relevant Supplemental Indenture;

(d)      permit the creation of any security interest ranking prior to or on a parity with the security interest created by this Indenture and the relevant Supplemental

Indenture in respect of any part of the relevant Collateral or terminate such security interest on any property at any time subject thereto or deprive the Holder of any Note, the Trustee or any other Secured Party of the security afforded by the lien of this Indenture and the relevant Supplemental Indenture;

(e)     reduce the percentage of Holders of the Notes of each Series whose consent is required to request the Trustee to enforce the security interest provided by the Indenture and the relevant Supplemental Indenture;

(f)     modify any of the provisions of this Section 8.2, except to increase any such percentage of Outstanding Notes whose consent is required for any such action or to increase the percentage of outstanding Notes whose consent is required to modify or waive other provisions of the Indenture or the relevant Supplemental Indenture;

(g)     modify the definition of the term "Outstanding" set forth in Section 1.1 or the relevant Supplemental Indenture;

(h)     modify any of the provisions of this Indenture or the relevant Supplemental Indenture in such a manner as to affect the calculation of the amount of any payment of interest on or principal of the Notes or to affect the right of the Holders of the Notes to the benefit of any provisions for the redemption of such Notes contained in this Indenture and the relevant Supplemental Indenture;

(i)     amend any provision of this Indenture, the relevant Supplemental Indenture or any other Transaction Document relating to the institution of proceedings for the Issuer to be adjudicated as bankrupt or insolvent, or the consent of the Issuer to the institution of bankruptcy or insolvency proceedings against it, or the filing in respect of the Issuer of a petition or answer or consent seeking reorganization, arrangement, moratorium or liquidation proceedings, or other proceedings under bankruptcy, insolvency or similar laws, or the consent of the Issuer to the filing of any such petition or the appointment of a receiver, liquidator, assignee, trustee or sequestrator (or other similar official) of the Issuer or any substantial part of its property, respectively;

(j)     amend any provision of this Indenture, the relevant Supplemental Indenture or any other Transaction Document that provides that (i) the obligations of the Issuer are limited recourse obligations of the Issuer payable solely from the relevant Collateral in accordance with the terms of this Indenture and the relevant Supplemental Indenture and (ii) neither the Trustee, the relevant Default Swap Counterparty, any Holder of Notes nor any other Secured Party shall be entitled to petition or take any other step for the liquidation, winding-up or examination of the Company, any Issuer or any Segregated Portfolio except as provided herein;

(k)     at the time of the execution of such modification, cause any payments owing to the Issuer, the Default Swap Counterparty, the Note Calculation Agent or any Paying Agent under the Transaction Documents to become subject to withholding or other taxes, fees or assessments or cause the Issuer to be treated as engaged in a United

States trade or business or otherwise be subject to United States federal, state or local income tax on a net income basis; or

(l)      at the time of the execution of such modification, result in a deemed sale or exchange of any of the Notes under Section 1001 of the Code.

It shall not be necessary for any consent of Noteholders under this Section 8.2 to approve the particular form of any proposed Supplemental Indenture, but it shall be sufficient if such consent shall approve the substance thereof.

Promptly after the execution by the Issuer and the Trustee of any Supplemental Indenture pursuant to this Section 8.2, the Trustee, at the expense of the Issuer, shall mail a copy thereof to the Holders of the Notes of the relevant Series and the Default Swap Counterparty. Any failure of the Trustee to publish or mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such Supplemental Indenture.

Notwithstanding anything in Section 8.1 or this Section 8.2 to the contrary, no amendment or supplement to the Indenture shall be effective unless and until, if such amendment or supplement could reasonably be expected to have a material adverse effect on a Default Swap Counterparty, such Default Swap Counterparty has received written notice of such amendment or supplement and has consented thereto in writing (which consent shall not be unreasonably withheld).

Section 8.3.    Execution of Supplemental Indentures

In executing or accepting the additional trusts created by any Supplemental Indenture permitted by this Article VIII or the modifications thereby of the trusts created by this Indenture, the Trustee shall be entitled to receive, and (subject to Sections 6.1 and 6.3 hereof) shall be fully protected in relying upon an Opinion of Counsel stating that the execution of such Supplemental Indenture is authorized or permitted by this Indenture and that all conditions precedent thereto have been complied with.  The Trustee may, but shall not be obligated to, enter into any such Supplemental Indenture which affects the Trustee's own rights, duties or immunities under this Indenture or otherwise.

Section 8.4.    Effect of Supplemental Indentures

Upon the execution of any Supplemental Indenture under this Article VIII, this Indenture shall be modified in accordance therewith, and such Supplemental Indenture shall form a part of this Indenture for all purposes; and every Holder of Notes of the relevant Series theretofore and thereafter authenticated and delivered hereunder shall be bound thereby.

Section 8.5.    Reference in Notes to Supplemental Indentures

Notes authenticated and delivered after the execution of any Supplemental Indenture pursuant to this Article VIII may, and if required by the Trustee shall, bear a notation in form approved by the Trustee as to any matter provided for in such Supplemental Indenture.  If the Issuer shall so determine, new Notes, so modified as to conform in the opinion of the Trustee and

82

the Issuer to any such Supplemental Indenture, may be prepared and executed by the Issuer and authenticated and delivered by the Trustee in exchange for Outstanding Notes.

Article IX

REDEMPTION OF NOTES; REDEMPTION PROCEDURES

Section 9.1.    Final Redemption

Unless previously redeemed, purchased and cancelled as provided below, each Note shall be redeemed on:

(a)    the applicable Scheduled Maturity Date for that Series if a Credit Event has not occurred on or before the Scheduled Maturity Date; and/or

(b)    the applicable Final Maturity Date if a Credit Event has occurred on or before the Scheduled Maturity Date of the Notes of such Series.

such later date, the "Maturity Date."

Upon the redemption of a Note on the Scheduled Maturity Date or the Final Maturity Date, unless the Supplemental Indenture specifies otherwise, the Noteholder shall be entitled to a Redemption Amount per Note equal to (a) (i) the greater of the Aggregate Outstanding Principal Amount for the related Series (after giving effect to the application of Collateral Principal Amount to Physical Settlement or Cash Settlement of the related Default Swap) and (ii) zero; divided by (b) the Number of Notes of the related Series.  For purposes of this calculation, the Notes are assumed to be comprised of individual Notes having outstanding principal amounts equal to the Minimum Denomination of the Notes in the Denomination Currency.

Upon the redemption of FX Dependent Notes on the Scheduled Maturity Date or the Final Maturity Date, unless the Supplemental Indenture specifies otherwise, the Redemption Amount shall be such number of units of the Settlement Currency equal to (a) the Redemption Amount, divided by (b) the Number of FX Dependent Notes, multiplied by (c) a fraction, the numerator of which is 1 and the denominator of which is the Spot Rate determined by the Note Calculation Agent on the Rate Determination Date immediately preceding the date of redemption.

