# EXHIBIT A- PART 3

## SCHEDULE B

## INVESTMENT RESTRICTIONS

Capitalized terms used but not otherwise defined in this Schedule B shall have the respective meanings specified in the Indenture, dated as of May 30, 2007, among FTC International SPC, Deutsche Bank Trust Company Americas as Trustee, Securities Intermediary, Rule 144A Note Registrar, Custodian, and Rule 144A Note Paying Agent, Deutsche Bank AG, London Branch, as Regulation S Note Paying Agent and Deutsche Bank Luxembourg S.A., as Regulation S Note Registrar, and FTC Emerging Markets, Inc. as Note Calculation Agent" and "Disposal Agent.

The Issuer shall not acquire or enter into any Collateral Investment, Synthetic Security, or other investment transaction (each, an "Investment") or undertake any related investment activity under the Indenture, other than in compliance with the following guidelines.

It is intended that the Fund not be treated as engaged in a lending business or any other trade or business in the United States for U.S. federal income tax purposes and these Investment Restrictions shall be interpreted consistently therewith. The Issuer shall comply with all of the provisions set forth in this Schedule B. The Note Calculation Agent shall monitor the Issuer's compliance with this Schedule B and exercise commercially reasonable efforts to procure that the Issuer comply with its undertakings hereunder.

For purposes of this Schedule B,

"Affiliate" means, with respect to a specified Person, (a) any other Person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the specified Person and (b) any Person that is a member, director, officer or employee of (i) the specified Person or (ii) a Person described in clause (a) of this definition; and

"Person" means an individual, a corporation, a limited liability company, a partnership, an association, a trust or any other entity or organization, including a government or political subdivision or an agency or instrumentality thereof.

I.    General Limitations Relating to Investments.

A.    Secondary Market Purchases. Except in the circumstances described in this Schedule B, Collateral Investments that are debt securities ("Collateral Debt Securities") may be included in the Portfolio and purchased by the Issuer to the extent they are (i) debt securities that are either (x) publicly registered, or (y) sold pursuant to an offering memorandum, private placement memorandum or other similar offering document and transferable under Rule 144A of the Securities Act or transferable pursuant to another exemption from registration under the Securities Act (such eligible Collateral Debt Securities are referred to herein as "Debt Securities"), and (ii) purchased in secondary-market transactions.

B.    No Purchases if Limited to Banks, etc. The Issuer may not purchase any Investment if the related credit agreement, note, indenture or other documentation by its terms

requires that any such purchase be made only by a bank, savings and loan, thrift, trust company or other similar deposit-taking or loan-originating institution.  The Issuer may not purchase an interest in any loans or any loan agreements.

C.   <u>Issuer to Receive No Fees</u>.

1.   If an Investment is purchased from a seller, such Investment may be purchased only on a secondary market basis at an arm's-length price reasonably reflective of fair market value of such Investment (based on market conditions existing at such time). Any discount from the face amount of the Investment may not be based upon or otherwise be determined with reference to the amount of any syndication or origination or related or similar fees for services earned by any Person with respect to such Investment ("<u>Syndication or Similar Fees</u>").

2.   The Issuer may not receive payment of any fees from any lender, underwriter, or, any other person in connection with any purchase of, or commitment to purchase, an Investment or engage in activities that would entitle it to any fee, commission, spread or mark-up.

D.   <u>Not a "Surrogate Foreign Corporation" or an "Inverted Corporation"</u>.  The Issuer may not acquire (i) 70% (or such other percentage as shall be established pursuant to regulations issued under section 7874 of the Code) or more of the properties held, directly or indirectly, by a corporation that is organized under the laws of the United States or any state thereof or (ii) 70% (or such other percentage as shall be established pursuant to regulations issued under section 7874 of the Code) or more of the properties constituting a trade or business of a partnership that is organized under the laws of the United States or any state thereof unless, based on the advice of nationally recognized U.S. income tax counsel experienced in such matters, the acquisition will not cause the Issuer to be (i) a surrogate foreign corporation or (ii) an inverted corporation within the meaning of section 7874 of the Code.

E.   <u>Special Rule for Investments in Structured Vehicles</u>.  The Issuer may not acquire any Investment that represents an equity interest (as determined for U.S. federal income tax purposes) in a trust, corporation, partnership or other entity or ownership arrangement all, or a substantial portion, of whose assets are assets the Issuer could not acquire directly without violating the provisions of this Schedule B.

F.   <u>Own Account</u>.  The Issuer shall buy, sell and hold securities only for its own account and only for investment with the expectation of realizing a profit from income earned on the securities and/or any rise in their value.  The Issuer shall buy and sell securities only though a broker-dealer or a financial institution.  The Issuer may not enter into any securities lending transactions.

II.   <u>Specific Rules for Debt Securities</u>.

A.   <u>No Commitment Prior to Closing and Funding</u>.  Except as otherwise provided in this Schedule B or with respect to customary underwriter or placement agent allocation ("<u>circling</u>") procedures, none of the Note Calculation Agent, its employees or the Issuer, may, prior to the completion of the origination process and funding of a Debt Security, have any

commitment, arrangement or understanding with the issuer (or obligor) of such Debt Security that the Issuer will purchase such Debt Security. Except as otherwise provided in this Schedule, employees of the Note Calculation Agent acting on behalf of the Issuer may not participate in structuring or negotiating the terms of the Debt Security; provided, that nothing in this sentence shall prohibit the Issuer or the Note Calculation Agent from consenting or withholding consent, after the date on which the Issuer has acquired a Debt Security, to amendments or modifications of the terms of such Debt Security, it being understood that paragraph II. G. below shall govern such situations.

      B.    Portfolio Interest Requirements.  Any Debt Security proposed to be purchased, the payments of interest on which would be treated under the Code as income from sources within the United States, must either (i) meet the requirements of Code Sections 871(h) and 881(c) so that the interest (including any original issue discount) payable thereon shall be "portfolio interest" or (ii) entitle the Issuer to "gross-up" payments that cover the full amount of any U.S. federal withholding taxes imposed on any interest payable thereon or with respect thereto.  Any Debt Security proposed to be purchased, the payment of interest on which would be treated by any other jurisdiction as income from sources within such jurisdiction, must similarly either be eligible for an exemption from withholding tax in such jurisdiction or entitle the Issuer to a full "gross-up".

      C.    Limitation on Activities of Issuer.  Except as otherwise provided herein, neither the Issuer nor the Note Calculation Agent acting on behalf of the Issuer may, prior to the purchase of a Debt Security, have any communications with any obligor under, or issuer of, such Debt Security with respect to the purchase of such Debt Security by the Issuer or the issuance of such Debt Security by such obligor other than customary due diligence communications that would be reasonably necessary in order for an investor or trader to make a reasonably informed decision to purchase a security for its own account (such as attendance at an obligor's general "roadshow" or other presentations to investment professionals).  Additionally, neither the Issuer nor the Note Calculation Agent on behalf of the Issuer may perform any lending or underwriting activities or otherwise originate any Debt Security.  Permitted due diligence activities may not include any negotiations with the obligor, employees or agents of the obligor of any terms or conditions of the Debt Securities being offered, other than as permitted in the next succeeding paragraph.

      D.    Negotiations.  Negotiations between the Note Calculation Agent and the underwriter, placement agent or broker (any such person an "Underwriter") of a Debt Security to be acquired by the Issuer are permitted with respect to such Debt Security solely to the extent they (i) are limited to responses to customary pre-offering period and offering period inquiries by the Underwriter; (ii) are limited to customary inquiries by the Note Calculation Agent during the pre-offering period and offering period regarding potential changes to the terms of the Security in the market; (iii) are communications with an Underwriter of a Debt Security of a type customarily undertaken by investors or traders in connection with customary due diligence activities; (iv) relate to administrative, mechanical or immaterial terms or provisions of the Debt Security; or (v) relate to the terms of purchase of such Debt Security.

