# EXHIBIT D

**EXECUTION VERSION**

**FTC INTERNATIONAL SPC ACTING ON BEHALF OF AND FOR THE
ACCOUNT OF THE SERIES 2008-6-C-NF-U SEGREGATED PORTFOLIO**
Issuer

**DEUTSCHE BANK TRUST COMPANY AMERICAS**
as Trustee, Securities Intermediary, Custodian and Rule 144A Note Paying Agent
and Rule 144A Note Registrar

**DEUTSCHE BANK LUXEMBOURG S.A.**
as Regulation S Note Registrar

**DEUTSCHE BANK AG, LONDON BRANCH**
as Regulation S Note Paying Agent

**FTC EMERGING MARKETS, INC.**
as Note Calculation Agent and as Disposal Agent

**SUPPLEMENTAL INDENTURE**

**Dated as of August 20, 2008**

**IN RESPECT OF
FTC INTERNATIONAL SPC – SERIES 2008-6-C-NF-U
SEGREGATED PORTFOLIO
SERIES 2008-6-C-NF-U TRANCHE 1 NOTES
DUE FEBRUARY 21, 2011**

SUPPLEMENTAL INDENTURE, dated as of August 20, 2008, among FTC International SPC, an exempted company with limited liability incorporated and registered as a segregated portfolio company pursuant to Part XIV of the Companies Law (2007 Revision) of the Cayman Islands (the "Company") acting for the account of the Series 2008-6-C-NF-U Segregated Portfolio, together with its permitted successors hereunder (the "Issuer"), Deutsche Bank Trust Company Americas, a New York banking corporation ("DBTC Americas"), as trustee (herein, together with its permitted successors in the trusts hereunder, called the "Trustee"), as securities intermediary (herein, together with its permitted successors in such capacity, called the "Securities Intermediary"), as Note registrar in respect of the Rule 144A Notes (the "Rule 144A Note Registrar"), as Custodian (herein, together with its permitted successors in such capacity the "Custodian"), and as Rule 144A Note paying agent (herein, together with its permitted successors in such capacity, the "Rule 144A Note Paying Agent"), Deutsche Bank AG, London Branch, an entity incorporated under the laws of Germany ("DB London") as Regulation S Note paying agent (the "Regulation S Note Paying Agent"), Deutsche Bank Luxembourg S.A., an entity incorporated under the laws of Luxembourg ("DB Luxembourg"), as Note registrar in respect of the Regulation S Notes (herein, together with its permitted successors hereunder, called the "Regulation S Note Registrar"), and FTC Emerging Markets, Inc., an entity incorporated under the laws of Panama ("FTCEM"), as note calculation agent (herein, together with its permitted successors hereunder, called the "Note Calculation Agent") and as disposal agent (herein, together with its permitted successors hereunder, called the "Disposal Agent").

## PRELIMINARY STATEMENT

The Company, the Trustee, the Securities Intermediary, the Note Calculation Agent, the Custodian, the Note Registrars, the Paying Agents and the Disposal Agent are parties to the Indenture dated as of May 30, 2007 (the "Indenture") establishing a program for the issuance from time to time of Secured First-to-Default Emerging Markets Credit- or Equity-Linked Notes.

The Company has authorized the creation of the Series 2008-6-C-NF-U Segregated Portfolio.

The Issuer has authorized and determined to issue Series 2008-6-C-NF-U Tranche 1 Notes due February 21, 2011, which are credit-linked notes to be constituted and secured as set out below.

Each of the parties has resolved to enter into this Supplemental Indenture for the purposes set out below and all things necessary to make this Supplemental Indenture a valid agreement of the Issuer in accordance with its terms have been done.

