JACK KAUFMAN (JK-3050)
RHONDA JUNG (RJ-3864)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center – Room 400
New York, NY 10281-1022
(212) 336-0106

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>- against -<br><br>FTC CAPITAL MARKETS, INC., FTC EMERGING MARKETS, INC., also d/b/a FTC GROUP, GUILLERMO DAVID CLAMENS, and LINA LOPEZ, a/k/a NAZLY CUCUNUA LOPEZ,<br><br>Defendants. | ECF CASE<br><br>09 Civ. 4755 (PGG) |

**PLAINTIFF'S REPLY TO DEUTSCHE BANK TRUST
COMPANY AMERICAS' OPPOSITION TO PLAINTIFF'S
MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

Plaintiff Securities and Exchange Commission ("Commission") respectfully submits this reply to the opposition of Deutsche Bank Trust Company Americas to the Commission's motion for approval of a proposed distribution plan in this case ("Distribution Plan").  Deutsche Bank's objection is the sole objection to the Distribution Plan that the Commission has received.

**PRELIMINARY STATEMENT**

Deutsche Bank objects in its capacity as "Trustee" under certain "indenture" agreements concerning "notes" issued by entities that are not defendants in this case and that did not contribute any assets to the distribution fund in this case.  The proposed Distribution Plan fairly

and reasonably permits noteholders who purchased a note directly from a defendant in this case to submit a claim and, if the claim is valid, to share in the distribution. The changes requested by the Trustee would render the Distribution Plan less equitable and reasonable, by permitting payments to parties (including the Trustee) who do not appear to have any legal or equitable claim against the defendants in this case and, thus, do not have any claim to the distribution fund in this case. The Trustee's additional requests -- that it share in the administration of the distribution fund, receive payment, have the notes "cancelled," and have itself "exculpated" -- are beyond the Trustee's express powers set forth in its governing indenture agreements and/or are beyond the relatively narrow scope of this proceeding.

Nonetheless, in the interest of resolving this matter amicably, the Commission has proposed to the Trustee that the Distribution Plan be amended to expressly permit the Trustee to file claims on behalf of any applicable noteholder. However, as is only fair and reasonable, the Fund Administrator (not the Trustee) would still be permitted to determine whether to allow any such claims, and that determination would depend upon whether the noteholder has a demonstrable right -- as a defrauded investor in, or creditor of, the defendants in this case -- to recover any funds from distribution fund.

## BACKGROUND

**I.     The Commission Fraud Action and Proposed Distribution Plan**

The Commission brought this civil fraud enforcement action in May 2009, alleging that defendants Guillermo Clamens and Lina Lopez, through defendant FTC Capital Markets, Inc. ("Capital Markets"), a registered broker-dealer controlled by Clamens, engaged in tens of millions of dollars of fraudulent (unauthorized) securities trades in the accounts of two FTC customers and created fake account statements to conceal those transactions from the customers,

causing those customers to lose approximately $21 million. Complaint, ¶¶ 1, 2, 32 (Docket. No. 1). In addition, the Commission alleged that FTC Emerging Markets, Inc., also doing business as FTC Group ("Emerging Markets"), also a Clamens-controlled entity, illegally operated as an unregistered broker-dealer. Id., ¶ 3. The Commission sought disgorgement of defendants' ill-gotten gains, as well as civil money penalties against them. Id., at 15.

The Commission's Complaint also referred to two additional companies that Clamens owned or controlled, FTC International SPC ("International"), a Cayman Islands limited liability company, and FTC Holdings, LLC ("Holdings"), a Delaware limited liability company. Complaint ¶ 15. However, the Commission did not name either International or Holdings as a defendant in this action, has not charged them in this action, and has not collected any assets from them.[1]

In August 2010, the Court entered final consent judgments against all defendants. Docket Nos. 48, 49, 50, and 51. The judgments against Capital Markets, Emerging Markets, and Clamens (the "Judgments") required those defendants to disgorge $20,931,532.75 in ill-gotten gains (plus prejudgment interest), and imposed civil money penalties. The Judgments further (1) deemed defendants' payment obligations satisfied by their relinquishment of their U.S. assets; (2) required sale of defendants' U.S. assets and deposit of the sale proceeds into an account with the Court Registry Investment System (the "FTC Fund"); and (3) provided that "[t]he Commission may propose a plan to distribute the [FTC Fund] subject to the Court's

---

[1] The Trustee notes that Capital Markets maintained a "Performance Account" at Penson Financial Services, Inc., which purportedly contained collateral pledged to secure certain of the notes at issue, and that that account was among the assets frozen by the Court in this case. However, this account was never funded, and the FTC Fund never received any assets from the Performance Account. Likewise, an account at Penson in the name of Holdings was frozen but was never funded and, thus, did not contribute any assets to the FTC Fund.

approval, after notice and an opportunity for interested third parties to be heard regarding the terms of any such plan of distribution." Id.