If at any time the Aggregate Outstanding Principal Amount of the Notes is reduced to zero, upon payment of any outstanding amounts due in respect of each Note, each such Note shall become void and no further payment shall be made in respect of it.

Section 9.2.    Mandatory Redemption

If there is a payment default under the Collateral Investments in respect of a Series of Notes, or amounts become due under the Collateral Investments in respect of a Series of Notes prior to its respective stated date of maturity for whatever reason (other than as a result of a withdrawal or the exercise of a put right by the holders of such Principal Investments or Other

Collateral), all of the Collateral in respect of that Series of Notes shall be deemed to have become immediately repayable, whereupon the Issuer shall give notice as soon as reasonably practicable (unless otherwise specified in the relevant Supplemental Indenture) to the Default Swap Counterparty, the Trustee, the Paying Agents, the Note Registrars and the relevant Noteholders and upon the giving of such notice, or on the date specified therein, shall redeem all of the Notes of that Series at their Early Redemption Amount as provided in Section 9.5.

Section 9.3.    Redemption for Taxation Reasons

(a)    If the Issuer, on the occasion of the next payment due in respect of a Series of Notes, would be required by law to withhold or deduct or would be subject to tax in respect of its income (or otherwise) so that it would be unable to make payment of the full amount due or, as a result of any change (or proposed change) in tax laws or regulations or the official interpretation thereof (which change or amendment becomes effective on or after the date on which an agreement is reached to issue the first Tranche of the Notes of that Series), would receive or has received payments in respect of any Principal Investments, the Eligible Investments, the relevant Collateral Account, the relevant Default Swap or any Other Collateral in respect of that Series after deduction on account of tax and without a full gross up such that it would be unable to make payment of the full amount due, or (where such payments were, immediately prior to such change or proposed change in tax laws or regulations or the official interpretation thereof, subject to tax) after deduction on account of a higher rate of tax such that it would be unable to make payment of the full amount due (each, a "Tax Imposition"), the Issuer shall promptly so inform the Trustee, the Paying Agent and the Default Swap Counterparty and shall use its reasonable efforts to arrange the substitution of a company incorporated in another jurisdiction, with the consent of the Default Swap Counterparty (such consent not to be unreasonably withheld), to avoid such a Tax Imposition.

(b)    If, up to (but excluding) the 15th Business Day prior to the day upon which the next payment is due in respect of the Notes, the Issuer has not been able to arrange such substitution, the Default Swap Counterparty shall have the right, but not the obligation, in its sole discretion, under the relevant Default Swap to pay to the Issuer such amounts as will enable the Issuer (after any such Tax Imposition) to pay (and in such event, the Issuer will be obliged to pay) to the Noteholders the amounts which they would have received in the absence of such Tax Imposition. Notwithstanding Section 9.3(c) below, the Default Swap Counterparty may exercise its right to pay such additional amounts at any time up to the date of the next payment due in respect of the Notes and, having exercised such right, the Default Swap Counterparty shall be under no obligation to continue to pay such additional amounts in respect of future payments in respect of the Notes.   In the event that the Default Swap Counterparty ceases to pay such additional amounts, the provisions described in Section 9.3(c) below shall apply.

(c)    If the Default Swap Counterparty does not elect, or ceases to elect, as the case may be, to exercise such right to pay the Issuer such additional amounts before the 10th Business Day prior to the day upon which the next payment is due in respect of the Notes, the Issuer is required to convene a meeting of the Noteholders at which it shall propose an Extraordinary Resolution to provide for the disapplication of the Issuer's obligation to redeem as described in this Section 9.3(c).   In the event such Extraordinary Resolution is passed, no Event of Default shall be deemed to occur.   The Issuer shall convene the aforesaid meeting not later than seven

days prior to the day upon which the next payment is due in respect of the Notes. In the event of the Issuer being unable to arrange such substitution as described in Section 9.3(a) above, the Default Swap Counterparty not exercising its right to pay the Issuer such additional amounts as described in Section 9.3(b) above and such Extraordinary Resolution not being passed either at such meeting or at any adjournment thereof, the Issuer shall (not later than the seventh day following such meeting (or any adjournment thereof)) redeem all, but not less than all, of the Notes at Early Redemption Amount as provided in Section 9.5.

(d)     Notwithstanding the foregoing, if tax is required to be withheld or deducted from payments under the Notes and that requirement arises as a result of:

(i)     a withholding or deduction imposed on a payment by or on behalf of the Issuer to an individual required to be made pursuant to European Council Directive 2003/48/EC or any other Directive on the taxation of savings implementing the conclusions of the ECOFIN Council meeting of 26th to 27th November, 2000 on the taxation of savings income or any law implementing or complying with, or introduced in order to conform to, such Directive; or

(ii)     the presentation for payment of any Note by or on behalf of a Holder who would have been able to avoid such withholding or deduction by presenting the relevant Note to another Paying Agent in a Member State of the European Union,

then the provisions set forth in paragraphs (a), (b) and (c) above shall not apply. Such amounts shall be deducted from the amounts payable to such Noteholder, all other Noteholders shall receive the due amounts payable to them and the Notes shall not be redeemed. Any such deduction made pursuant to (c) or (d) above shall not constitute an Event of Default.

Section 9.4.     <u>Redemption upon Termination of Default Swap</u>

If a Default Swap is terminated in whole for any reason (other than the occurrence of a Credit Event), then the Issuer shall give not more than 45 nor less than 15 days' notice (or such other notice period as indicated in the relevant Supplemental Indenture) to the Trustee, the Noteholders and the Default Swap Counterparty (which notice shall be irrevocable), and on the date specified in such notice is required to redeem all but not less than all of the Notes of the relevant Series at their Early Redemption Amount as provided in Section 9.5. Such notice shall be given promptly upon the termination of the relevant Default Swap and such redemption made, unless an Extraordinary Resolution of the Holders of the Notes shall otherwise direct.

Section 9.5.     <u>Early Redemption Amount</u>

Unless otherwise specified in the relevant Supplemental Indenture, the Early Redemption Amount payable upon a redemption of any Note shall be an amount, determined by the Note Calculation Agent, equal to the greater of:

(a)     an amount determined by the Note Calculation Agent in accordance with the following formula:

$$\frac{\text{Disposal Collateral Proceeds} + \text{ETA}}{\text{Number of Notes}} \quad \text{and,}$$

(b)     zero;

*provided*, that in the case of FX Dependent Notes the Early Redemption Amount shall be payable in, and converted to, that number of units of the Settlement Currency that can be obtained with an amount of the Denomination Currency equal to the Early Redemption Amount. In order to effectuate such conversion the foregoing formula shall be multiplied by a fraction, the numerator of which is 1 and the denominator of which is the Spot Rate determined by the Note Calculation Agent on the Rate Determination Date.