      E.    Exception From Secondary Market Rule.  Notwithstanding paragraph I.A. above, but subject to the other restrictions in this Schedule B, any purchase of a Debt Security pursuant

to a commitment, arrangement or other understanding made before or contemporaneously with completion of the closing and funding of such Debt Security issuance shall be made only in connection with:

    1.    an underwriting of a registered public offering in which the seller has made a firm underwriting commitment to the issuer of such Debt Security,

    2.    a private placement to qualified investors (pursuant to Rule 144A or Section 4(2) under the Securities Act or other similar arrangement); provided, that an Affiliate of the Note Calculation Agent (or FTCEM) may not have acted as an underwriter or placement agent and an Affiliate of the Note Calculation Agent (or FTCEM) or an employee of an Affiliate of the Note Calculation Agent (or FTCEM) may not have otherwise participated in the structuring of such issuance; and, provided, further, that the Issuer does not acquire 50% or more of any such Debt Securities.

    3.    a purchase of a Synthetic Security directly from the counterparty to such synthetic security in accordance with Section III below.

    F.    Restrictions on Acquisitions of Securities From or That Were Originated By the Collateral Manager or its Affiliates.  The Issuer may not acquire any Collateral Debt Security with respect to which the Note Calculation Agent or any Affiliate thereof originated, or acted as an underwriter or placement agent for, or from the related issuer of which the Note Calculation Agent or any Affiliate thereof received any compensation, and may not acquire any Collateral Debt Security issued by the Note Calculation Agent or any Affiliate thereof.

    G.    Subsequent Modifications or Exchanges.  In the event the Issuer owns an interest in a Debt Security the terms of which are subsequently amended or modified, or in the case of a workout situation, which is subsequently exchanged for new securities of the issuer, such amendments or modifications or exchange will not be treated as the acquisition of an interest in a new Debt Security for purposes of this Schedule B, as long as (i) the Issuer does not, directly or indirectly (through the Note Calculation Agent or otherwise), seek the amendments or modifications or the exchange, or participate in negotiating the amendments or modifications or the exchange, (ii) the Issuer does not own more than 10% of the aggregate principal amount of the Debt Security and (iii) the Issuer, the Note Calculation Agent or any Affiliate thereof and any other funds managed by the Note Calculation Agent or any Affiliate thereof or persons who have given the Note Calculation Agent or any Affiliate thereof discretionary trading authority do not in the aggregate own more than 30% of the aggregate principal amount of the Debt Security.

III.    Special Rules Regarding Synthetic Securities.  Synthetic Securities may be entered into as "primary" transactions directly by the Issuer and the counterparty thereto; provided, however, that Issuer may not:

    A.    acquire or enter into any Synthetic Security with respect to any Reference Obligation the direct acquisition of which would violate any provision of this Schedule B;

    B.    use Synthetic Securities as a means of making loans or advances to the Synthetic Security Counterparty or make or receive any upfront payment with respect to any Synthetic

Security that is treated as a "significant upfront payment" on a notional principal contract within the meaning of Treasury Regulation Section 1.466-3(g)(4); or

    C.    acquire or enter into any Synthetic Security on terms other than terms that would prevail in the marketplace for transactions entered into between unrelated parties operating at arm's-length with respect to the Synthetic Security in question;

    D.    with respect to Default Swaps, acquire or enter into any Synthetic Security that does not satisfy all of the following additional criteria:

    1.    The Synthetic Security is structured as a default swap and is documented by a "Confirmation" as referred to in the form of ISDA Master Agreement published by the International Swaps and Derivatives Association, Inc. ("ISDA");

    2.    The net payment from the Issuer to the Synthetic Security Counterparty is not determined based on an actual loss incurred by the Synthetic Security Counterparty or any other designated person and the Synthetic Security explicitly states that the Synthetic Security Counterparty is not required to have suffered a loss on, or to have owned, any Reference Obligation;

    3.    The related Reference Obligation is fully funded and outstanding and would, if purchased directly, comply with the provisions set forth in this Agreement and Schedule B;

    4.    There exists no agreement, arrangement or understanding that (a) the Synthetic Security Counterparty is required to own or hold the related Reference Obligation while the Synthetic Security remains in effect or (b) the Synthetic Security Counterparty is economically compelled to own or hold the related physical Reference Obligation while the Synthetic Security remains in effect;

    5.    The Synthetic Security provides for (i) all cash settlement or (ii) the option to either cash settle or physically settle; _provided_ that, in the latter case, physical settlement provides the settling party the right to settle the Synthetic Security by delivering deliverable obligations that may include the Reference Obligation and the settling party must not be required to deliver the related Reference Obligation upon the settlement of such Synthetic Security;

    6.    The Synthetic Security is not treated as insurance or a financial guarantee sold by the Issuer for United States or Cayman Islands regulatory purposes.

    7.    The Issuer and the Synthetic Security Counterparty are each required (i) to treat the Synthetic Security as a single notional principal contract under Treasury Regulation Section 1.446-3, (ii) unless otherwise required by the Internal Revenue Service or by the promulgation of final regulations, to treat any payment with respect to Credit Events as capital in nature and (iii) not to accrue deductions with respect to projections of losses with respect to such Synthetic Security.

        

As used herein, "Synthetic Security" means a notional principal contract described in Treasury Regulation Section 1.446-3, including a Default Swap or an Asset Swap, and "Synthetic Security Counterparty" means an entity (other than the Issuer) required to make payments on a Synthetic Security (including any guarantor of such entity).

IV.     Certain Prohibited Investments.   The Issuer may not purchase (whether directly, as part of a "unit" with a Collateral Debt Security, in exchange for or upon conversion of a Collateral Debt Security, in connection with a workout or restructuring of a Collateral Debt Security, pursuant to the settlement of a Synthetic Security or otherwise):

A.      any Investment issued by a person that is not a corporation for U.S. federal income tax purposes unless the Issuer has determined that such Investment is properly classified as debt for United States federal income tax purposes or it has obtained an opinion or other written advice of tax counsel of nationally recognized standing in the United States experienced in such matters that the acquisition, ownership and disposition of such Investment shall not cause the Issuer to be engaged in a trade or business within the United States for U.S. federal income tax purposes or to be subject to U.S. federal income tax on a net income basis, provided, however, that, subject to all of the other limitations in this Schedule B, the Issuer may purchase interests in a grantor trust if (i) all of the assets of such trust are properly classified as debt for U.S. federal income tax purposes or are cash, (ii) either (x) all such debt assets of such trust are, or (y) such interests are considered to be, in registered form for U.S. federal income tax purposes and (iii) all of such assets could be acquired directly by the Issuer under this Schedule B;

B.      any Investment that is a "United States real property interest" as defined in Section 897 of the Code and the Treasury Regulations promulgated thereunder;

C.      a residual interest in a "REMIC" (as such term is defined in the Code);

·D.     an ownership interest in a "FASIT" (as such term is defined in the Code);

E.      any Investment if prior to or as of the time of its proposed purchase (or proposed commitment to purchase) a "credit event" (with respect to Synthetic Securities) or "event of default" (with respect to Debt Securities) with respect to (and as defined in the agreements governing) such Investment has occurred and is continuing; or

F.      any Anticipated Workout Obligation.  As used herein:

"Anticipated Workout Obligation" means any Debt Security which, as of the date of the proposed acquisition thereof by the Issuer, based on information specific to such Investment or the circumstances of the obligor thereof as of such date, (i) is a Workout Obligation, or (ii) in the reasonable determination of the Collateral Manager as of such date, is at significant risk of becoming a Workout Obligation in the near future.