## GRANTING CLAUSES

The Issuer hereby Grants to the Trustee, for the benefit and security of the holders of the Notes and the other Secured Parties, all of its right, title and interest, whether now owned or hereafter acquired, in, to and under (a) the Principal Investments and the Other

Collateral (including without limitation the Series 2008-6-C-NF-U Asset Swap and all the rights under the Series 2008-6-C-NF-U Asset Swap Guarantee), (b) the Collateral Account and all Eligible Investments, investment property, instruments, money and other property credited thereto, and all other accounts maintained for the benefit and security of the Secured Parties and all investment property, instruments, money, and other property credited thereto, (c) the Series 2008-6-C-NF-U Default Swap and all the rights under the Default Swap Guarantee, (d) all accounts, chattel paper, deposit accounts, documents, general intangibles, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, and other minerals, consisting of, arising from, or relating to, any of the foregoing, the Issuer's rights under the Settlement Marketing Agreement, (e) Deliverable Obligations delivered to the Issuer in the event that the relevant Default Swap or Asset Swap is physically settled, (f) the Hedging Transactions described in the Terms Supplement and (g) all proceeds of any of the foregoing; provided that such Grant shall not extend to the Company's General Assets, the assets of any other Segregated Portfolio, or any funds or other property specifically released from the lien of the Indenture and this Supplemental Indenture or otherwise paid to the Issuer in accordance with the terms of the Indenture and this Supplemental Indenture (collectively, the "Collateral"). Such Grant is made, however, in trust, to secure the Notes equally and ratably without prejudice, priority or distinction, except as expressly provided in the Indenture or this Supplemental Indenture, between any Note and any other Note by reason of difference in time of issuance or otherwise, and further to secure, in accordance with the priorities set forth in the Indenture or this Supplemental Indenture, the other Secured Obligations.

The Trustee acknowledges such Grant, accepts the trusts under the Indenture and this Supplemental Indenture and agrees to perform the duties in the Indenture and this Supplemental Indenture in accordance with the provisions of the Indenture and this Supplemental Indenture, to the best of its ability such that the interests of the holders of the Notes and the other Secured Parties may be adequately and effectively protected.

**Section 1.**      **Definitions.**

Expressions defined in the Indenture shall have the same meanings when used herein save to the extent supplemented or modified hereby and by the Terms Supplement. Unless the context otherwise requires, terms defined in the UCC and not otherwise defined in this Supplemental Indenture shall have the meanings set forth in the UCC. The following expressions shall have the following meanings:

"Asset Swap" or "Series 2008-6-C-NF-U Asset Swap":   The ISDA Master Agreement (Multi-Currency Cross Border) and schedule thereto dated May 30, 2007 entered into by the Issuer and the Counterparty together with the confirmation dated August 20, 2008.

"Asset Swap Counterparty": FTCEM.

"Asset Swap Guarantee" or "Series 2008-6-C-NF-U Asset Swap Guarantee": The guarantee dated August 20, 2008 executed by the Asset Swap Guarantor in respect of the payment obligations of the Asset Swap Counterparty under the Asset Swap.

"Asset Swap Guarantor": FTC Holdings.

"Asset Swap Payment Date": Any date, prior to the Asset Swap Termination Date, that any payment is due on the Asset Swap.

"Asset Swap Termination Date": The date that the Asset Swap is terminated pursuant to its terms.

"Collateral" The meaning set forth in the Granting Clauses of this Supplemental Indenture.

"Collateral Account": The securities account established with the Securities Intermediary in the name of the Trustee in accordance with Section 6.15 of the Indenture.

"Collateral Issuer": Each obligor identified in the Terms Supplement as a Collateral Issuer.

"Company General Assets": A bank account in the Cayman Islands in the name of the Company which will contain (i) USD250 representing the proceeds of the issue of the ordinary share capital of the Company, (ii) fees payable to the Company in connection with the issuance of the Notes and the establishment of any Segregated Portfolio and the issuance of any Securities by such Segregated Portfolio and (iii) any other security and interest thereon.

"Counterparty": Either of the Default Swap Counterparty and the Asset Swap Counterparty, and any transferee thereof.

"Default Swap" or "Series 2008-6-C-NF-U Default Swap": The ISDA Master Agreement (Multi-Currency Cross Border) and schedule thereto dated May 30, 2007 entered into by the Issuer and the Default Swap Counterparty together with the confirmation dated August 20, 2008.

"Default Swap Counterparty": FTCEM.