On May 27, 2011, the Commission submitted its proposed Distribution Plan to the Court. Docket. No. 70.  Under the Distribution Plan, the FTC Fund Administrator, subject to Court approval, would allocate the assets collected from defendants to pay, pro rata, investors defrauded by Capital Markets and Emerging Markets, as well as creditors of Capital Markets and Emerging Markets.

## II.    The Trustee's Objection

On June 23, 2011, Deutsche Bank filed its objection, in its capacity as "Trustee" under certain "indenture" agreements concerning certain "notes" issued by International and certain "Issuers" (on whose behalf International issued certain additional "notes").  The governing "indenture" agreement empowers the Trustee to "file and prove claims" and take related actions "in the case of the pendency of any receivership, insolvency, liquidation, bankruptcy, reorganization, arrangement, adjustment, composition, or other judicial proceeding relative to the Issuer or its property" (emphasis added).  Trustee Opp. Ex. A, at p. 48.  As discussed above, neither International nor its related Issuers are defendants in this case, and neither has contributed any assets to the FTC Fund.  Thus, this proceeding is not "relative to the Issuer or its property," and the Trustee expressly is not authorized to file a claim (or, at the least, to inject itself as an administrator in this proceeding).

Nonetheless, the Trustee objects that the proposed Distribution Plan will not be "fair and reasonable" unless it is amended:

- to permit the Trustee to submit claims for distribution from the FTC Fund on behalf of all noteholders, regardless of whether a particular noteholder has any legal or equitable claim against Capital Markets or Emerging Markets (or to any of

defendants' assets paid into the FTC Fund), and regardless of whether the noteholder purchased the Note from International or an "Issuer";

- to permit the Trustee to make distributions to the noteholders pursuant to the "indenture" agreements;

- to award the Trustee its "fees and expenses" incurred regarding these matters;

- to exculpate the Trustee "for any act or omission in connection with or arising out of the liquidation and distribution of the assets"; and

- to provide for cancellation of the indentures and the notes.

## ARGUMENT

The Trustee makes several arguments in support of its contention that the proposed Distribution Plan in not "fair and reasonable," none of which ring true. The basic flaw of the Trustee's objection is that this proceeding does not concern assets to which either the Trustee or the noteholders it represents have any claim (at least, qua noteholders), and is not a proceeding in which the Trustee is authorized to participate (at least, not in the intrusive manner that it requests). Nonetheless, in the interest of amicably resolving the Trustee's objection, the Commission proposes amending the Distribution Plan to expressly permit the Trustee to submit claims on behalf of the noteholders at issue, provided that the Fund Administrator continues to administer those claims and determine, using fair and equitable criteria, whether a particular noteholder is entitled to a distribution from the FTC Fund. As discussed below, no legal or equitable reason exists to permit the Trustee to inject itself any further into this case. Indeed, its governing indenture agreements expressly do not authorize it to do so, and the Trustee cites no authority for its requested broader grant of authority to act as Trustee regarding the FTC Fund assets. Furthermore, permitting the Trustee to do so likely would unreasonably and unfairly result in the payment of unnecessary costs from the already limited fund available for distribution to deserving fraud victims and creditors in this case.

First, the Trustee incorrectly asserts that the Distribution Plan "prevents the Trustee from fulfilling its responsibilities under the Indenture." Trustee Opp., at 1.  By its own terms, the Trustee's governing indenture agreements do not even authorize the Trustee to participate in this proceeding and, if anything, the Trustee is actually seeking improperly to broaden its authority through this proceeding.  As the Trustee itself notes, the "Indenture" empowers the Trustee to "file and prove claims" and take related actions "in the case of the pendency of any receivership, insolvency, liquidation, bankruptcy, reorganization, arrangement, adjustment, composition, or other judicial proceeding relative to the Issuer or its property" (emphasis added).  Trustee Opp. Ex. A, at p. 48.  As explained above, this case does not concern either the "Issuer or its property."  None of the "Issuers" is a defendant in this case, and none of the Issuers' assets are included among the FTC Fund assets available for distribution.  Nor are Emerging Markets, Capital Markets, or Clamens -- the persons that did contribute assets to the FTC Fund -- subject here to a "receivership" or "bankruptcy" proceeding (in which numerous additional rights may be adjudicated).  Indeed, this proceeding does not concern defendants' current or future status as going concerns, or their liquidation.  To the contrary, the narrow issue before this Court is the appropriate distribution of a discrete pool of funds -- i.e., defendants' U.S. assets paid to satisfy consent judgments against defendants for disgorgement of their ill-gotten gains in this Commission fraud action.  To the extent the Trustee, or any entity it represents, has a colorable claim to those assets, it should be permitted to assert it in this case, and any such claim should be considered by the Fund Administrator, along with any other such claims by other parties. However, the Distribution Plan does not in any way prevent the Trustee from carrying out whatever obligations it might have under its indenture, and the Court certainly should not grant