Section 9.6.    Notice of Early Redemption

(a)     Notice to Paying Agents and Trustee. If the Issuer or the Paying Agent intends (other than consequent upon an Event of Default or Cash Settlement Date or any right of the Holder to require redemption) to redeem all or any of the Notes of any Series before their stated maturity date, it shall, at least 14 days before the latest date for the publication of the notice of redemption required to be given to Noteholders, give notice of such intention to the Paying Agents and the Trustee stating the date on which such Notes are to be redeemed and the principal amount of Notes to be redeemed.

(b)     Notice to Noteholders.   The Trustee shall publish any notice to Noteholders required in connection with any such redemption and shall, at the same time, also publish a separate list of the certificate numbers of any Notes previously drawn and not presented for payment.  Such notice shall specify the date fixed for redemption, the redemption price and the manner in which redemption will be effected or the terms of the exercise of such option and, in the case of a partial redemption, the certificate numbers of the Notes drawn.  For purposes of Rule 144A Global Notes, such redemption date shall be at least thirty (30) but not more than sixty (60) days from the date of said notice.

Section 9.7.    Purchases

If the Issuer has made arrangements for the realization of no more than the equivalent proportion of the relevant Collateral and for the purchase of the Notes and preserving the economic equivalent of the relevant Default Swap, which transaction will leave the Issuer with no net liabilities in respect thereof, it may at any time purchase Notes in the open market or otherwise at any price.

Section 9.8.    Cancellation

All Notes purchased by or on behalf of the Issuer shall be surrendered for cancellation by surrendering each such Note to the Trustee or the respective Note Registrar and, shall, together with all Notes redeemed by the Issuer, be cancelled forthwith.  Any Notes so surrendered for cancellation may not be reissued or resold and the obligations of the Issuer in respect of any such Notes shall be discharged.

Section 9.9.    Liquidation of Segregated Portfolios

Each Segregated Portfolio of the Company may be separately liquidated or placed in receivership without such liquidation or receivership resulting in the liquidation or receivership of another Segregated Portfolio or any other Issuer.

Article X

COLLECTIONS, REPORTS AND TAX MATTERS

Section 10.1.   Collection of Money

Except as otherwise expressly provided in this Indenture or the relevant Supplemental Indenture, the Trustee may demand payment or delivery of, and shall receive and collect, directly and without intervention or assistance of any fiscal agent or other intermediary, all money and other property payable to or receivable by the Trustee pursuant to this Indenture, including all payments due on the Collateral Securities, in accordance with the terms and conditions of such Collateral Securities. The Trustee shall segregate and hold all such money and property received by it in trust for the Holders of the Notes of the relevant Series, the relevant Default Swap Counterparty and the other relevant Secured Parties and shall apply it as provided in this Indenture and the relevant Supplemental Indenture.

Section 10.2.   Collateral Accounts

Pursuant to the relevant Supplemental Indenture for each Series, the Issuer will establish the Collateral Account in respect of such Series as a securities account with the Securities Intermediary in the name of the Trustee in accordance with Section 6.14 of this Indenture.

Section 10.3.   Reports by Trustee

The Trustee shall supply in a timely fashion to the Issuer any information regularly maintained by the Trustee that the Issuer may from time to time request in respect of the Collateral Securities and each Collateral Account and any other information reasonably needed to complete the Payment Date Statement. In addition, the Trustee shall promptly provide any other information reasonably available to the Trustee by reason of its acting as Trustee hereunder and required to be provided by Section 10.5.

Section 10.4.   Reports to Noteholders

On each Interest Payment Date, the Trustee shall deliver to the Issuer, each Noteholder of the relevant Series, the relevant Default Swap Counterparty and each Paying Agent a report substantially in the form provided to it by the Note Calculation Agent (a "Payment Date Statement"). Originals or copies of all Payment Date Statements provided for in this Section 10.4 shall be kept at the Registered Office. The Payment Report shall set forth the applicable transfer restrictions specified in Section 2.4 and, without duplication, include a statement (a "Section 3(c)7 Reminder Notice") to the following effect:

"The Investment Company Act of 1940, as amended (the "Investment Company Act"), requires that each Holder of a Note (or any beneficial interest therein) issued by the Issuer that is a U.S. Person be a "qualified purchaser" as defined in Section 2(a)(51)(A) of the Investment Company Act and related rules, a "knowledgeable employee" with respect to the Issuer as specified in Rule 3c-5 promulgated under the Investment Company Act or a company each of whose beneficial owners is such a qualified purchaser or a knowledgeable employee with respect to the Issuer (collectively, "Qualified Purchaser"). Under the rules, the Issuer or an agent acting on its behalf must have a "reasonable belief" that each holder of its outstanding securities that is a U.S. Person, including transferees, is a Qualified Purchaser. Consequently, each resale of a Note in the United States or to a U.S. Person must be made pursuant to Rule 144A under the Securities Act of 1933, as amended (the "Securities Act"), solely to a purchaser that is a "qualified institutional buyer" ("Qualified Institutional Buyer") within the meaning of Rule 144A and a Qualified Purchaser. Each purchaser of a Rule 144A Global Note will be deemed to represent at the time of purchase that: (i) the purchaser is a Qualified Institutional Buyer and also a Qualified Purchaser; (ii) the purchaser is not a dealer described in paragraph (a)(1)(ii) of Rule 144A unless such purchaser owns and invests on a discretionary basis at least $25 million in securities of issuers that are not affiliated persons of the dealer; (iii) the purchaser is not a plan referred to in paragraph (a)(1)(i)(D) or (a)(1)(i)(E) of Rule 144A, or a trust fund referred to in paragraph (a)(1)(i)(F) of Rule 144A that holds the assets of such a plan, unless investment decisions with respect to the plan are made solely by the fiduciary, trustee or sponsor of such plan; (iv) the purchaser, and each account for which it is purchasing, is required to hold and transfer at least the Minimum Denominations of the Notes specified in the Indenture; and (v) the purchaser will provide written notice of the foregoing, and of any applicable restrictions on transfer, to any transferee.

"The Issuer directs that the recipient of this notice, and any recipient of a copy of this notice, provide a copy to any person having an interest in the Note as indicated on the books of DTC or on the books of a participant in DTC or on the books of an indirect participant for which such participant in DTC acts as agent.