"Workout Obligation" means any Debt Security as to which the holder will be called upon to (a) consent to a Significant Modification, (b) participate in an official or unofficial committee or similar official or unofficial body in connection with a bankruptcy, reorganization, restructuring or similar proceeding, or (c) exercise, or have exercised on its behalf, rights of foreclosure or similar judicial remedies.

"Significant Modification" means any amendment, supplement or other modification that involves (a) a change in the annual yield of the Debt Security by more than the greater of (x) 25 basis points or (y) 5 percent of the annual yield of the unmodified Debt Security, (b) a change in the stated maturity or a change in the timing of any material payment of any Debt Security (including deferral of an interest payment), that would materially alter the weighted average life of the Debt Security, (c) any change involving a material new extension of credit, (d) a change in the obligor of any Debt Security that results in a material change in payment expectations, (e) a material change in the collateral or security for any Debt Security, including the addition or deletion of a co-obligor or guarantor, that results in a material change in payment expectations or (f) any other event that would result in a "significant modification", as defined in Treasury Regulation Section 1.1001-3.

V.    General Limitations Relating to the Issuer.  The Issuer itself shall not:

    A.    establish a branch, agency or other place of business within the United States;

    B.    make any tax election that could reasonably be expected to cause it to be subject to U.S. federal, state or local income or franchise tax;

    C.    register as, hold itself out as, or become subject to regulatory supervision or other legal requirements under the laws of any country or political subdivision thereof as, a broker-dealer, a bank, an insurance company, financial guarantor, a surety bond issuer, or a company engaged in loan origination;

    D.    take any action causing it to be treated as a bank, insurance company, or company engaged in loan origination for purposes of any tax, securities law or other filing or submission made to any governmental authority;

    E.    hold itself out, through advertising or otherwise, as originating, funding, guaranteeing or insuring debt obligations or as being willing and able to enter into transactions (either purchases or sales of debt obligations or entries into, assignments or terminations of hedging or derivative instruments, including Synthetic Securities) at the request of others or act in any such manner;

    F.    treat Synthetic Securities as insurance, reinsurance, indemnity bonds, guaranties, guaranty bonds or suretyship contracts for any purpose;

    G.    hold any security as nominee for another person; or

    H.    buy securities with the intent to subdivide them and sell the components or to buy securities and sell them with different securities as a package or unit; provided that the forgoing shall not prohibit the Issuer from selling securities secured by the Debt Securities and Synthetic Securities that it holds.

**Exhibit A-1**
Form of Regulation S Global Note

**Regulation S Global Note**

[_____]

**No.**

**ISIN No.:**

**Common Code:**

THE ISSUER OF THIS NOTE HAS NOT BEEN REGISTERED UNDER THE UNITED STATES INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "INVESTMENT COMPANY ACT"), AND THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR WITH ANY SECURITIES REGULATORY AUTHORITY OF ANY STATE OR OTHER JURISDICTION.

EACH PERSON ACQUIRING AN INTEREST IN THIS NOTE IS DEEMED TO (1) REPRESENT THAT IT IS NOT A "U.S. PERSON" AND IS ACQUIRING SUCH INTEREST IN AN "OFFSHORE TRANSACTION" PURSUANT TO RULE 903 OR RULE 904 OF REGULATION S UNDER THE SECURITIES ACT AND (2) AGREE THAT IT WILL NOT OFFER, SELL OR OTHERWISE TRANSFER SUCH INTEREST EXCEPT (A) TO THE ISSUER OR (B) IN AN OFFSHORE TRANSACTION AND NOT TO, OR FOR THE ACCOUNT OR BENEFIT OF, A U.S. PERSON IN ACCORDANCE WITH REGULATION S UNDER THE SECURITIES ACT. AS USED HEREIN, THE TERMS "OFFSHORE TRANSACTION" AND "U.S. PERSON" HAVE THE MEANINGS GIVEN TO THEM BY REGULATION S UNDER THE SECURITIES ACT.

**THIS NOTE MAY NOT BE SOLD OR TRANSFERRED TO ANY PLAN SUBJECT TO TITLE I OF ERISA OR SECTION 4975 OF THE CODE OR TO ANY PERSON ACTING ON BEHALF OF OR WITH "PLAN ASSETS" OF ANY SUCH PLAN, OR TO ANY OTHER "BENEFIT PLAN INVESTOR" (AS DEFINED IN U.S. DEPARTMENT OF LABOR REGULATIONS SECTION 2510.3-101(f)(2), INCLUDING AN INSURANCE COMPANY GENERAL ACCOUNT.**

A TRANSFER OF THIS NOTE IN VIOLATION OF THE FOREGOING WILL BE OF NO FORCE OR EFFECT, WILL BE VOID AB INITIO, AND WILL NOT OPERATE TO TRANSFER ANY RIGHTS TO THE TRANSFEREE, NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY TO THE ISSUER, THE TRUSTEE, THE REGULATION S NOTE REGISTRAR OR ANY SECURITIES INTERMEDIARY.

UNLESS THIS NOTE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF EUROCLEAR BANK S.A./N.V., AS OPERATOR OF THE EUROCLEAR SYSTEM ("EUROCLEAR"), OR CLEARSTREAM BANKING, SOCIETE ANONYME ("CLEARSTREAM, LUXEMBOURG") TO THE REGULATION S NOTE REGISTRAR FOR

REGISTRATION OF TRANSFER OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF BT GLOBENET NOMINEES LIMITED, AS NOMINEE FOR DEUTSCHE BANK AG, LONDON BRANCH, IN ITS CAPACITY AS COMMON DEPOSITARY FOR EUROCLEAR OR CLEARSTREAM, LUXEMBOURG, OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF EUROCLEAR OR CLEARSTREAM, LUXEMBOURG (AND ANY PAYMENT MADE TO BT GLOBENET NOMINEES LIMITED OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF EUROCLEAR OR CLEARSTREAM, LUXEMBOURG), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, BT GLOBENET NOMINEES LIMITED, HAS AN INTEREST HEREIN.

NY-528342 v4

## FTC INTERNATIONAL SPC, ACTING SOLELY FOR THE ACCOUNT OF SERIES 2007-1-C-NF-U SEGREGATED PORTFOLIO

### REGULATION S GLOBAL NOTE

representing

**U.S.$5,000,000 Series 2007-1-C-NF-U Tranche 1 Notes due November 30, 2007**

1. **Introduction:**  This Regulation S Global Note is issued in respect of the U.S.$ 5,000,000 Series 2007-1-C-NF-U Tranche 1 Notes due November 30, 2007 (the "Notes") of FTC International SPC acting solely for the account of the Series 2007-1-C-NF-U Segregated Portfolio (the "Issuer"). FTC International SPC is referred to herein as the "Company." The Notes are issued pursuant to an indenture dated as of May 30, 2007 (the "Master Indenture") as supplemented by a supplemental indenture dated as of May 30 2007 (the "Series 2007-1-C-NF-U Supplemental Indenture"; collectively with the Master Indenture, the "Indenture"), each among the Company, the Issuer, Deutsche Bank Trust Company Americas, as Trustee, Securities Intermediary, Rule 144A Note Registrar, Custodian and Rule 144A Note Paying Agent, Deutsche Bank AG, London Branch, as Regulation S Note Paying Agent, Deutsche Bank Luxembourg S.A. as Regulation S Note Registrar and FTC Emerging Markets, Inc as Note Calculation Agent and as Disposal Agent. The obligations of the Issuer with respect to the Notes are secured by the assets of the Issuer under the terms of the Indenture. The Noteholders are bound by, and are deemed to have notice of, all the provisions of the Indenture applicable to them. Copies of the Indenture are available for inspection by Noteholders during normal business hours at the registered office for the time being of the Trustee, being at 60 Wall Street, 27th Floor, New York, New York 10005.  Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Indenture..