"Deliver" or "Delivery": The taking of the following steps by the Issuer:

(a)    with respect to such of the Collateral as constitutes an instrument, causing the Trustee to take possession in the State of New York of such instrument, indorsed to the Trustee or in blank by an effective indorsement;

(b)    with respect to such of the Collateral as constitutes tangible chattel paper, goods, negotiable documents, or money, causing the Trustee to take possession in the State of New York of such tangible chattel paper, goods, negotiable documents, or money;

4

(c)    with respect to such of the Collateral as constitutes a certificated security in bearer form, causing the Trustee to acquire possession in the State of New York of the related security certificate;

(d)    with respect to such of the Collateral as constitutes a certificated security in registered form, causing the Trustee to acquire possession in the State of New York of the related security certificate, indorsed to the Trustee or in blank by an effective indorsement, or registered in the name of the Trustee, upon original issue or registration of transfer by the issuer of such certificated security;

(e)    with respect to such of the Collateral as constitutes an uncertificated security, causing the issuer of such uncertificated security to register the Trustee as the registered owner of such uncertificated security;

(f)    with respect to such of the Collateral as constitutes a security entitlement, causing the Securities Intermediary to indicate by book entry that the financial asset relating to such security entitlement has been credited to the Collateral Account;

(g)    with respect to such of the Collateral as constitutes an account or a general intangible, (i) causing the account debtor for such account or general intangible to be notified of the grant to the Trustee of a security interest in such account or general intangible, (ii) causing to be taken any steps necessary to perfect a security interest in such account or general intangible under the laws of the Cayman Islands and (iii) causing to be filed with the District of Columbia Recorder of Deeds a properly completed UCC financing statement that names the Issuer as debtor and the Trustee as secured party and that covers such account or general intangible;

(h)    with respect to such of the Collateral as constitutes a deposit account, causing such deposit account to be maintained in the name of the Trustee and causing the bank with which such deposit account is maintained to agree in writing with the Trustee and the Issuer that (i) such bank will comply with instructions originated by the Trustee directing disposition of the funds in such deposit account without further consent of any other person or entity, (ii) such bank will not agree with any person or entity other than the Trustee to comply with instructions originated by any person or entity other than the Trustee, (iii) such deposit account and the property deposited therein will not be subject to any lien, security interest, encumbrance, or right of set-off in favor of such bank or anyone claiming through it (other than the Trustee), (iv) such agreement will be governed by the laws of the State of New York, and (v) the State of New York will be the bank's jurisdiction of such bank for purposes of Article 9 of the UCC; or

(i)    in the case of each of paragraphs (a) through (h) above, such additional or alternative procedures as may hereafter become appropriate to grant and perfect a security interest in such items of the Collateral in favor of the Trustee, consistent with applicable law or regulations.

(j)     In each case of Delivery of any item of the Collateral, the Trustee shall make appropriate notations on its records indicating that such item of the Collateral is held by the Trustee pursuant hereto and as provided herein.

(k)     Effective upon Delivery of any item of the Collateral, the Trustee shall be deemed to have (i) represented that its purchase of such item of the Collateral is made in good faith and without notice of any adverse claim thereto appearing on the face of such item (if in physical form) or otherwise known to a Responsible Officer of the Trustee; provided that such representation shall not impose any other affirmative duty or obligation upon the Trustee with regard to inquiry or investigation of, or constructive notice of, adverse claims; and (ii) acknowledged that it holds such item of the Collateral as Trustee hereunder for the benefit of the holders of the Notes and the other Secured Parties. Any additional or alternative procedures for accomplishing "Delivery" for purposes of paragraph (i) of this definition shall be permitted only upon delivery to the Issuer and the Trustee of an Opinion of Counsel to the effect that such procedures are appropriate to grant and perfect a security interest in the applicable type of collateral in favor of the Trustee.

"Issue Date" means August 20, 2008.

"Notes" or "Series 2008-6-C-NF-U Notes":   The Series 2008-6-C-NF-U Tranche 1 Credit Linked Notes due February 21, 2011 of the Issuer hereby constituted or the amount thereof for the time being outstanding.

"Offering Circular":   The offering circular relating to the Company's secured first-to-default emerging market credit linked notes program, dated May 30, 2007, together with the Terms Supplement thereto dated August 20, 2008.