the Trustee greater authority in this proceeding than its governing indenture agreement authorizes.

Moreover, nowhere in its objection does the Trustee even attempt to establish that it or the noteholders it represents has a colorable claim against the FTC Fund (<u>qua</u> noteholders).  In other words, to the extent that a noteholder's claim is solely for non-payment under its note (for which International or an "Issuer" is the sole obligor), the claim is solely against International or the Issuer, *not* against the FTC Fund.  The FTC Fund, again, holds no assets of International or the Issuer but, rather, only assets disgorged by the defendants in this case, and it should be distributed solely to persons or entities who have claims against those defendants.

Likewise, the Trustee incorrectly asserts that the proposed Distribution Plan violates its right under the "Indenture" to payment of "fees and expenses it has incurred."  For the reasons discussed above, this distribution proceeding is not addressed in the "Indenture," and nothing in the Indenture (nor any other authority) authorizes the Trustee to obtain "fees and expenses" in this case.  Moreover, permitting payment of such Trustee fees and expenses would unreasonably and unfairly (without legal or equitable basis) reduce the amount of the FTC Fund available for distribution to those persons and entities who can establish that they have legitimate claims against the defendants in this case.

The Trustee misleadingly asserts that "innocent investors which [sic] purchased or otherwise acquired Notes will be unable to receive distributions in respect of such Notes pursuant to the Distribution Plan." Trustee Opp., at 1.  To the extent a noteholder purchased notes directly from Emerging Markets or Capital Markets, the proposed Distribution Plan permits the noteholder to submit a claim and, if the claim is valid, to share in the distribution.  However, for the reasons set forth above, the proposed Distribution Plan fairly and reasonably

does not permit noteholders who purchased their notes from an *another* party to participate in the distribution of the FTC Fund, unless they can assert a valid fraud claim or other cognizable claim against Emerging Markets or Capital Markets.  Again, this result is fair and reasonable for the simple reason that this case concerns disgorgement of defendants' assets, and the FTC Fund is comprised solely of defendants' assets.

Finally, the Trustee asserts that the Distribution Plan is unfair unless the Court (1) "cancels" the indentures and the notes; and (2) "exculpates" the Trustee "for any act or omission in connection with or arising out of the liquidation and distribution of the assets" in this case.  As explained above, the "distribution of assets" in this case is a matter entirely separate and distinct from whatever obligations the Trustee might have under its Indenture.  Indeed, this Court does not even appear to have jurisdiction to cancel the indentures and notes or "exculpate" the Trustee in this case, which does not include all parties to the indentures and notes.  The Trustee cites no authority for this inappropriate request, and the Court should not grant it.

In any event, in the interest of resolving the Trustee's objection amicably, and of ensuring that all noteholders with potential claims have an opportunity to present them to the Fund Administrator, the Commission proposes (and proposed to the Trustee last week) that the distribution plan be amended to expressly permit the Trustee and any holders of the notes at issue to submit a claim, to be subsequently allowed or disallowed by the Fund Administrator.  Such additional language would both satisfy the Trustee's concern that it be permitted to file claims on behalf of note holders, while at the same time ensuring that the available assets are distributed in a manner that is fair and reasonable to all potential claimants.  The Commission is willing to agree to this reasonable compromise to ensure that all potential claims and claimants to the distribution fund are heard.  The Commission, however, opposes amending the plan to

essentially incorporate wholesale into this fraud action the unauthorized and unnecessarily costly Trustee administrative responsibilities under its entirely separate and inapplicable indenture agreements.

        Respectfully submitted,

        /s/
JACK KAUFMAN (JK-3050)
RHONDA JUNG (RJ-3864)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center – Room 400
New York, NY 10281-1022
(212) 336-0106