"The Indenture provides that if, notwithstanding the restrictions on transfer contained therein, the Issuer or a Responsible Officer of the Trustee determines that any beneficial owner or Holder of a Note (i) is a U.S. Person and (ii) is not (A) a Qualified Purchaser or (B) a company beneficially owned exclusively by Qualified Purchasers, the Issuer or the Trustee may require, by notice to such beneficial owner or Holder, as the case may be, that such beneficial owner or Holder sell all of its right, title and interest to such Note (or interest therein) to a Person that is both (1) a Qualified Institutional Buyer and (2) a Qualified Purchaser or a company beneficially owned exclusively by Qualified Purchasers, with such sale to be effected within thirty (30) days after notice of such sale requirement is given. If such beneficial owner or Holder fails to effect the transfer required within such 30-day period, (x) upon written direction from the Issuer, the Trustee shall, and is thereby irrevocably authorized by such beneficial owner or Holder, as the case may be, to cause its interest in such Note to be transferred in a commercially reasonable sale (conducted by the Trustee or by an investment banking firm selected by the Trustee (whose fees are to be paid exclusively from the proceeds of such sale), in

accordance with Article 9 of the UCC as applied to securities that may decline speedily in value) to a Person that certifies to the Trustee and the Issuer, in connection with such transfer, that such Person is both (1) a Qualified Institutional Buyer and (2) a Qualified Purchaser or a company beneficially owned exclusively by one or more Qualified Purchasers and (y) pending such transfer, no further payments will be made in respect of such Note (or beneficial interest therein) held by such beneficial owner or Holder."

Section 10.5.   Custody and Release of Collateral

(a)     If no Event of Default has occurred and is continuing, the Issuer may, by Issuer Order delivered to the Trustee at least two (2) Business Days prior to the date set for redemption or payment in full of a Collateral Security, certifying that such Collateral Security is being redeemed or paid in full, direct the Trustee to deliver and present the proceeds of such Collateral Security to the appropriate paying agent therefor on or before the date set for redemption or payment, in each case against receipt of the redemption price or payment in full thereof.

(b)     The Trustee shall credit any proceeds received from the disposition of a Collateral Security to the relevant Collateral Account.  The Trustee shall not be responsible for any loss resulting from delivery or transfer of any Collateral Security prior to receipt of payment in accordance herewith.

(c)     The Trustee shall, upon receipt of an Issuer Order at such time as there are no Outstanding Notes secured by the relevant Collateral and all obligations of the Issuer under the related Supplemental Indenture have been satisfied, release such Collateral from the lien of this Indenture and the related Supplemental Indenture.

Section 10.6.   Provision of Information by Default Swap Counterparty

The Disposal Agent shall use commercially reasonable efforts to cause the Default Swap Counterparty to deliver to the Trustee for inclusion in the Payment Date Statements for each Series of Notes all reports the Default Swap Counterparty is obligated to provide to the Issuer pursuant to the terms of the relevant Default Swap.

Section 10.7.   Reports to the Default Swap Counterparty

The Issuer shall provide the Default Swap Counterparty with all information or reports delivered to the Trustee hereunder, and such additional information as the Default Swap Counterparty may from time to time reasonably request in its sole discretion may be obtained and provided without unreasonable burden or expense.

Section 10.8.   Tax Matters

(a)     Intentionally omitted.

(b)     The Holders and beneficial owners of the Notes agree not to make any elections resulting in treatment of the Issuer as other than a corporation for U.S. Federal income tax purposes.

(c)     Intentionally omitted.

(d)     Each Holder and beneficial owner of a Note, by acceptance of its Note or its interest in a Note, agrees not to take a position inconsistent with the Issuer's position that, for U.S. federal income tax purposes, the Issuer is not engaged in the conduct of any trade or business in the United States, other than investing and trading in stocks and securities for its own account (and activities closely related thereto).

(e)     Each of the Issuer, the Trustee, the Securities Intermediary, the Note Calculation Agent and the Disposal Agent agrees that it does not intend for this Indenture to represent an agreement to enter into a partnership, a joint venture or any other business entity for U.S. federal income tax purposes.  The Issuer, the Trustee, the Securities Intermediary, the Note Calculation Agent and the Disposal Agent shall not represent or otherwise hold themselves out to the United States Internal Revenue Service ("IRS") or other third parties as partners in a partnership or members of a joint venture or other business entity for U.S. federal income tax purposes.

(f)     The Issuer shall not file, or cause to be filed, any income or franchise tax return in any state of the United States unless it shall have obtained advice of counsel prior to such filing that, under the laws of such jurisdiction, the Issuer is required to file such income or franchise tax return.

(g)     It is the intention of the parties hereto and, by its acceptance of a Note, each Holder and each beneficial owner of a Note shall be deemed to have agreed not to treat any income generated by such Note as derived in connection with the active conduct of a banking, financing, insurance, or other similar business for purposes of Section 954(h)(2) of the Code.

(h)     The Issuer has not and will not elect to be treated as a partnership for U.S. federal, state or local income or franchise tax purposes and shall make any election necessary to avoid classification as a partnership or disregarded entity for U.S. Federal, state or local income or franchise tax purposes.

(i)     The Issuer shall use its commercially reasonable efforts to provide to any beneficial owner of a Note that is or reasonably may be recharacterized as equity in the Issuer for U.S. federal income tax purposes, upon written request therefor, (i) all information that a U.S. shareholder making a "qualified electing fund" ("QEF") election (as defined in the Code) is required to obtain from the Issuer for U.S. federal income tax purposes and (ii) a "PFIC Annual Information Statement" as described in Treasury Regulation § 1.1295-1(g) (or any successor Treasury Regulation or IRS release or notice), including all representations and statements required by such statement, and will take any other steps reasonably necessary to facilitate a QEF election by such beneficial owner.

(j)     The Issuer will provide, upon the reasonable written request of any beneficial owner of a Note, any information the Issuer has available to it that assists such beneficial owner with regard to filing requirements it is required to satisfy as a result of the controlled foreign corporation rules under the Code, if applicable.

Article XI

NOTEHOLDERS' RELATIONS

Section 11.1.   Standard of Conduct

In exercising any of its or their voting rights, rights to direct and consent, or any other rights as a Noteholder under this Indenture and the relevant Supplemental Indenture, subject to the terms and conditions of this Indenture and the relevant Supplemental Indenture, a Noteholder or Noteholders shall not have any obligation or duty to any Person or to consider or take into account the interests of any Person and shall not be liable to any Person for any action taken by it or them or at its or their direction or any failure by it or them to act or to direct that an action be taken, without regard to whether such action or inaction benefits or adversely affects any Noteholder, the Issuer, or any other Person, except for any liability to which such Noteholder may be subject to the extent the same results from such Noteholders taking or directing an action, or failing to take or direct an action, in bad faith or in violation of the express terms of this Indenture.