2. **Registered Holder:** This is to certify that:

BT GLOBENET NOMINEES LIMITED

is the person registered in the register maintained by the Note Registrar in relation to the Notes (the "Register") as the duly registered holder (the "Holder") of U.S.$ 5,000,000 in principal balance of the Notes represented from time to time by this Regulation S Global Note.

3. **Promise to pay:**  The Issuer, for value received, hereby promises to pay to the Holder interest as specified in the Indenture and such principal amount as is noted in the records of the Common Depositary for Euroclear or Clearstream, Luxembourg (each a "Clearing System") as being the unpaid principal amount of this Regulation S Global Note on the Payment Date falling in November 2007 or on such other date or dates as the same (or such portion of such principal amount) may become payable in accordance with the Indenture, together with any additional amounts payable in accordance with the Indenture, all subject to and in accordance with the Indenture.

This Note is a Regulation S Global Note deposited with Euroclear or Clearstream, Luxembourg acting as Depositary, and registered in the name of BT Globenet Nominees Limited, as nominee for Deutsche Bank AG, London Branch in its capacity as common depositary (the "Common Depositary") for Euroclear or Clearstream, Luxembourg, and BT Globenet Nominees Limited, as

holder of record of this Note, shall be entitled to receive payments of principal and interest, other than principal and interest due at the maturity date, by wire transfer of immediately available funds.

**4.   Redemptions:**  This Regulation S Global Note is subject to redemption pursuant to the terms described in the Indenture.

**5.   Transfers:**  Transfers of this Regulation S Global Note shall be limited to transfers in whole, but not in part, to nominees of the applicable Clearing System or to a successor of the applicable Clearing System or to such successor's nominee.  Upon any such exchange or transfer of a beneficial interest in this Regulation S Global Note for an interest in a Rule 144A Global Note or for a Definitive Registered Note or upon any exchange or transfer of an interest in a Rule 144A Global Note or a Definitive Registered Note for an interest in this Regulation S Global Note in accordance with the Indenture, this Regulation S Global Note shall be endorsed to reflect the change of the principal amount evidenced hereby.

**6.   Limitation or Exchange for Definitive Registered Notes:**  This Regulation S Global Note is exchangeable for Definitive Registered Notes if and only if the applicable Clearance System on behalf of which the Regulation S Global Notes is held is closed for business for a continuous period of 14 days or more (other than by reason of legal holidays) or announces an intention permanently to cease business or does in fact do so, Definitive Registered Notes shall be issued in registered form only, and will be registered in the name or names of such person or persons as the Issuer shall notify the Note Registrar. It is expected that such notification will be based upon directions received by the Issuer from the Clearing Systems as to ownership of beneficial interests in the Regulation S Global Notes.

**7.   Delivery of Regulation S Notes which are Definitive Registered Notes:**  Whenever this Regulation S Global Note is to be exchanged for Regulation S Notes which are Definitive Registered Notes, such exchange shall be effected in accordance with the provisions of the Indenture and the regulations concerning the transfer and registration of Notes in the Indenture and, in particular, shall be effected without charge to any Holder, but against such indemnity as the Note Registrar may require in respect of any tax or other duty of whatsoever nature which may be levied or imposed in connection with such exchange.

**8.   Provisions of the Indenture apply:**  Save as otherwise provided herein, until the whole of this Regulation S Global Note has been exchanged as provided herein or cancelled in accordance with the Indenture, the Holder of this Regulation S Global Note shall have the benefit of, and be subject to, the Indenture.

**9.   Notices:**  So long as this Regulation S Global Note is held on behalf of any Clearing System, notices to Holders of beneficial interests in the Notes represented by this Regulation S Global Note may be given by delivery of the notice to the Common Depository.

**10.  Legends:**  The statements set out in the legends above are an integral part of this Regulation S Global Note and, by acceptance hereof, each Holder of this Regulation S Global Note agrees to be subject to and bound by such legends.

**11. Determination of entitlement:** This Regulation S Global Note is evidence of entitlement only and is not a document of title. Entitlements are determined by the Register and only the Holder is entitled to payment in respect of this Regulation S Global Note.

**12. Authentication:** This Regulation S Global Note shall not be valid for any purpose until it has been authenticated in accordance with the Indenture by the Trustee or the Authenticating Agent.

**13. Governing Law:** This Regulation S Global Note shall be construed in accordance with and governed by the laws of the State of New York applicable to agreements made and to be performed therein without giving effect to choice of law principles thereof except for Sections 5-1401 and 5-1402 of the General Obligations Law of the State of New York.

**14. Limited Recourse and Extinguishment:** The Notes are limited recourse obligations of the Issuer payable solely from the relevant Collateral in accordance with the Indenture and the applicable Priority of Payments, any outstanding but unpaid amounts will be extinguished and will not hereafter revive.

AS WITNESS the manual or facsimile signature of a duly authorized person on behalf of the Issuer.

> **FTC INTERNATIONAL SPC,** acting solely for the account of the Series 2007-1-C-NF-U Segregated Portfolio
>
> By:_____
>    Name:
>    Title:

This is a Regulating S Global Note evidencing the Series 2007-1-C-NF-U Tranche 1 Notes referred to in the within mentioned Indenture.

ISSUED on May 30, 2007

AUTHENTICATED for and on behalf of
Deutsche Bank Trust Company Americas,
as Trustee, not in its individual capacity but solely as Trustee,
without recourse, warranty or liability

By:_____
    Name:
    Title:

By:_____
    Name:
    Title:

### Schedule to Regulation S Global Note

The following (a) issues of Notes initially represented by this Global Note, (b) exchanges of the whole of this Global Note for Definitive Registered Notes, (c) cancellations or forfeitures of interests in this Global Note and/or (d) payments of the Redemption Amount in respect of this Global Note have been made, resulting in the principal amount of this Global Note specified in the latest entry in the fourth column:

| Date [_____] | Amount of increase/decrease in principal amount of this Global Note | Reason for increase/decrease in principal amount of this Global Note (initial issue, exchange, cancellation, forfeiture or payment, stating amount of payment made) | Principal Amount of this Global Note following such increase/decrease [_____] | Notation made by or on behalf of the Trustee |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**Exhibit A-2**
Form of Rule 144A Global Note

EXHIBIT A-2

## Form of Rule 144A Global Note

No. [ ]

CUSIP No.:     [_____]

ISIN No.:     [_____]

THE ISSUER OF THIS NOTE HAS NOT BEEN REGISTERED UNDER THE UNITED STATES INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "INVESTMENT COMPANY ACT"), AND THE OFFER AND SALE OF THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR WITH ANY SECURITIES REGULATORY AUTHORITY OF ANY STATE OR OTHER JURISDICTION.