"Other Collateral":   The Asset Swap and all collateral identified in the Terms Supplement as Other Collateral in respect of the Notes.

"Principal Investments":   Cash in the amount of USD50,000,000 credited to and owing from the Asset Swap.

"Reference Banks":   If specified in the Terms Supplement; as so specified.

"Secured Obligations":   The Issuer's obligations to the holders of the Notes and the other Secured Parties under the Notes, the Indenture, this Supplemental Indenture and the Default Swap.

"Secured Parties":   The Noteholders, the Trustee, the Note Calculation Agent, the Custodian, the Note Registrars, the Note Paying Agents, the Disposal Agent, the Settlement Marketing Agent, the Default Swap Counterparty, the Asset Swap Counterparty and any counterparties under Hedging Transactions, if any.

"Series 2008-6-C-NF-U Segregated Portfolio":   That Segregated Portfolio created in respect of the Notes to segregate the assets and liabilities of the Issuer specifically

attributable to such Series from the assets and liabilities of the Company held for or on behalf of any other Series of Notes or the general assets and liabilities of the Company.

"Terms Supplement":  The terms supplement dated August 20, 2008 specifying the relevant issue details of the Notes, which appears as Schedule 1 hereto.

**Section 2.      Incorporation by Reference.**

Except as otherwise provided herein, the terms of the Indenture shall apply to this Supplemental Indenture as if they were set out herein and the Indenture shall be read and construed, in relation to the Notes, as one document with this Supplemental Indenture.

**Section 3.      Security.**

(a)      The Notes are constituted by and in accordance with the Indenture and this Supplemental Indenture.

(b)      The Issuer shall cause each item of the Collateral to be Delivered and hereby confirms that each item of the Collateral existing on the Issue Date has been Delivered. The Trustee shall hold each item of the Collateral as Delivered, separate and apart from all other property held by the Trustee. To the extent that such of the Collateral as constitutes a deposit account is maintained with Deutsche Bank Trust Company Americas, the Issuer and the Trustee hereby make the agreements described in the definition of "Delivery" in Section 1 in order for such deposit account to be Delivered. The Issuer hereby authorizes the filing of financing statements (and amendments of financing statements and continuation statements) that name the Issuer as debtor and the Trustee as secured party and that cover all personal property of the Issuer. The Issuer also hereby ratifies the filing of any such financing statements (or amendments of financing statements or continuation statements) that were filed prior to the execution hereof. Notwithstanding any other provision of the Indenture or this Supplemental Indenture, the Trustee shall not hold any part of the Collateral through an agent or nominee except as expressly permitted by this Section 3(b).

(c)      The Trustee shall not release any item of the Collateral from the lien of the Indenture and this Supplemental Indenture except in accordance with Section 10.5 of the Indenture.

(d)      The Company shall not change its name or its type or jurisdiction of incorporation without first having (i) made all filings and taken all actions in all relevant jurisdictions under the applicable UCC and other applicable law as are necessary to continue and maintain the perfection and the priority of the security interest of the Trustee in the Collateral and (ii) delivered to the Trustee an Opinion of Counsel to the effect that all necessary filings have been made under the applicable UCC in all relevant jurisdictions as are necessary to continue and maintain the perfected security interest of the Trustee in the Collateral.

**Section 4.      Asset Swap.**

(a)      On the Closing Date, the Issuer shall execute and deliver the Asset Swap.

(b)      Subject to the terms hereof, the Trustee, as directed by the Issuer, shall take all reasonable steps necessary to enforce the Issuer's rights under the Asset Swap, including receiving payments from the Asset Swap Counterparty when due and exercising the Issuer's rights under the Asset Swap.   At all times the Asset Swap Counterparty shall be required to cause FTC Holdings to issue in favor of the Issuer a credit support of the Asset Swap Counterparty's obligations under the Agreement acceptable in form and substance to the Issuer.

For the avoidance of doubt, the actions carried out by the Asset Swap Counterparty pursuant to this Section 4 shall not be viewed or interpreted as establishing an agency relationship between the Asset Swap Counterparty and the Issuer and any transfer or assignment must occur in accordance with the Asset Swap.