Section 11.2.   Beneficial Ownership Certifications

To the extent that under the terms of this Indenture, it is necessary to determine whether any person is a beneficial owner of Notes, the Trustee shall make such determination based on (x) information provided to it by the applicable Clearing Agency or any Clearing Agency Participant that has been authorized by such person to make such information available or (y) if the condition specified in the foregoing clause (x) is not satisfied, by a certificate of such person in the form attached as Exhibit D hereto which shall be addressed to the Trustee, and shall specify, in reasonable detail satisfactory to the Trustee, such person's name and address, the Series and outstanding principal amount of the Note beneficially owned, and any intermediaries through which such person's interest in such Note is held (any such certification, other than one which the Trustee shall refuse to recognize pursuant to the following procedures, a "Beneficial Ownership Certification"); provided, however, that the Trustee shall not knowingly recognize such person as a beneficial owner if such Person, to the actual knowledge of an Authorized Officer, acquired its interest in a Note in violation of the transfer restrictions herein, or if such Person's certification that it is a beneficial owner is in direct conflict with information obtained by the Trustee from the Clearing Agency or any Clearing Agency Participant in respect of the identity of a beneficial owner; provided, further, that the Trustee shall be under no obligation to verify the information provided in such Beneficial Ownership Certification or investigate any statements made therein.  The Trustee may conclusively rely on such Beneficial Ownership Certification.

Article XII

MISCELLANEOUS

Section 12.1.   <u>Form of Documents Delivered to Trustee</u>

In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion in respect of some matters and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

Any certificate or opinion of an Authorized Officer of the Issuer may be based, insofar as it relates to legal matters, upon a certificate or opinion of, or representations by, counsel, unless such Authorized Officer knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations in respect of the matters upon which his certificate or opinion is based are erroneous.  Any such certificate of an Authorized Officer of the Issuer or Opinion of Counsel may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, the Issuer, the Default Swap Counterparty or any other Person, stating that the information in respect of such factual matters is in the possession of the Issuer, the Default Swap Counterparty or such other Person, unless such Authorized Officer of the Issuer or such counsel knows that the certificate or opinion or representations in respect of such matters are erroneous.  Any Opinion of Counsel may also be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an Authorized Officer of the Issuer, stating that the information in respect of such matters is in the possession of the Issuer, unless such counsel knows that the certificate or opinion or representations in respect of such matters are erroneous.

Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

Whenever in this Indenture or any Supplemental Indenture it is provided that the absence of the occurrence and continuation of a Default or Event of Default is a condition precedent to the taking of any action by the Trustee at the request or direction of the Issuer, then notwithstanding that the satisfaction of such condition is a condition precedent to the Issuer's rights to make such request or direction, the Trustee shall be protected in acting in accordance with such request or direction if it does not have knowledge of the occurrence and continuation of such Default or Event of Default.

Section 12.2.   <u>Acts of Noteholders</u>

(a)      Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Noteholders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Noteholders in person or by an agent duly appointed in writing; and, except as herein otherwise expressly

92

provided, such action shall become effective when such instrument or instruments are delivered to the Trustee, and, where it is hereby expressly required, to the Issuer.  Such instrument or instruments (and the action or actions embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the Noteholders signing such instrument or instruments. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and any Supplemental Indenture and conclusive in favor of the Trustee and the Issuer, if made in the manner provided in this Section 12.2.

(b)     The fact and date of the execution by any Person of any such instrument or writing may be proved in any manner which the Trustee deems sufficient.

(c)     The principal amount and registered numbers of Notes held by any Person, and the date of his holding the same, shall be proved by the Note Register.

(d)     Any request, demand, authorization, direction, notice, consent, waiver or other action by the Holder of any Notes shall bind the Holder (and any transferee thereof) of such Note and of every Note issued upon the registration thereof or in exchange therefor or in lieu thereof, in respect of anything done, omitted or suffered to be done by the Trustee or the Issuer in reliance thereon, whether or not notation of such action is made upon such Note.

Section 12.3.   <u>Notices, etc., to Trustee, the Issuer and the Default Swap Counterparty</u>

Any request, demand, authorization, direction, notice, consent, waiver or Act of Noteholders or other documents provided or permitted by this Indenture to be made upon, given or furnished to, or filed with:

(a)     the Trustee or the Note Calculation Agent, shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to and mailed, by certified mail, return receipt requested, hand delivered, sent by overnight courier service guaranteeing next day delivery or by confirmed telecopy in legible form, to the Trustee addressed to it at its Corporate Trust Office, or at any other address previously furnished in writing to the Issuer or Noteholder by the Trustee;

(b)     the Issuer, shall be sufficient for every purpose hereunder (unless otherwise herein expressly provided) if in writing and mailed, first class postage prepaid, hand delivered, sent by overnight courier service or by telecopy in legible form, to the Issuer addressed to Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, Georgetown, Grand Cayman, Cayman Islands, Attention:   The Directors, or at any other address previously furnished in writing to the Trustee by the Issuer;

(c)     the Default Swap Counterparty or the Disposal Agent, shall be sufficient for every purpose hereunder if in writing and mailed, first class postage prepaid, hand delivered, sent by overnight courier service or by telecopy in legible form, to the Default Swap Counterparty addressed to it at Calle 50, Edificio Bancomer Plaza, Piso 19, Panama City, Panama, or at any other address previously furnished in writing to the Issuer and the Trustee by the Default Swap Counterparty or the Disposal Agent;

Section 12.4.   <u>Notices to Noteholders; Waiver</u>

Notices to Noteholders shall be valid (so long as the Notes are listed on a stock exchange and the rules of that stock exchange so require) if published in any newspaper in which publication is so required by the rules of that stock exchange and, so long as the Global Notes are held by the Common Depositary, if posted to the Common Depositary by pre-paid first class mail. Notice to Noteholders in respect of Definitive Registered Notes shall be valid if posted to the address of such Noteholder appearing in the Note Register at the time of publication of such notice by pre-paid, first class mail. If in the opinion of the Trustee any such publication is not practicable, notice shall be validly given if published in another leading daily English language newspaper with general circulation in Europe. Any such notice shall be deemed to have been given on the date of such publication or, if published more than once or on different dates, on the first date on which publication is made in all required newspapers as provided above, or in the case of Global Notes held by the Common Depositary or Definitive Registered Notes, any such notice shall be deemed to have been given three days (in the case of inland mail) or seven days (in the case of overseas mail) after the date of dispatch thereof to the Common Depositary or the Noteholders, as the case may be.

The Trustee will deliver to the Holders of the Notes any information or notice requested to be so delivered by at least 25% of the Holders of any class of Notes.

Neither the failure to mail any notice, nor any defect in any notice so mailed, to any particular Holder of a Note shall affect the sufficiency of such notice in respect of other Holders of Notes. In case by reason of the suspension of regular mail service or by reason of any other cause it shall be impracticable to give such notice by mail, then such notification to Holders of Notes as shall be made with the approval of the Trustee shall constitute a sufficient notification to such Holders for every purpose hereunder.

Where this Indenture or any Supplemental Indenture provides for notice in any manner, such notice may be waived in writing by any Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of notice by Noteholders shall be filed with the Trustee but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

In the event that, by reason of the suspension of the regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to Noteholders when such notice is required to be given pursuant to any provision of this Indenture, then any manner of giving such notice as shall be satisfactory to the Trustee shall be deemed to be a sufficient giving of such notice.