EACH PERSON ACQUIRING AN INTEREST IN THIS NOTE IS DEEMED TO (1) REPRESENT THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" (AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT ("RULE 144A")) (A "QIB") THAT IS ALSO A "QUALIFIED PURCHASER" (AS DEFINED IN SECTION 2(a)(51) OF THE INVESTMENT COMPANY ACT) (A "QUALIFIED PURCHASER") AND (2) AGREE THAT IT WILL NOT OFFER, SELL OR OTHERWISE TRANSFER SUCH INTEREST EXCEPT (A) TO THE ISSUER; (B) IN ACCORDANCE WITH RULE 144A TO A PERSON THAT IS A QIB AND A QUALIFIED PURCHASER THAT (I) IS NOT FORMED FOR THE PURPOSE OF INVESTMENT IN THIS NOTE, UNLESS ALL OF ITS BENEFICIAL OWNERS ARE QUALIFIED PURCHASERS, (II) IS NOT A DEALER REFERRED TO IN PARAGRAPH (a)(1)(ii) OF RULE 144A UNLESS IT OWNS AND INVESTS ON A DISCRETIONARY BASIS AT LEAST $25 MILLION IN SECURITIES OF ISSUERS THAT ARE NOT AFFILIATED PERSONS OF SUCH DEALER, (III) IS NOT A PLAN REFERRED TO IN PARAGRAPH (a)(1)(i)(D) OR (E) OF RULE 144A OR A TRUST FUND REFERRED TO IN PARAGRAPH (a)(1)(i)(F) OF RULE 144A THAT HOLDS THE ASSETS OF SUCH PLAN, UNLESS INVESTMENT DECISIONS ARE MADE SOLELY BY THE FIDUCIARY, TRUSTEE OR SPONSOR OF SUCH PLAN, (IV) IS PURCHASING THIS NOTE FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QIB THAT IS ALSO A QUALIFIED PURCHASER IN AT LEAST A MINIMUM DENOMINATION OF €1,000,000 or USD1,000,000 (OR EQUIVALENT IN THE RELEVANT DENOMINATION CURRENCY) AND (V) WILL PROVIDE WRITTEN NOTICE OF THE FOREGOING AND ANY OTHER APPLICABLE TRANSFER RESTRICTIONS TO ANY TRANSFEREE; OR (C) IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH RULE 144A UNDER THE SECURITIES ACT AND NOT TO, OR FOR THE ACCOUNT OR BENEFIT OF, A U.S. PERSON. AS USED HEREIN, THE TERMS "OFFSHORE TRANSACTION" AND "U.S. PERSON" HAVE THE MEANINGS GIVEN TO THEM BY RULE 144A UNDER THE SECURITIES ACT.

THIS NOTE MAY NOT BE SOLD OR TRANSFERRED TO ANY PLAN SUBJECT TO TITLE I OF ERISA OR SECTION 4975 OF THE CODE OR TO ANY PERSON ACTING ON BEHALF OF OR WITH "PLAN ASSETS" OF ANY SUCH PLAN, OR TO ANY OTHER "BENEFIT PLAN INVESTOR" (AS DEFINED IN U.S. DEPARTMENT OF LABOR REGULATIONS SECTION 2510.3-101(f)(2), INCLUDING AN INSURANCE COMPANY GENERAL ACCOUNT.

A TRANSFER OF THIS NOTE IN VIOLATION OF THE FOREGOING WILL BE OF NO FORCE OR EFFECT, WILL BE VOID AB INITIO, AND WILL NOT OPERATE TO TRANSFER ANY RIGHTS TO THE TRANSFEREE, NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY TO THE ISSUER, THE TRUSTEE, THE RULE 144A NOTE REGISTRAR OR ANY SECURITIES INTERMEDIARY. IF THE ISSUER DETERMINES THAT ANY BENEFICIAL OWNER OR HOLDER OF AN INTEREST IN THIS NOTE THAT IS A U.S. PERSON IS NOT A QIB AND A QUALIFIED PURCHASER, THE ISSUER WILL REQUIRE THAT SUCH BENEFICIAL OWNER OR HOLDER SELL ALL OF ITS RIGHT, TITLE AND INTEREST IN THIS NOTE TO A PERSON WHO IS A PERMITTED TRANSFEREE, WITH SUCH SALE TO BE EFFECTED WITHIN 30 DAYS AFTER NOTICE OF SUCH SALE REQUIREMENT IS GIVEN. IF SUCH SALE IS NOT EFFECTED WITHIN SUCH 30 DAYS, UPON WRITTEN DIRECTION FROM THE ISSUER, THE TRUSTEE WILL BE AUTHORIZED TO SELECT AN AGENT TO CONDUCT A COMMERCIALLY REASONABLE SALE OF SUCH NOTE TO A PERSON WHO IS A PERMITTED TRANSFEREE AND, PENDING TRANSFER, NO FURTHER PAYMENTS WILL BE MADE IN RESPECT OF SUCH NOTE OR ANY BENEFICIAL INTEREST THEREIN.

UNLESS THIS NOTE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY ("DTC") TO THE RULE 144A NOTE REGISTRAR FOR REGISTRATION OF TRANSFER OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

# FTC INTERNATIONAL SPC, ACTING SOLELY FOR THE ACCOUNT OF SERIES [___] SEGREGATED PORTFOLIO

## RULE 144A GLOBAL NOTE

### representing

### [U.S.$][€][____] Series [_____] Tranche [_____] Notes due [_____]

1. **Introduction:**  This Rule 144A Global Note is issued in respect of the [U.S.$] [€] [_____ ] Series [_____] Tranche [____] Notes due [_____] (the "Notes") of FTC International SPC acting solely for the account of the Series [_____] Segregated Portfolio (the "Issuer"). FTC International SPC is referred to herein as the "Company." The Notes are issued pursuant to an indenture dated as of May 30, 2007 (the "Master Indenture") as supplemented by a supplemental indenture dated as of [_____], 2007 (the "Series [__] Supplemental Indenture"; collectively with the Master Indenture, the "Indenture"), each among the Company, the Issuer, Deutsche Bank Trust Company Americas, as Trustee, Securities Intermediary, Rule 144A Note Registrar, Custodian and Rule 144A Note Paying Agent, Deutsche Bank AG, London Branch, as Regulation S Note Paying Agent, Deutsche Bank Luxembourg S.A. as Regulation S Note Registrar and FTC Emerging Markets, Inc as Note Calculation Agent and as Disposal Agent.  The obligations of the Issuer with respect to the Notes are secured by the assets of the Issuer under the terms of the Indenture. The Noteholders are bound by, and are deemed to have notice of, all the provisions of the Indenture applicable to them. Copies of the Indenture are available for inspection by Noteholders during normal business hours at the registered office for the time being of the Trustee, being at 60 Wall Street, 27th Floor, New York, New York 10005.  Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Indenture.

2. **Registered Holder:**  This is to certify that:

### CEDE & CO

is the person registered in the register maintained by the Note Registrar in relation to the Notes (the "Register") as the duly registered holder (the "Holder") of U.S.$ [_____] in principal balance of the Notes represented from time to time by this Rule 144A Global Note.

This Note is a Rule 144A Global Note has been deposited with DTC acting as Depositary, or pursuant to the Depository's instructions, shall be delivered by the Trustee on behalf of the Depository to and deposited with the Depository's custodian and in either case shall be registered in the name of Cede & Co., a nominee of DTC, and Cede & Co., as holder of record of this Note, shall be entitled to receive payments of principal and interest, other than principal and interest due at the maturity date, by wire transfer of immediately available funds.

3. **Promise to pay:**  The Issuer, for value received, hereby promises to pay to the Holder interest as specified in the Indenture and such principal amount as is noted in the records of DTC as being the unpaid principal amount of this Rule 144A Global Note on the Payment Date falling in [_____] or on such other date or dates as the same (or such portion of such principal amount) may become payable in accordance with the Indenture, together with any additional amounts payable in accordance with the Indenture, all subject to and in accordance with the Indenture.

A-2-3

4.   **Redemptions:** This Rule 144A Global Note is subject to redemption pursuant to the terms described in the Indenture.

5.   **Transfers:** Transfers of this Rule 144A Global Note shall be limited to transfers in whole, but not in part, to nominees of DTC or to a successor of DTC or to such successor's nominee. Upon any such exchange or transfer of a beneficial interest in this Rule 144A Global Note for an interest in a Regulation S Global Note or for a Definitive Registered Note or upon any exchange or transfer of an interest in a Regulation S Global Note or a Definitive Registered Note for an interest in this Rule 144A Global Note, this Rule 144A Global Note shall be endorsed to reflect the change of the principal amount evidenced hereby.