(c)      The Trustee shall be bound by the calculations performed by the Asset Swap Calculation Agent.

(d)      The Asset Swap shall terminate on the Maturity Date, unless terminated prior thereto pursuant to the mutual agreement of the parties thereto or in accordance with the terms of the related confirmation and this Indenture.

**Section 5.      Transfer of Notes.**

The Series 2008-6-C-NF-U Notes are issuable only (i) to a U.S. Person that is a Qualified Institutional Buyer or Qualified Purchaser and (ii) in fully registered form to non-U.S. Persons in reliance on Regulation S, in each case subject to the provisions of the Indenture relating to registration or transfer and exchanges of Notes.

**Section 6.      Representations Relating to the Security Interests in the Collateral.**

(a)      The Issuer hereby represents that, as of the date hereof (which representations and warranties shall survive the execution of this Supplemental Indenture and, with respect to Collateral Delivered after the date hereof, be deemed to be repeated on the date on which such Collateral is Delivered as if made at and as of that time), with respect to the then existing Collateral:

(i)      The Issuer owns and has good and marketable title to such Collateral free and clear of any lien, claim or encumbrance of any person, other than such as are created under, or expressly permitted by, this Supplemental Indenture.

(ii)      Other than the security interest granted to the Trustee pursuant to this Supplemental Indenture and conveyances permitted by this Supplemental Indenture, the Issuer has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed such Collateral. The Issuer has not authorized the filing of

8

and is not aware of any financing statements against the Issuer that include a description of collateral covering such Collateral other than any financing statement relating to the security interest granted to the Trustee hereunder or that has been terminated. The Issuer is not aware of any judgment or tax lien filings against the Issuer.

      (iii)    Such Collateral is comprised of "instruments", "security entitlements", "general intangibles", "tangible chattel paper", "deposit accounts", "accounts", "certificated securities", "uncertificated securities" or "securities accounts" (each as defined in the applicable UCC).

      (iv)    The Collateral Account constitutes a "securities account" as defined in the applicable UCC.

      (v)    This Supplemental Indenture creates a valid and continuing security interest (as defined in the applicable UCC) in such Collateral in favor of the Trustee, which security interest is prior to all other liens and is enforceable as such against creditors of and purchasers from the Issuer except as expressly permitted under this Supplemental Indenture.

      (vi)    The Issuer has received all consents and approvals required by the terms of such Collateral to the transfer to the Trustee of its interest and rights in such Collateral hereunder.

(b)    The Issuer hereby represents that, as of the date hereof (which representations and warranties shall survive the execution of this Supplemental Indenture and, with respect to Collateral Delivered after the date hereof, be deemed to be repeated on the date on which such Collateral is Delivered as if made at and as of that time), with respect to the then existing Collateral that constitutes "instruments":

      (i)    All original executed copies of each promissory note or mortgage note that constitutes or evidences such instruments have been delivered to the Trustee.

      (ii)    None of the promissory notes or the mortgage notes that constitute or evidence such instruments has any marks or notations indicating that it has been pledged, assigned or otherwise conveyed to any person other than the Trustee.

(c)    The Issuer hereby represents that, as of the date hereof (which representations and warranties shall survive the execution of this Supplemental Indenture and, with respect to Collateral Delivered after the date hereof, be deemed to be repeated on the date on which such Collateral is Delivered as if made at and as of that time), with respect to the then existing Collateral that constitute "security entitlements":

      (i)    All of such security entitlements have been credited to the Collateral Account. The securities intermediary for the Collateral Account has

agreed to treat all assets credited to the Collateral Account as "financial assets" within the meaning of the applicable Uniform Commercial Code.

(ii)   The Issuer has taken all steps necessary to cause the securities intermediary to identify in its records the Trustee as the person having a security entitlement against the securities intermediary in the Collateral Account.

(iii)   The Collateral Account is not in the name of any person other than the Trustee. The Issuer has not consented to the securities intermediary of the Collateral Account to comply with the entitlement order of any person other than the Trustee.