Section 12.5.   <u>Effect of Headings and Table of Contents</u>

The Article and Section headings herein and the Table of Contents are for convenience only and shall not affect the construction hereof.

Section 12.6.   Successors and Assigns

All covenants and agreements in this Indenture by the Issuer shall bind their respective successors and assigns, whether so expressed or not.

Section 12.7.   Separability

In case any provision in this Indenture or in the Notes shall be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

Section 12.8.   Benefits of Indenture

Nothing in this Indenture or any Supplemental Indenture or in the Notes, expressed or implied, shall give to any Person, other than the parties hereto and their successors hereunder and the Noteholders and (to the extent provided herein, and as express third party beneficiaries hereof) the Default Swap Counterparty and the counterparties on Hedging Transactions or a Principal Investments, any benefit or any legal or equitable right, remedy or claim under this Indenture.

Section 12.9.   Legal Holidays

In the event that the date of any Interest Payment Date or Redemption Date shall not be a Business Day, then notwithstanding any other provision of the Notes or this Indenture, payment need not be made on such date, but may be made on the next succeeding Business Day with the same force and effect as if made on the nominal date of any such Interest Payment Date or Redemption Date, as the case may be, and no interest shall accrue on such payment for the period from and after any such nominal date.

Section 12.10. Governing Law

(a)      This Indenture, each Supplemental Indenture and each Note shall be construed in accordance with and governed by the laws of the State of New York applicable to agreements made and to be performed therein without giving effect to choice of law principles thereof except for Sections 5-1401 and 5-1402 of the General Obligations Law of the State of New York. The State of New York shall be the securities intermediary's jurisdiction of the Securities Intermediary for purposes of the UCC and the United States Regulations.

(b)      Each party hereto hereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of the Supreme Court of the State of New York sitting in New York County and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to the Notes or this Indenture or any Supplemental Indenture, or for recognition or enforcement of any judgment, and the Issuer hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State or, to the extent permitted by law, in such Federal court. The Issuer hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court. The Issuer irrevocably

consents to the service of any and all process in any action or proceeding by the mailing or delivery of copies of such process to it at the office of its Process Agent set forth in Section 7.2. The Issuer agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

Section 12.11. Counterparts

This instrument may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

Section 12.12. No Issuer Office Within the United States

The Issuer shall not maintain an office located within the United States; *provided*, that the services rendered by the Trustee under this Indenture or any other Transaction Document at their respective offices in the United States shall not be a violation of this Section 12.12.

Section 12.13. Non-Recourse and Non-Petition

The Trustee, the relevant Default Swap Counterparty, the Holders of Notes or any other Secured Party of any Series shall have recourse only to the Collateral in respect of the relevant Series and such other assets, if any, allocated to the Segregated Portfolio of the relevant Series, and the Trustee having realized the same, the relevant Default Swap Counterparty, the Holders of Notes of such Series or any other Secured Party or anyone acting on behalf of any of them shall not be entitled to take any further steps against the Issuer, the Company, its officers or directors to recover any further sum and the right to receive any such sum shall be extinguished and shall not thereafter revive. In particular, neither the Trustee, the relevant Default Swap Counterparty, any Holder of Notes nor any other Secured Party shall be entitled to petition or take any other step for the liquidation, bankruptcy, winding-up, application for receivership or examination of the Issuer or the Company or any Segregated Portfolio before the date that is one year and one day after payment in full of all obligations of the Company, nor shall any of them have any claim in respect of any sum arising in respect of the Collateral for any other Series or the assets allocated to the Segregated Portfolio of any other Series or the general assets of the Company.

Section 12.14. Stamp Duties and Taxes

For each Series, the Issuer shall pay any stamp, issue, documentary or other taxes and duties, including interest and penalties, payable in the country of each Denomination Currency in respect of the creation, issue and offering of the Notes of that Series and the execution or delivery of the Indenture and any Supplemental Indenture. The Issuer shall also indemnify the Trustee, each Paying Agent, each Note Registrar and the Noteholders of each Series from and against all stamp, issue, documentary or other taxes paid by any of them in any jurisdiction in connection with any action taken by or on behalf of the Trustee or the Noteholders to enforce the Issuer's obligations under the Indenture, the relevant Supplemental Indenture or the Notes of such Series.

Section 12.15. <u>USA PATRIOT Act</u>

The parties hereto acknowledge that in accordance with Section 326 of the USA PATRIOT Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (as amended, modified or supplemented from time to time, the "<u>USA PATRIOT Act</u>"), the Trustee, like all financial institutions and in order to help fight the funding of terrorism and money laundering, is required to obtain, verify, and record information that identifies each person or legal entity that establishes a relationship or opens an account with Deutsche Bank Trust Company Americas. The parties to this Agreement agree that they will provide the Trustee with such information as it may request in order for the Trustee to satisfy the requirements of the USA PATRIOT Act.

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be executed by their respective officers thereunto duly authorized as of the date first above written.

FTC INTERNATIONAL SPC, as Company

By:_____

Name:
Title:   **Steven O'Connor**
         Director

**DEUTSCHE BANK TRUST COMPANY AMERICAS,** as Trustee, Securities Intermediary, Custodian, Rule 144A Note Paying Agent, and Rule 144A Note Registrar

By: *Wanda Camacho*

Name: Wanda Camacho
Title: Vice President

By: *Janet Robinson*

Name: Janet Robinson
Title: Vice President

**DEUTSCHE BANK AG, LONDON BRANCH,** as Regulation S Note Paying Agent

By:_____

Name:
Title:

By:_____

Name:
Title:

**DEUTSCHE BANK LUXEMBOURG S.A.,** as Regulation S Note Registrar

By:_____

Name:
Title:

By:_____

Name:
Title:

**DEUTSCHE BANK TRUST COMPANY AMERICAS,** as Trustee, Securities Intermediary, Custodian, Rule 144A Note Paying Agent, and Rule 144A Note Registrar

By:_____
    Name:
    Title:

By:_____
    Name:
    Title:

**DEUTSCHE BANK AG, LONDON BRANCH,** as Regulation S Note Paying Agent

By:_____
    Name: CA MORRIS
    Title: VICE PRESIDENT

By:_____
    Name: SUSIE SMITH
    Title: VICE PRESIDENT

**DEUTSCHE BANK LUXEMBOURG S.A.,** as Regulation S Note Registrar

By:_____
    Name: CA MORRIS
    Title: ATTORNEY

By:_____
    Name: SUSIE SMITH
    Title: VICE PRESIDENT

FTC EMERGING MARKETS, INC.,
as Note Calculation Agent and as Disposal Agent

By: _____

Name: _____

Title: Gvilhermo D. Chammas

CEO

## SCHEDULE A

## PROVISIONS FOR MEETINGS OF NOTEHOLDERS

(1)   In this Schedule:

(A)   references to a meeting are to a meeting of Noteholders of all Tranches of a Series (unless the context otherwise requires) and include, unless the context otherwise requires, any adjournment;

(B)   agent means a holder of a voting certificate or a proxy for a Noteholder;

(C)   block voting instruction means an instruction issued in accordance with paragraphs 8 to 14;

(D)   Extraordinary Resolution means (i) a resolution passed at a meeting duly convened and held in accordance with this Indenture by a majority of at least 75% of the votes cast; or (ii) a written resolution of Noteholders representing at least 75% of the Notes outstanding on such date.