6.   **Exchange for Definitive Registered Notes:** This Rule 144A Global Note is exchangeable for Definitive Registered Notes if and only if the applicable Clearance System on behalf of which the Rule 144A Global Notes is held is closed for business for a continuous period of 14 days or more (other than by reason of legal holidays) or announces an intention permanently to cease business or does in fact do so, Definitive Registered Notes shall be issued in registered form only, and will be registered in the name or names of such person or persons as the Issuer shall notify the Note Registrar. It is expected that such notification will be based upon directions received by the Issuer from DTC as to ownership of beneficial interests in the Rule 144A Global Notes.

7.   **Delivery of Rule 144A Notes which are Definitive Registered Notes:** Whenever this Rule 144A Global Note is to be exchanged for Rule 144A Notes which are Definitive Registered Notes, such exchange shall be effected in accordance with the provisions of the Indenture and the regulations concerning the transfer and registration of Notes in the Indenture and, in particular, shall be effected without charge to any Holder, but against such indemnity as the Note Registrar may require in respect of any tax or other duty of whatsoever nature which may be levied or imposed in connection with such exchange.

8.   **Provisions of the Indenture apply:** Save as otherwise provided herein, until the whole of this Rule 144A Global Note has been exchanged as provided herein or cancelled in accordance with the Indenture, the Holder of this Rule 144A Global Note shall have the benefit of, and be subject to, the Indenture.

9.   **Notices:** So long as this Rule 144A Global Note is held on behalf of DTC, notices to Holders of beneficial interests in the Notes represented by this Rule 144A Global Note may be given by delivery of the notice to the DTC.

10.  **Legends:** The statements set out in the legends above are an integral part of this Rule 144A Global Note and, by acceptance hereof, each Holder of this Rule 144A Global Note agrees to be subject to and bound by such legends.

11.  **Determination of entitlement:** This Rule 144A Global Note is evidence of entitlement only and is not a document of title. Entitlements are determined by the Register and only the Holder is entitled to payment in respect of this Rule 144A Global Note.

12. **Authentication:** This Rule 144A Global Note shall not be valid for any purpose until it has been authenticated in accordance with the Indenture by the Trustee or the Authenticating Agent.

13. **Governing Law:** This Rule 144A Global Note shall be construed in accordance with and governed by the laws of the State of New York applicable to agreements made and to be performed therein without giving effect to choice of law principles thereof except for Sections 5-1401 and 5-1402 of the General Obligations Law of the State of New York.

14. **Limited Recourse and Extinguishment:** The Notes are limited recourse obligations of the Issuer payable solely from the relevant Collateral in accordance with the Indenture and the applicable Priority of Payments, any outstanding but unpaid amounts will be extinguished and will not thereafter revive.

A-2-5

## Schedule to Rule 144A Global Note

The following (a) issues of Notes initially represented by this Global Note, (b) exchanges of the whole of this Global Note for Definitive Registered Notes, (c) cancellations or forfeitures of interests in this Global Note and/or (d) payments of the Redemption Amount in respect of this Global Note have been made, resulting in the principal amount of this Global Note specified in the latest entry in the fourth column:

| Date [_____] | Amount of increase/decrease in principal amount of this Global Note | Reason for increase/decrease in principal amount of this Global Note (initial issue, exchange, cancellation, forfeiture or payment, stating amount of payment made) | Principal Amount of this Global Note following such increase/decrease [_____] | Notation made by or on behalf of the Trustee |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

NY-525291 v5

**Exhibit A-3**
Form of Definitive Registered Note

EXHIBIT A-3

## Form of Definitive Registered Note

No. [ ]

THE ISSUER OF THIS NOTE HAS NOT BEEN REGISTERED UNDER THE UNITED STATES INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "INVESTMENT COMPANY ACT"), AND THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR WITH ANY SECURITIES REGULATORY AUTHORITY OF ANY STATE OR OTHER JURISDICTION.

[Regulation S] [EACH PERSON ACQUIRING AN INTEREST IN THIS NOTE IS DEEMED TO (1) REPRESENT THAT IT IS NOT A "U.S. PERSON" AND IS ACQUIRING SUCH INTEREST IN AN "OFFSHORE TRANSACTION" PURSUANT TO RULE 903 OR RULE 904 OF REGULATION S UNDER THE SECURITIES ACT AND (2) AGREE THAT IT WILL NOT OFFER, SELL OR OTHERWISE TRANSFER SUCH INTEREST EXCEPT (A) TO THE ISSUER OR (B) IN AN OFFSHORE TRANSACTION AND NOT TO, OR FOR THE ACCOUNT OR BENEFIT OF, A U.S. PERSON IN ACCORDANCE WITH REGULATION S UNDER THE SECURITIES ACT. AS USED HEREIN, THE TERMS "OFFSHORE TRANSACTION" AND "U.S. PERSON" HAVE THE MEANINGS GIVEN TO THEM BY REGULATION S UNDER THE SECURITIES ACT.]

THE SERIES [_____] NOTES MAY NOT BE SOLD OR TRANSFERRED TO ANY PLAN SUBJECT TO TITLE I OF ERISA OR SECTION 4975 OF THE CODE OR TO ANY PERSON ACTING ON BEHALF OF OR WITH "PLAN ASSETS" OF ANY SUCH PLAN, OR TO ANY OTHER "BENEFIT PLAN INVESTOR" (AS DEFINED IN U.S. DEPARTMENT OF LABOR REGULATIONS SECTION 2510.3-101(f)(2), INCLUDING AN INSURANCE COMPANY GENERAL ACCOUNT.

A TRANSFER OF THIS NOTE IN VIOLATION OF THE FOREGOING WILL BE OF NO FORCE OR EFFECT, WILL BE VOID AB INITIO, AND WILL NOT OPERATE TO TRANSFER ANY RIGHTS TO THE TRANSFEREE, NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY TO THE ISSUER, THE TRUSTEE, THE APPLICABLE NOTE REGISTRAR OR ANY SECURITIES INTERMEDIARY.

[Rule 144A] [THE ISSUER OF THIS NOTE HAS NOT BEEN REGISTERED UNDER THE UNITED STATES INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "INVESTMENT COMPANY ACT"), AND THE OFFER AND SALE OF THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR WITH ANY SECURITIES REGULATORY AUTHORITY OF ANY STATE OR OTHER JURISDICTION.]

[Rule 144A] [EACH PERSON ACQUIRING AN INTEREST IN THIS NOTE IS DEEMED TO (1) REPRESENT THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" (AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT ("RULE 144A")) (A "QIB") THAT IS ALSO A