(d)   The Issuer hereby represents that, as of the date hereof (which representations and warranties shall survive the execution of this Supplemental Indenture and, with respect to Collateral Delivered after the date hereof, be deemed to be repeated on the date on which such Collateral is Delivered as if made at and as of that time), with respect to the then existing Collateral that constitutes "general intangibles" or "accounts":

(i)   The Issuer has caused the filing of all appropriate financing statements in the proper filing office in the appropriate jurisdictions under applicable law in order to perfect the security interest in such general intangibles or accounts granted to the Trustee hereunder.

(e)   The Issuer hereby represents that, as of the date hereof (which representations and warranties shall survive the execution of this Supplemental Indenture and, with respect to Collateral Delivered after the date hereof, be deemed to be repeated on the date on which such Collateral is Delivered as if made at and as of that time), with respect to the then existing Collateral that constitutes "tangible chattel paper":

(i)   (A) All original executed copies of each agreement that constitutes or evidences such tangible chattel paper have been delivered to the Trustee, and (B) none of the agreements that constitute or evidence such tangible chattel paper has any marks or notations indicating that it has been pledged, assigned or otherwise conveyed to any person other than the Trustee.

(ii)   The Issuer has taken all steps necessary to perfect the security interest against the account debtor in the property securing the agreements that constitute such tangible chattel paper.

(f)   The Issuer hereby represents that, as of the date hereof (which representations and warranties shall survive the execution of this Supplemental Indenture and, with respect to Collateral Delivered after the date hereof, be deemed to be repeated on the date on which such Collateral is Delivered as if made at and as of that time), with respect to the then existing Collateral that constitutes "securities accounts":

(i)   The Issuer has taken all steps necessary to cause the Trustee to be the person for whom such securities accounts are maintained.

(ii)     Such securities accounts are not in the name of any person other than the Trustee. The Issuer has not consented to the securities intermediary maintaining any such securities account to comply with the entitlement orders of any person other than the Trustee.

(g)     The Issuer hereby represents that, as of the date hereof (which representations and warranties shall survive the execution of this Supplemental Indenture and, with respect to Collateral that is Delivered after the date hereof, be deemed to be repeated on the date on which such Collateral is Delivered as if made at and as of that time), with respect to the then existing Collateral that constitutes a certificated security, such certificated security has been delivered to the Trustee, and, if in registered form, has been indorsed to the Trustee or in blank by an effective indorsement or has been registered in the name of the Trustee upon original issue or registration of transfer by the issuer of such certificated security.

(h)     The Issuer hereby represents that, as of the date hereof (which representations and warranties shall survive the execution of this Supplemental Indenture and, with respect to Collateral Delivered after the date hereof, be deemed to be repeated on the date on which such Collateral is Delivered as if made at and as of that time), with respect to the then existing Collateral that constitutes an uncertificated security, the issuer of such uncertificated security has registered the Trustee as the registered owner of such uncertificated security.

**Section 7.     Notice and Acknowledgement.**

Each of the Issuer and the Trustee hereby gives notice, and each of the Agents hereby acknowledges that it has notice, of the assignment by way of security to the Trustee by the Issuer of all of its rights under the Default Swap and the Other Collateral.

**Section 8.     Communications.**

Communications under this Supplemental Indenture shall be made in accordance with Section 12.3 of the Indenture.

The telephone number, fax number, address and person designated by the Issuer are set out below:

| | |
|---|---|
| Telephone: | +1 345 945 7099 |
| Fax: | +345 945 7100 |
| | |
| Address: | c/o Maples Finance Limited |
| | PO Box 1093 |
| | Boundary Hall |
| | Cricket Square |
| | Grand Cayman KY1-1102 |
| | Cayman Islands |
| Attention: | Directors |

The telephone number, fax number, address and person designated by the Default Swap Counterparty, Note Calculation Agent and Disposal and Settlement Agent are set out below:

Facsimile No:  +144(0)2077473015
Telephone No:  +144(0)2077473010

Address:       Calle 50 Edificio Bancomer Plaza
               Piso 19
               Panama City, Panama
Attention:     FTC International SPC Segregated Portfolio Transactions

The telephone number, fax number, address and person designated by the Trustee and Securities Intermediary are set out below:

Telephone:     908-608-3191
Fax:           732-578-4635

Address:       Deutsche Bank Trust Company Americas
               Trust & Securities Services – Corporates Group
               60 Wall Street, MS 2710
               New York, N.Y. 10005

Attention:     Deal Manager

## Section 9.     Benefits of Agreement.

Nothing in this Supplemental Indenture or in the Series 2008-6-C-NF-U Notes, expressed or implied, shall give to any Person, other than the parties hereto and their successors hereunder and the Noteholders and (to the extent provided herein, and as express third party beneficiaries hereof) and the Default Swap Counterparty, any benefit or any legal or equitable right, remedy or claim under this Supplemental Indenture.