(E)   voting certificate means a certificate issued in accordance with paragraphs 5, 6, 7 and 14;

references to persons representing a proportion of the Notes are to Noteholders or agents holding or representing in the aggregate at least that proportion in principal amount of the Notes for the time being outstanding.

**Powers of meetings**

(2)   A meeting shall, subject to this Indenture and without prejudice to any powers conferred on other persons by this Indenture, have power by Extraordinary Resolution:

(A)   to sanction any proposal by the Issuer or the Trustee for any modification, abrogation, variation or compromise of, or arrangement in respect of, the rights of the Noteholders against the Issuer, whether or not those rights arise under this Indenture;

(B)   to sanction the exchange or substitution for the Notes of, or the conversion of the Notes into, shares, bonds or other obligations or securities of the Issuer or any other entity;

(C)   to assent to any modification of the Indenture, any Supplemental Indenture, the Notes or any other Transaction Document proposed by the Issuer or the Trustee;

(D)   to authorize anyone to concur in and do anything necessary to carry out and give effect to an Extraordinary Resolution;

(E)    to give any authority, direction or sanction required to be given by Extraordinary Resolution;

(F)    to appoint any persons (whether Noteholders or not) as a committee or committees to represent the Noteholders' interests and to confer on them any powers or discretions which the Noteholders could themselves exercise by Extraordinary Resolution;

(G)    to approve a proposed new Trustee and to remove a Trustee and to approve the substitution of any entity for the Issuer (or any previous substitute) under the Indenture and any Supplemental Indenture; and

(H)    to discharge or exonerate the Trustee from any liability in respect of any act or omission for which it may become responsible under the Indenture, any Supplemental Indenture or the Notes,

provided that the special quorum provisions in paragraph 18 shall apply to any Extraordinary Resolution (a special quorum resolution) for the purpose of subparagraph (b) or (g) or for the purpose of making a modification to the Indenture, any Supplemental Indenture or the Notes which would have the effect of:

(A)    modifying the details of the Collateral, the maturity of the Notes or the dates on which interest is payable on them; or

(B)    reducing or canceling the principal amount of, any premium payable on redemption of, or interest on, or varying the method of calculating the rate of interest or reducing the minimum rate of interest on, the Notes; or

(C)    changing the currency of payment of the Notes; or

(D)    modifying the Events of Default; or

(E)    modifying the provisions in this Schedule concerning the quorum required at a meeting or the majority required to pass an Extraordinary Resolution; or

(F)    amending this proviso.

## Convening a meeting

(3)    The Issuer or the Trustee may at any time convene a meeting. If it receives a written request by Noteholders holding at least 10% in principal amount of the Notes for the time being outstanding and is indemnified and/or secured to its satisfaction against all costs and expenses, the Trustee shall convene a meeting.

(A)    Every meeting shall be held at a time and place approved by the Trustee.

(B)    The Issuer or the Trustee on its behalf shall convene a meeting of each Series of Notes in the event that a vote is required of Noteholders of each such Series.

(4)    At least 21 days' notice (exclusive of the day on which the notice is given and of the day of the meeting) shall be given to the Noteholders.

    (A)    A copy of the notice shall be given by the party convening the meeting to the other parties.

    (B)    The notice shall specify the day, time and place of meeting and, unless the Trustee otherwise agrees, the nature of the resolutions to be proposed and shall explain how Noteholders may appoint proxies and obtain voting certificates and the details of the time limits applicable.

**Arrangements for voting**

(5)    If a Holder of a Note wishes to obtain a voting certificate in respect of it for a meeting, he must deposit it for that purpose at least 48 hours before the time fixed for the meeting with a Paying Agent or arrange for it to be held in an account with a clearing system to the order of a Paying Agent. Such Paying Agent shall then issue a voting certificate in respect of it.

(6)    A voting certificate shall:

    (A)    be a document in the English language;

    (B)    be dated;

    (C)    specify the meeting concerned and the serial numbers and/or the aggregate principal amount of the Notes deposited or held; and

    (D)    entitle, and state that it entitles, its bearer to attend and vote at that meeting in respect of those Notes.

(7)    Once a Paying Agent has issued a voting certificate for a meeting in respect of a Note, it shall not release the Note until either:

    (A)    the meeting has been concluded; or

    (B)    the voting certificate has been surrendered to the Paying Agent.

(8)    If a Holder of a Note wishes the votes attributable to it to be included in a block voting instruction for a meeting, then, at least 48 hours before the time fixed for the meeting, (b) he must deposit the Note for that purpose with a Paying Agent or arrange for it to be held in an account with a clearing system to the order of a Paying Agent and (c) he or a duly authorized person on his behalf must direct the Paying Agent how those votes are to be cast. Such Paying Agent shall issue a block voting instruction in respect of the votes attributable to all Notes so deposited or held.

(9)    A block voting instruction shall:

(A)     be a document in the English language;

(B)     be dated;

(C)     specify the meeting concerned;

(D)     list the total number and serial numbers and/or aggregate principal amount of the Notes deposited or held, distinguishing with regard to each resolution between those voting for and those voting against it;

(E)     certify that such list is in accordance with Notes deposited or held and directions received as provided in paragraphs 8, 11 and 14; and

(F)     appoint a named person (a proxy) to vote at that meeting in respect of those Notes and in accordance with that list. A proxy need not be a Noteholder.

(10)    Once a Paying Agent has issued a block voting instruction for a meeting in respect of the votes attributable to any Notes:

(A)     it shall not release the Notes, except as provided in paragraph 11, until the meeting has been concluded; and

(B)     the directions to which it gives effect may not be revoked or altered during the 48 hours before the time fixed for the meeting.

(11)    (If the receipt for a Note deposited with a Paying Agent in accordance with paragraph 8 is surrendered to a Paying Agent at least 48 hours before the time fixed for the meeting, such Paying Agent shall release the Note and exclude the votes attributable to it from the block voting instruction.

(12)    Each block voting instruction shall be deposited at least 24 hours before the time fixed for the meeting at such place as the Trustee shall designate or approve, and in default it shall not be valid unless the chairman of the meeting decides otherwise before the meeting proceeds to business.

If the Trustee requires, a notarially certified copy of each block voting instruction shall be produced by the proxy at the meeting but the Trustee need not investigate or be concerned with the validity of the proxy's appointment.