A-3-1

"QUALIFIED PURCHASER" (AS DEFINED IN SECTION 2(A)(51) OF THE INVESTMENT COMPANY ACT) (A "QUALIFIED PURCHASER") AND (2) AGREE THAT IT WILL NOT OFFER, SELL OR OTHERWISE TRANSFER SUCH INTEREST EXCEPT (A) TO THE ISSUER; (B) IN ACCORDANCE WITH RULE 144A TO A PERSON THAT IS A QIB AND A QUALIFIED PURCHASER THAT (I) IS NOT FORMED FOR THE PURPOSE OF INVESTMENT IN THIS NOTE, UNLESS ALL OF ITS BENEFICIAL OWNERS ARE QUALIFIED PURCHASERS, (II) IS NOT A DEALER REFERRED TO IN PARAGRAPH (a)(1)(ii) OF RULE 144A UNLESS IT OWNS AND INVESTS ON A DISCRETIONARY BASIS AT LEAST $25 MILLION IN SECURITIES OF ISSUERS THAT ARE NOT AFFILIATED PERSONS OF SUCH DEALER, (III) IS NOT A PLAN REFERRED TO IN PARAGRAPH (a)(1)(i)(D) OR (E) OF RULE 144A OR A TRUST FUND REFERRED TO IN PARAGRAPH (a)(1)(i)(F) OF RULE 144A THAT HOLDS THE ASSETS OF SUCH PLAN, UNLESS INVESTMENT DECISIONS ARE MADE SOLELY BY THE FIDUCIARY, TRUSTEE OR SPONSOR OF SUCH PLAN, (IV) IS PURCHASING THIS NOTE FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QIB THAT IS ALSO A QUALIFIED PURCHASER IN AT LEAST A MINIMUM DENOMINATION OF €1,000,000 or USD1,000,000 (OR EQUIVALENT IN THE RELEVANT DENOMINATION CURRENCY) AND (V) WILL PROVIDE WRITTEN NOTICE OF THE FOREGOING AND ANY OTHER APPLICABLE TRANSFER RESTRICTIONS TO ANY TRANSFEREE; OR (C) IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH RULE 144AUNDER THE SECURITIES ACT AND NOT TO, OR FOR THE ACCOUNT OR BENEFIT OF, A U.S. PERSON. AS USED HEREIN, THE TERMS "OFFSHORE TRANSACTION" AND "U.S. PERSON" HAVE THE MEANINGS GIVEN TO THEM BY RULE 144AUNDER THE SECURITIES ACT.]

**THIS NOTE MAY NOT BE SOLD OR TRANSFERRED TO ANY PLAN SUBJECT TO TITLE I OF ERISA OR SECTION 4975 OF THE CODE OR TO ANY PERSON ACTING ON BEHALF OF OR WITH "PLAN ASSETS" OF ANY SUCH PLAN, OR TO ANY OTHER "BENEFIT PLAN INVESTOR" (AS DEFINED IN U.S. DEPARTMENT OF LABOR REGULATIONS SECTION 2510.3-101(f)(2), INCLUDING AN INSURANCE COMPANY GENERAL ACCOUNT.**

A TRANSFER OF THIS NOTE IN VIOLATION OF THE FOREGOING WILL BE OF NO FORCE OR EFFECT, WILL BE VOID AB INITIO, AND WILL NOT OPERATE TO TRANSFER ANY RIGHTS TO THE TRANSFEREE, NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY TO THE ISSUER, THE TRUSTEE, THE REGISTRAR OR ANY SECURITIES INTERMEDIARY. IF THE ISSUER DETERMINES THAT ANY BENEFICIAL OWNER OR HOLDER OF AN INTEREST IN THIS NOTE THAT IS A U.S. PERSON IS NOT A QIB AND A QUALIFIED PURCHASER, THE ISSUER WILL REQUIRE THAT SUCH BENEFICIAL OWNER OR HOLDER SELL ALL OF ITS RIGHT, TITLE AND INTEREST IN THIS NOTE TO A PERSON WHO IS A PERMITTED TRANSFEREE, WITH SUCH SALE TO BE EFFECTED WITHIN 30 DAYS AFTER NOTICE OF SUCH SALE REQUIREMENT IS GIVEN. IF SUCH SALE IS NOT EFFECTED WITHIN SUCH 30 DAYS, UPON WRITTEN DIRECTION FROM THE ISSUER, THE TRUSTEE WILL BE AUTHORIZED TO SELECT AN AGENT TO CONDUCT A COMMERCIALLY REASONABLE SALE OF SUCH NOTE TO A PERSON WHO IS A PERMITTED

TRANSFEREE AND, PENDING TRANSFER, NO FURTHER PAYMENTS WILL BE MADE IN RESPECT OF SUCH NOTE OR ANY BENEFICIAL INTEREST THEREIN.

### Schedule to Definitive Registered Note

The following (a) issues of Notes initially represented by this Definitive Registered Note, (b) exchanges of the whole of this Definitive Registered Note for Global Notes, (c) cancellations or forfeitures of interests in this Definitive Registered Note and/or (d) payments of the Redemption Amount in respect of this Definitive Registered Note have been made, resulting in the principal amount of this Definitive Registered Note specified in the latest entry in the fourth column:

| Date [_____] | Amount of increase/decrease in principal amount of this Note | Reason for increase/decrease in principal amount of this Note (initial issue, exchange, cancellation, forfeiture or payment, stating amount of payment made) | Principal Amount of this Note following such increase/decrease [_____] | Notation made by or on behalf of the Trustee |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

NY-525281 v6

**Exhibit B**
Form of Investor Representation Letter

**Exhibit C-1**
Form of Regulation S Transferor Certificate

# FORM OF TRANSFER CERTIFICATE

FOR VALUE RECEIVED _____

being the registered holder of this Regulation S Global Note, hereby transfers to _____

of _____, U.S.$ _____.___ in

principal amount of the U.S.$ 5,000,000 Series 2007-1-C-NF-U Notes due November 30, 2007

(the "Series 2007-1-C-NF-U Notes") of FTC International SPC acting for the account of the

Series 2007-1-C-NF-U Segregated Portfolio and irrevocably requests and authorizes Deutsche

Bank Luxembourg S.A., in its capacity as Regulation S Note Registrar in relation to the Series

2007-1-C-NF-U Notes (or any successor to Deutsche Bank Luxembourg S.A., in its capacity as

such) to effect the relevant transfer by means of appropriate entries in the register kept by it.

Dated:   _____

By:   _____

**Notes:**

The name of the person by or on whose behalf this form of transfer is signed must correspond
with the name of the registered holder as it appears on the face of this Regulation S Global Note.

A representative of such registered holder should state the capacity in which he signs, e.g.
executor.

The signature of the person effecting a transfer shall conform to any list of duly authorized
specimen signatures supplied by the registered Holder or be certified by a recognized bank,
notary public or in such other manner as the Note Registrar may require.

.

**Exhibit C-2**
Form of Rule 144A Transferor Certificate

## FORM OF TRANSFER

FOR VALUE RECEIVED _____

being the registered holder of this Rule 144A Global Note, hereby transfers to _____

of _____

principal amount of the U.S.$ [_____], U.S.$ _____.___ in

Notes") of FTC International SPC acting for the account of the Series [____] Notes due [____] (the "Series [____]

Portfolio and irrevocably requests and authorizes Deutsche Bank Trust Company Americas, in

its capacity as Rule 144A Note Registrar in relation to the Series [____] Segregated

to Deutsche Bank Trust Company Americas, in its capacity as such) to effect the relevant Notes (or any successor

transfer by means of appropriate entries in the register kept by it.

Dated: _____

By: _____

**Notes:**

The name of the person by or on whose behalf this form of transfer is signed must correspond

with the name of the registered holder as it appears on the face of this Rule 144A Global Note.

A representative of such registered holder should state the capacity in which he signs, e.g.

executor.

The signature of the person effecting a transfer shall conform to any list of duly authorized

specimen signatures supplied by the registered Holder or be certified by a recognized bank,

notary public or in such other manner as the Note Registrar may require.