## Section 10.     Governing Law.

This Supplemental Indenture and each Note shall be construed in accordance with and governed by the laws of the State of New York applicable to agreements made and to be performed therein without giving effect to choice of law principles thereof except for Sections 5-1401 and 5-1402 of the General Obligations Law of the State of New York.

## Section 11.     Jurisdiction.

The Issuer hereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of the Supreme Court of the State of New York sitting in New York County and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to the Series 2008-6-C-NF-U Notes or this Supplemental Indenture, or for recognition or enforcement of any judgment, and the

Issuer hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State or, to the extent permitted by law, in such Federal court. The Issuer hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court. The Issuer irrevocably consents to the service of any and all process in any action or proceeding by the mailing or delivery of copies of such process to it at the office of its Process Agent set forth in Section 7.2 of the Indenture. The Issuer agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

**Section 12.    Segregated Portfolio.**

The Series 2008-6-C-NF-U Notes are allocated to the Series 2008-6-C-NF-U Segregated Portfolio and each of the Trustee and Securities Intermediary, the Registrar, the Note Calculation Agent, and the Disposal and Settlement Agent acknowledge and consent to such allocation of the Notes.

**Section 13.    Non-Recourse; Non-Petition.**

The Trustee, the Default Swap Counterparty, the Holders of Series 2008-6-C-NF-U Notes and any other Secured Party shall have recourse only to the Collateral and other assets described herein and allocated to the Series 2008-6-C-NF-U Segregated Portfolio, and the Trustee having realized the same, the Default Swap Counterparty, the Holders of Series 2008-6-C-NF-U Notes of such Series and any other Secured Party or anyone acting on behalf of any of them shall not be entitled to take any further steps against the Issuer, the Company, its officers or directors to recover any further sum and the right to receive any such sum shall be extinguished and shall not thereafter revive.  In particular, neither the Trustee, the Default Swap Counterparty, any Holder of Notes nor any other Secured Party shall be entitled to petition or apply for or join in any petition or application for receivership of the Company or the Issuer or take any other step for the liquidation, winding-up or examination or any similar proceeding of the Issuer or the Company or any Segregated Portfolio, nor shall any of them have any claim in respect of any sum arising in respect of the Collateral for any other Series or against the assets allocated to the Series 2008-6-C-NF-U Segregated Portfolio or against the general assets of the Company.

Each party hereto other than the Issuer agrees not to cause the filing of a petition in bankruptcy or application for receivership against the Issuer or the Company for the nonpayment of any amounts payable by the Issuer hereunder until the payment in full of all Notes issued under the Indenture and any Supplemental Indenture and by the Company acting for its own account, or the account of any other Segregated Portfolio and the expiration of a period equal to one year and one day or, if longer, the applicable preference period then in effect, following such payment; provided that nothing in this clause shall preclude, or be deemed to stop, the Trustee, the Note Calculation Agent or the Disposal and Settlement Agent (A) from taking any action prior to the expiration of the aforementioned one year and one day period, or if longer the applicable preference

period then in effect, in (x) any case or proceeding voluntarily filed or commenced by the Issuer or (y) any involuntary insolvency proceeding filed or commenced against the Issuer by a Person other than the Trustee, the Note Calculation Agent, the Disposal and Settlement Agent or any Affiliate thereof, or (B) from commencing against the Issuer or any properties of the Issuer any legal action which is not a bankruptcy, reorganization, arrangement, insolvency, moratorium or liquidation proceeding.

**Section 14.    Execution in Counterparts.**

This instrument may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

[Signature pages follow]

14

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be executed by their respective officers thereunto duly authorized as of the date first above written.