(13)    A vote cast in accordance with a block voting instruction shall be valid even if it or any of the Noteholders' instructions pursuant to which it was executed has previously been revoked or amended, unless written intimation of such revocation or amendment is received from the relevant Paying Agent by the Issuer or the Trustee at its registered office or by the chairman of the meeting in each case at least 24 hours before the time fixed for the meeting.

(14)    No Note may be deposited with or held to the order of a Paying Agent at the same time for the purposes of both paragraph 5 and paragraph 8 for the same meeting.

A-4

**Chairman**

(15)    The chairman of a meeting shall be such person as the Trustee may nominate in writing, but if no such nomination is made or if the person nominated is not present within 15 minutes after the time fixed for the meeting the Noteholders or agents present shall choose one of their number to be chairman, failing which the Issuer may appoint a chairman.  The chairman need not be a Noteholder or agent.  The chairman of an adjourned meeting need not be the same person as the chairman of the original meeting.

**Attendance**

(16)    The following may attend and speak at a meeting:

   (A)    Noteholders and agents;

   (B)    the chairman;

   (C)    the Issuer and the Trustee (through their respective representatives) and their respective financial and legal advisers; and

   (D)    the Initial Purchasers and their advisers.

   No-one else may attend or speak.

**Quorum and Adjournment**

(17)    No business (except choosing a chairman) shall be transacted at a meeting unless a quorum is present at the commencement of business.  If a quorum is not present within 15 minutes from the time initially fixed for the meeting, it shall, if convened on the requisition of Noteholders or if the Issuer agrees, be dissolved.

   In any other case it shall be adjourned until such date, not less than 13 nor more than 42 days later, and time and place as the chairman may decide.

   If a quorum is not present within 15 minutes from the time fixed for a meeting so adjourned, the meeting shall be dissolved.

(18)    One or more Noteholders or agents present in person shall be a quorum:

   (A)    in the cases marked "No minimum proportion" in the table below, whatever the proportion of the Notes which they represent.

   (B)    in any other case, only if they represent the proportion of the Notes shown by the table below.

| COLUMN 1 | COLUMN 2 | COLUMN 3 |
|---|---|---|
| Purpose of meeting | Any meeting except one | Meeting previously |

|  | referred to in column 3 | adjourned though want of a quorum |
|---|---|---|
|  | Required proportion | Required proportion |
| To pass a special quorum resolution | 75% | 25% |
| To pass any other Extraordinary Resolution | A clear majority | No minimum proportion |
| Any other purpose | 10% | No minimum proportion |

(19)   The chairman may with the consent of (and shall if directed by) a meeting adjourn the meeting from time to time and from place to place.  Only business which could have been transacted at the original meeting may be transacted at a meeting adjourned in accordance with this paragraph or paragraph 17.

(20)   At least 10 days' notice of a meeting adjourned through want of a quorum shall be given in the same manner as for an original meeting and that notice shall state the quorum required at the adjourned meeting.  No notice need, however, otherwise be given of an adjourned meeting.

**Voting**

(21)   Each question submitted to a meeting shall be decided by a show of hands based on each voting Noteholder's proportionate Note Principal Amount unless a poll is (before, or on the declaration of the result of, the show of hands) demanded by the chairman, the Issuer, the Trustee or one or more persons representing 2% of the Notes.

(22)   Unless a poll is demanded a declaration by the chairman that a resolution has or has not been passed shall be conclusive evidence of the fact without proof of the number or proportion of the votes cast in favor of or against it.

(23)   If a poll is demanded, it shall be taken in such manner and (subject as provided below) either at once or after such adjournment as the chairman directs.  The result of the poll shall be deemed to be the resolution of the meeting at which it was demanded as at the date it was taken.  A demand for a poll shall not prevent the meeting continuing for the transaction of business other than the question on which it has been demanded.

    (A)   A poll demanded on the election of a chairman or on a question of adjournment shall be taken at once.

    (B)   On a show of hands every person who is present in person and who produces a Note or a voting certificate or is a proxy has one vote.  On a poll every such person has one vote in respect of the applicable Minimum Denomination in

A-6

principal amount of Notes so produced or represented by the voting certificate so produced or for which he is a proxy, converted, if such Notes are not denominated in euro, in accordance with the Indenture and the relevant Supplemental Indenture.

(24)   Without prejudice to the obligations of proxies, a person entitled to more than one vote need not use them all or cast them all in the same way.

(25)   In case of equality of votes the chairman shall both on a show of hands and on a poll have a casting vote in addition to any other votes which he may have.

## Effect and Publication of an Extraordinary Resolution

(26)   An Extraordinary Resolution shall be binding on all the Noteholders, whether or not present at the meeting and whether or not voting thereat, and each of them shall be bound to give effect to it accordingly.   The passing of such a resolution shall be conclusive evidence that the circumstances justify its being passed.   The Issuer shall give notice of the passing of an Extraordinary Resolution to Noteholders within 14 days but failure to do so shall not invalidate the resolution.

## Minutes

(27)   Minutes shall be made of all resolutions and proceedings at every meeting and, if purporting to be signed by the chairman of that meeting or of the next succeeding meeting, shall be conclusive evidence of the matters in them.   Until the contrary is proved every meeting for which minutes have been so made and signed shall be deemed to have been duly convened and held and all resolutions passed or proceedings transacted at it to have been duly passed and transacted.

## Trustee's Power to Prescribe Regulations

(28)   Subject to all other provisions in this Indenture, the Trustee may prescribe such further regulations regarding the holding of meetings and attendance and voting at them including (without limitation) such requirements as are necessary to satisfy itself that the persons who purport to make any requisition in accordance with this Trust Deed are entitled to do so and as to the form of voting certificates or block voting instructions so as to satisfy itself that persons who purport to attend or vote at a meeting are entitled to do so.

(29)   The foregoing provisions of this Schedule shall have effect subject to the following provisions:

(A)   meetings of Noteholders of separate Series will normally be held separately. However, the Trustee may from time to time determine that meetings of Noteholders of separate Series shall be held together;

A-7

(B)     a resolution that in the opinion of the Trustee affects one Series alone shall be deemed to have been duly passed if passed at a separate meeting of the Noteholders of the Series concerned;

(C)     a resolution that affects the Noteholders of more than one Series but does not give rise to a conflict of interest between the Noteholders of the different Series concerned shall be deemed to have been duly passed at a single meeting of the Noteholders of the relevant Series;

(D)     a resolution that affects the Noteholders of more than one Series and gives or may give rise to a conflict of interest between the Noteholders of the different Series concerned shall be deemed to have been duly passed only if it shall be duly passed at separate meetings of the Noteholders of the relevant Series; and

(E)     to all such meetings as aforesaid all the preceding provisions of this Schedule shall *mutatis mutandis* apply as though references therein to Notes and to Noteholders were references to the Notes and Noteholders of the Series concerned.