**Exhibit D**
Form of Beneficial Ownership Certificate

**FTC INTERNATIONAL SPC, ACTING SOLELY FOR THE ACCOUNT OF SERIES [__]
SEGREGATED PORTFOLIO**

**REGISTERED NOTE**

representing

**U.S.$[_] Series [____] Tranche [____] Notes due [_____]**

**1.   Introduction:**   This Definitive Registered Note is issued in respect of the U.S.$ [_____] Series [____] Tranche [____] Notes due [_____] (the "Notes") of FTC International SPC acting solely for the account of the Series [____] Segregated Portfolio (the "Issuer"). FTC International SPC is referred to herein as the "Company." The Notes are issued pursuant to an indenture dated as of May 30, 2007 (the "Master Indenture") as supplemented by a supplemental indenture dated as of [____], 2007 (the "Series [__] Supplemental Indenture"; collectively with the Master Indenture, the "Indenture"), each among the Company, the Issuer, Deutsche Bank Trust Company Americas, as Trustee, Securities Intermediary, Rule 144A Note Registrar, Custodian and Rule 144A Note Paying Agent, Deutsche Bank AG, London Branch, as Regulation S Note Paying Agent, Deutsche Bank Luxembourg S.A. as Regulation S Note Registrar and FTC Emerging Markets, Inc as Note Calculation Agent and as Disposal Agent. The obligations of the Issuer with respect to the Notes are secured by the assets of the Issuer under the terms of the Indenture. The Noteholders are bound by, and are deemed to have notice of, all the provisions of the Indenture applicable to them. Copies of the Indenture are available for inspection by Noteholders during normal business hours at the registered office for the time being of the Trustee, being at 60 Wall Street, 27th Floor, New York, New York 10005. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Indenture.

**2.   Registered Holder:** This is to certify that:

[_____]

is the person registered in the register maintained by the Note Registrar in relation to the Notes (the "Register") as the duly registered holder (the "Holder") of U.S.$ [_____] in principal balance of the Notes ("Principal Amount") represented from time to time by this Definitive Registered Note.

**3.   Promise to pay:**  The Issuer, for value received, hereby promises to pay to the Holder (x) interest as specified in the Indenture, (y) the Principal Amount upon presentation and surrender of this Note on the Payment Date falling in [_____] or on such other date or dates as the same (or such portion of such principal amount) may become payable in accordance with the Indenture and (z) any additional amounts payable in accordance with the Indenture, all subject to and in accordance with the Indenture.

**4.   Redemptions:**  This Definitive Registered Note is subject to redemption pursuant to the terms described in the Indenture.

**5.   Transfers in whole:**  Transfers of this Definitive Registered Note shall be limited to transfers in whole, but not in part, in accordance with the Indenture.

6.   **Provisions of the Indenture apply:** Save as otherwise provided herein, until the whole of this Definitive Registered Note has been exchanged as provided herein or cancelled in accordance with the Indenture, the Holder of this Definitive Registered Note shall have the benefit of, and be subject to, the Indenture.

7.   **Legends:** The statements set out in the legends above are an integral part of this Definitive Registered Note and, by acceptance hereof, each Holder of this Definitive Registered Note agrees to be subject to and bound by such legends.

8.   **Determination of entitlement:** This Definitive Registered Note is evidence of entitlement only and is not a document of title. Entitlements are determined by the Register and only the Holder is entitled to payment in respect of this Definitive Registered Note.

9.   **Authentication:** This Definitive Registered Note shall not be valid for any purpose until it has been authenticated in accordance with the Indenture by the Trustee or the Authenticating Agent.

10.  **Governing Law:** This Definitive Registered Note shall be construed in accordance with and governed by the laws of the State of New York applicable to agreements made and to be performed therein without giving effect to choice of law principles thereof except for Sections 5-1401 and 5-1402 of the General Obligations Law of the State of New York.

11.  **Limited Recourse and Extinguishment:** The Notes are limited recourse obligations of the Issuer payable solely from the relevant Collateral in accordance with the Indenture and the applicable Priority of Payments, any outstanding but unpaid amounts will be extinguished and will not thereafter revive.

**Exhibit E**
Form of Joinder Agreement

**EXHIBIT E**

JOINDER AGREEMENT

dated as of [_____],

to

Indenture dated as of [_____]

Reference is made to the Indenture dated as of [_____] (the "Indenture"), among FTC International SPC, an exempted company with limited liability incorporated and registered as a segregated portfolio company pursuant to Part XIV of the Companies Law (2004 Revision) of the Cayman Islands (the "Company), each issuer that becomes a party thereto on or after the Closing Date upon execution of a Joinder Agreement substantially in the form hereof (each, an "Issuer" and, together with each other Issuer, the "Issuers"), Deutsche Bank Trust Company Americas, a New York banking corporation ("DBTC Americas"), as trustee (herein, together with its permitted successors in the trusts hereunder, called the "Trustee"), as securities intermediary (herein, together with its permitted successors in such capacity, called the "Securities Intermediary"), as Note Registrar in respect of the Rule 144A Notes (the "Rule 144A Note Registrar"), as Custodian (herein, together with its permitted successors in such capacity the "Custodian"), and as Rule 144A Note paying agent (herein, together with its permitted successors in such capacity, the "Rule 144A Note Paying Agent"), Deutsche Bank AG, London Branch, an entity incorporated under the laws of Germany ("DB London") as Regulation S Note paying agent (the "Regulation S Note Paying Agent"), Deutsche Bank Luxembourg S.A., an entity incorporated under the laws Luxembourg ("DB Luxembourg"), as Note registrar in respect of the Regulation S Notes (herein, together with its permitted successors hereunder, called the "Regulation S Note Registrar"), and FTC Emerging Markets, Inc., an entity incorporated under the laws of Panama ("FTCEM"), as note calculation agent (herein, together with its permitted successors hereunder, called the "Note Calculation Agent") and as disposal agent (herein, together with its permitted successors hereunder, called the "Disposal Agent").

This Joinder Agreement is being delivered to the Trustee pursuant to the Indenture by the Company acting for the account of the Series [__] Segregated Portfolio (the "Joining Issuer") as specified in the Supplemental Indenture dated the date hereof among the Joining Issuer and the other parties thereto.

By executing and delivering this Joinder Agreement, the Joining Issuer confirms to and agrees with the Trustee and the other parties hereto on and after the date hereof, that it hereby (i) becomes a party to the Indenture as if it were originally a signatory thereof and (ii) agrees to be bound by all of the terms and provisions of the Indenture.

By executing and delivering this Joinder Agreement, the Trustee and each other party hereto hereby acknowledges the appointment of the Joining Issuer as an "Issuer" under the Indenture.

This Joinder Agreement shall be governed by, and construed in accordance with the laws of the State of New York without giving effect to choice of law principles thereof except for Sections 5-1401 and 5-1402 of the General Obligations Laws of the State of New York.

**[Signature Pages Follow]**

IN WITNESS WHEREOF, the parties hereto have executed this Joinder Agreement as of the date first above written.

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be executed by their respective officers thereunto duly authorized as of the date first above written.

**FTC INTERNATIONAL SPC,** for the account of the Series [___] Segregated Portfolio as the Additional Issuer

By:_____
    Name:
    Title:

**FTC INTERNATIONAL SPC,** as Company

By:_____
    Name:
    Title:

**DEUTSCHE BANK TRUST COMPANY AMERICAS,** as Trustee, Securities Intermediary, Custodian, Rule 144A Note Paying Agent, and Rule 144A Note Registrar

By:_____
    Name:
    Title:

By:_____
    Name:
    Title:

**DEUTSCHE BANK AG, LONDON BRANCH,** as Regulation S Note Paying Agent

By:_____
    Name:
    Title:

- 4 -

By:_____
    Name:
    Title:


**DEUTSCHE BANK LUXEMBOURG S.A.,** as
Regulation S Note Registrar


By:_____
    Name:
    Title:


By:_____
    Name:
    Title:


**FTC EMERGING MARKETS, INC.,**
as Note Calculation Agent and as Disposal Agent


By:_____
    Name:
    Title:

**Exhibit F**

Opinion of US Counsel to the Issuer as to corporate, securities law and other matters

(please see Tab 31)

**Exhibit G**

Opinion of Cayman Islands Counsel to the Issuer as to corporate, tax and security interest matters

(please see Tab 32)

**Exhibit H**
Opinion of US Counsel to the Trustee

(please see Tab 33)