**FTC INTERNATIONAL SPC** acting for the account of the Series 2008-6-C-NF-U Segregated Portfolio

By: _____

Name: Karen Ellerbe

Title: Director

[SIGNATURE PAGE TO SUPPLEMENTAL INDENTURE]

**DEUTSCHE BANK TRUST COMPANY AMERICAS,** as Trustee, Securities Intermediary, Custodian, Rule 144A Note Paying Agent, and Rule 144A Note Registrar

By:_____

Name:   Carol Ng
Title:   Vice President

By:_____

Name:   Annie Jaghatspanyan
Title:   Assistant Vice President

[SIGNATURE PAGE TO SUPPLEMENTAL INDENTURE]

**DEUTSCHE BANK AG, LONDON BRANCH,** as Regulation S Note Paying Agent

By: _____
    Name: BILL FERGUSON
    Title: VP

By: _____
    Name: ROBERT BEBB
    Title: VP

[SIGNATURE PAGE TO SUPPLEMENTAL INDENTURE]

**DEUTSCHE BANK LUXEMBOURG
S.A., as Regulation S Note Registrar**

By: _KJRobett_
    Name:  ATTORNEY. K. ROBINETT.
    Title:

By: _____
    Name:
    Title:  ATTORNEY.

[SIGNATURE PAGE TO SUPPLEMENTAL INDENTURE]

**FTC EMERGING MARKETS, INC.,**
as Note Calculation Agent and as Disposal
Agent

By: _____

Name:

Title:

## **SCHEDULE 1**

TERMS SUPPLEMENT

**Type of Note:**            **Fixed Rate.**

**Issue Date:**            **August 20, 2008**

**Issue Price**            **100%**

**Fungible With Existing Notes**            **No**

     **ISIN:**            **XS0383952206**

     **Common Code**            **038395220**

| | |
|---|---|
| **Aggregate Principal Amount of Tranche:** | **USD50,000,000** |
| **Denomination(s):** | **USD100,000** |
| **FX Denominated Notes** | **No** |

PROVISIONS RELATING TO INTEREST

| | |
|---|---|
| **Interest Commencement Date:** | **August 20, 2008** |
| **Interest Determination Date (If other than as set out in the Indenture):** | **N/A** |
| **Interest Rate up to and including the Scheduled Maturity Date:** | **6.25%** |
| **Interest Payment Date(s):** | **February 20th and August 20th of each year, subject to adjustments in accordance with the Modified Following Business Day Convention for which the Business Days are London and New York.** |

| | | | |
|---|---|---|---|
| (a) | Current Coupon Determination | | **Fixed Coupon** |
| (b) | Screen Rate Determination | | **Not Applicable** |
| (c) | ISDA Determination: | | **Applicable** |
| | (i) | *Floating Rate Option:* | **Not Applicable** |
| | (ii) | *Designated Maturity:* | **2.5 years** |
| | (iii) | *Reset Date:* | **N/A** |
| (d) | **Margin (if applicable):** | | **N/A** |
| (e) | **Day Count Fraction:** | | **Actual/360** |

PROVISIONS RELATING TO REDEMPTION

| | |
|---|---|
| **Scheduled Maturity Date:** | **February 21, 2011, subject to adjustment in accordance with the Modified Following Business Day Convention for which the Business Days are New York and London.** |
| **Redemption for Taxation Reasons permitted on days other than Interest Payment Dates:** | No |
| **Maximum/Minimum Redemption Amount (if applicable):** | N/A |
| **Early Redemption Amount (if other than set out in the Indenture)** | N/A |
| **Notice requirement for early redemption of the Series Notes as described in "*Description of the Series Notes-Mandatory Redemption*" and/or "*Description of the Series Notes – Redemption upon Termination of Default Swaps*" (if other than as described in the Indenture)** | N/A |
| **Call Settlement Date:** | **December 20, 2008** |
| **Call Exercise Date:** | **3 Business Days Prior to the Call Settlement Date.** |
| **Investment Agreement** | **Series 2008-6-C-NF-U Asset Swap** |
| **Investment Agreement Policy** | **Asset Swap Guarantee** |